UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
UNITED STATES            )
                         )
v.                       )
                         )     Criminal No.: 05 CR 10025-GAO
SCOTT R. BOIDI,          )
       Defendant.        )
_____)

**DEFENDANT'S DISCOVERY MOTION**

NOW COMES the defendant, Scott Boidi ("Boidi"), through counsel, and respectfully moves this Honorable Court for an Order requiring the Government to produce the following discovery to the defendant:

1. **Facts.**

The First Superceding Indictment, ("the Indictment"), charges a substantive racketeering violation in Count One of the Indictment. Counts Two through Seven and Count Nine are identical to Racketeering Acts Three through Seven and Act Nine. Essentially, the Indictment charges that the racketeering enterprise was the Local 88 labor union of which Boidi was the Business Manager from June, 1991 through May 0f 2002. Racketeering Acts One and Two allege that Boidi accepted something of value in exchange for the union membership of two individuals. During this same period of time Boidi was responsible for the admission of hundreds of new members in to the union. The Government is known to have interviewed several other union members regarding whether they gave Boidi anything for membership. Negative reports would constitute exculpatory evidence.

1

2.    **Exculpatory Evidence.**

Based upon information and beleief, it is likely that the Government has interviewed dozens, if not hundreds of Local 88 members during the course of this investigation. It is further believed that most of these witnesses have given statements, which are exculpatory because they did not give anything of value to Boidi in exchange for union membership. Many may have said they did not see Boidi use drugs or believe he stole union funds.

Not only does the prosecution have an obligation, but it has an absolute duty to disclose all exculpatory or favorable information prior to trial. *Brady v. Maryland*, 373 U.S. 83 (1963). Fundamental to our Constitutional system is the due process requirement that the government preserve evidence favorable to the defendants or discrediting to its own case, and, upon request, that it disclose to the defense all such information. *United States v. Agurs*, 427 U.S. 97 (1976); *Kyles v. Whitley*, 115 S.Ct. 1555 (1995) (obligation belongs to the individual prosecutor to learn of favorable evidence to the accused). *See also Mooney v. Holohan*, 294 U.S. 103 (1935); *Pyle v. Kansas*, 317 U.S. 213 (1942). This requirement encompasses information which bears upon the credibility of its witnesses as well as matters more directly material to guilt or innocence. *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959); *United States v. Joseph*, 533 F.2d 282 (5th Cir. 1976); *United States v. Owens*, 933 F.Supp. 76, 87 (D. Mass. 1996); and *United States v. Dillard,* 419 F.Supp. 1000 (N.D.Ill. 1976). *See generally William v. Dutton*, 400 F.2d 797 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105 (1969).

The Sixth Amendment specifically guarantees a defendant the right to be confronted with the "witnesses against him," *Pointer v. Texas*, 380 U.S. 400, 403 (1965); *Brookhart v. Janis*, 384 U.S. 1, 3 (1966), and to impeach their testimony with prior inconsistent statements. *Kirby v. United States*, 174 U.S. 47, 55 (1899). That right attaches when a witness offers testimony that is "damaging," Brookhart v. Janis, 384 U.S. at 4, or "prejudicial to the accused," *Parker v. Gladden*, 385 U.S. 363, 365 (1966), or has a material bearing on his case. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3384 (1985), the Supreme Court made it absolutely plain that the suppression of impeachment or other exculpatory evidence amounts to constitutional error that requires reversal if such evidence is material in the sense that its suppression might have affected the outcome of the trial. (Blackmun, J.) (The reviewing court should assess "with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response"). *Id*.

Moreover, in any federal prosecution, the Court's supervisory power to safeguard "the correct administration of justice in the federal courts" reinforces the due process requirement of disclosure. *See*, e.g., *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 571 (2nd Cir. 1961); *United States v. Miller*, 411 F.2d 825, 832 (2nd Cir. 1961); *United States v. Leja,* 568 F.2d 493, 499 (6th Cir. 1977); *see generally Communist Party of the United States v. S.A.C.B.*, 351 U.S. 115, 124 (1956).

The Government's position apparently is that it meets its *Brady* obligations by the early production of hundreds of pages of documents, including FBI 302's. If the

3

government is aware of specific exculpatory evidence, it should be required to identify same. Moreover, to the extent that the government has not produced all FBI 302's and grand jury testimony, it should identify any *Brady* material present in same.

To the extent that the Government claims that the defendant is entitled to the statements only under the requirements of the Jencks Act, when the Jencks Act and *Brady* appear to collide, the Jencks should give way, particularly where, as here, the evidence is truly exculpatory. *See United States v. Starusko*, 729 F.2d 256, 262-265 (3rd Cir. 1984); *United States v. Owens*, *supra*, at 84-85; *United States v. Snell*, 899 F.Supp. 17, 21 (D.Mass. 1995). Otherwise, there simply would be no need for the disclosure requirements of *Brady* and its progeny, which recognized the absolute necessity of providing defendants with favorable material in time to allow those accused of criminal conduct to effectively prepare and present their case.

Early disclosure of impeachment evidence, which allows the defendant some opportunity to prepare his defense, is particularly warranted. *See United States v. Crozzoli*, 698 F.Supp. 430,436 (E.D.N.Y. 1988); *United States v. Munoz*, 736 F. Supp. 502 (S.D.N.Y. 1990). The defendant is entitled to disclosure in time for its "effective" use at trial, and disclosure during trial - in the context of this case and the time period covered by the indictment - would absolutely preclude the type of follow-up investigation that would allow for the effective use of this evidence. *See United States v. Higgs*, 713 F.2d 39,44 (3rd Cir. 1983).

Because this Court has an opportunity to order disclosure of exculpatory and impeachment evidence at a time when it will undoubtedly have a meaningful impact on

the defendant's ability to prepare his case, it is respectfully submitted that the Court's determinations should not be influenced by those cases which involve a retrospective analysis of the impact of late disclosures by the government. *See, e.g., United States v. Devin*, 918 F.2d 280 (1st Cir. 1990). Clearly, largely subjective after-the-fact determinations of whether disclosure was delayed as a result of bad faith or inadvertence and whether unfair prejudice ultimately resulted, can and should be avoided by compelling timely production of the specific items identified here.

    A.    **Disclosure of Impeachment Material Pretrial Is In The Interests Of Justice, Fairness, and Efficiency**

As noted above, disclosure by the Government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pretrial disclosure. *See, e.g., United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970); *United States v. Deutsch*, 373 F.Supp. 289, 290-291 (S.D.N.Y. 1974) (Lumbard, J.); *United States v. Pollack*, 534 F.2d 964, 973 (D.C.Cir. 1976). Disclosure pretrial is not barred by 18 U.S.C. §3500; *United States v. Owens*, *supra,* at 84-85; *United States v. Thevis*, 84 F.R.D. 47 (N.D.Ga. 1979); *United States v. Germain*, 411 F.Supp. 719 (S.D.Ohio 1976); *United States v. Five Persons,* 472 F.Supp. 64 (D.N.J. 1979); and is requested in order to assure the defendant a fair trial. *United States v. Thevis*, *supra*; *United States v. Goldman*, 439 F.Supp. 337 (S.D.N.Y. 1977). Courts have, on a case-by-case basis, invoked their discretion to require production of Jencks statements in advance of the trial so that unnecessary delays will not take place during the course of the trial. *See*, *e.g.*,

5

*United States v. Marquez*, 686 F.Supp. 1354, 1358 (N.D.Ill. 1988) Bua, J. (government ordered to disclose all impeachment material three days prior to trial). *See also United States v. Aboleda*, 929 F.2d 858 (1st Cir. 1991); *United States v. Roark,* 924 F.2d 1426 (8th Cir. 1991); *United States v. Owens*, supra; *United States v. Snell*, supra.

As also argued above, disclosure of information impeaching witnesses' credibility must be timed to enable effective preparation for trial. *United States v. Baxter*, 492 F.2d 150, 173-174 (9th Cir. 1973), *cert. denied*, 416 U.S. 940 (1974).[1] In essence, the defense is entitled to disclosure of exculpatory evidence far enough in advance to allow adequate time to evaluate, prepare and present the evidence at trial. *United States v. Partin*, 320 F.Supp. 275 (E.D.La. 1970).

In *United States v. Olsen*, 697 F.2d 273 (8th Cir. 1983), where a prosecutor in possession of potentially exculpatory information failed to disclose the information until his case-in-chief was nearly complete. The defendant's attorney moved for a continuance so that he could investigate the new evidence and use it in his client's defense. The trial court denied the motion and the jury returned a guilty verdict. On review, the Eighth Circuit reasoned that if the prosecutor had not disclosed the exculpatory evidence until after the trial, the defendant would have been denied due process under *Brady* and *Agurs*.

---

[1] Similarly, *see United States v. Polisi*, 416 F.2d 573, 578 (2nd Cir. 1969); *United States v. Kaplan*, 544 F.2d 577, 580 (3rd Cir. 1977); *cf. United States v. Opager*, 589 F.2d 799, 804-805 (5th Cir. 1979) (crucial importance to accused of pretrial interviewing and/or investigation of potential witnesses); *Grant v. Alldredge*, 498 F.2d 376, 381-382 and n.5 (2nd Cir. 1974); *Clay v. Black*, 479 F.2d 319, 320 (6th Cir. 1973) (per curiam); *Hamric v. Bailey*, 386 F.2d 390, 393 (4th Cir. 1967); *Ashley v. Texas*, 319 F.2d 80, 85 (5th Cir. 1963), cert. denied, 375 U.S. 931 (1963); *United States v. Germain*, 411 F.Supp. 719 (S.D.Ohio 1975); *Coleman v. Maxwell*, 273 F.Supp. 275 (S.D.Ohio 1967). *See also*, *Gorham v. Wainwright*, 558 F.2d 178, 180 (5th Cir. 1979).

697 F.2d at 275-276.  Thus, the Eighth Circuit held that if disclosure is delayed until a point so late in the trial that the defendant is unable to make use of the evidence, he is likewise deprived of due process.  *Id.*  As the Court of Appeals for the Second Circuit has stated, the prejudice caused by the suppression of *Brady* material is measured by its effect "upon defendant's preparation for trial, rather than its effect upon the jury's verdict."  *United States v. Polisi*, 416 F.2d 573, 577 (2nd Cir. 1969); *United States v. Mitchell*, 372 F.Supp. 1289 (S.D.N.Y. 1973).

Combining the force of *Brady* and Rule 16(a)(1)(C), the defendant has powerful cause for sufficient pretrial disclosure.  *United States v. Thevis*, 84 F.R.D. 47 (N.D.Ga. 1979).  Numerous District Courts have ordered such discovery both before and after the 1975 amendments which further liberalized Rule 16.  *See*, *e.g.*, *United States v. Thevis*, *supra*; *United States v. Five Persons*, *supra*, *United States v. Goldman*, 439 F.Supp. 337, 349 (S.D.N.Y. 1977); *United States v. Dillard*, 419 F.Supp. 1000, 1001 (N.D.Ill. 1976); *United States v. Deutsch*, 373 F.Supp. 289, 290-291 (S.D.N.Y. 1974); *United States v. Quinn*, 364 F.Supp. 432, 440 (N.D.Ga. 1973), *aff'd. on other grounds*, 514 F.2d 1250 (5th Cir. 1975); *United States v. Houston*, 339 F.Supp. 762, 764 (N.D.Ga. 1972); *United States v. Ahmad*, 53 F.R.D. 186, 193-194 (M.D.Pa. 1971); *United States v. Gleason*, 265 F.Supp. 880, 884-887 (S.D.N.Y. 1967).  The Third Circuit has adopted a policy encouraging the timely production of material under both *Brady* and Rule 16.  *See United States v. Boffa*, 513 F.Supp. 444, 500 (D.Del. 1980), and cases cited therein.

In the instant case, impeachment evidence is crucial to the defendant's case.  Under the circumstances, the defendant will be at a distinct disadvantage and

significantly prejudiced if he are unable to assess and investigate impeachment evidence prior to trial.  As a result, the defendant request this Court to "even the playing field" and ensure defendant a fair trial by requiring disclosure of such evidence pretrial.  *United States v. Snell*, *supra*.

    B.    **Material Impeachment Evidence Must Be Disclosed**

The Supreme Court has commanded that material impeachment evidence must be disclosed.  *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985). *See also, United States v. Coggs*, 752 F.Supp. 848 (N.D.Ill. 1990); *United States v. LaRouche Campaign*, 695 F.Supp. 1290 (D.Mass. 1990).

Significantly, the defendant's pretrial motion does not call upon the Court to overturn a conviction or to weigh such questions as materiality and prejudice in retrospective review of a trial record, the usual vantage of the appellate decisions.  *See United States v. Five Persons*, 472 F.Supp. 64, 68 (D.N.J. 1979).  Rather, the Court must prospectively decide under *Brady* whether "the subject matter of the specific requests[2] are material, or indeed if a substantial basis for claiming materiality exists."  *United States v. Bagley*, *supra*; *United States v. Agurs*, 427 U.S. at 106.  The Court must also prospectively decide under Rule 16(a)(1)(C), Fed.R.Crim.P. whether the requests embrace matters which are "material to the preparation of (the) defense:

---

2    The First Circuit has emphasized the significance of specific rather than general requests for exculpatory evidence in triggering the more liberal standard of materiality and the strict sanction which attends the refusal of a specific request.  *United States v. DiCarlo*, 575 F.2d 952, 958-960 (1st Cir. 1978).

8

> . . . aside from outright exculpatory items it is difficult to imagine information more material to the preparation of the defense than credibility items for critical or major government witnesses.

*United States v. Five Persons*, 472 F.Supp. at 67.  The defendant seeks the opportunity for meaningful preparation for cross-examination and for the presentation of defense evidence.  He offers avoidance of both the trial delay arising from "*Brady* too little, too late," as well as the specter of collateral attacks arising from the same.  *See United States v. Five Persons*, 427 F.Supp. at 68.  Pretrial disclosure should be required in the interest of justice and fairness.

　　　The government has an institutional obligation to disclose any and all consideration(s) which it has held out to a witness or which the witness anticipates, since such consideration directly goes to proof of bias or interest.  *See*, *e.g.*, *United States v. Tashman*, 478 F.2d 129 (5th Cir. 1973); *United States v. Harris*, 462 F.2d 1003 (10th Cir. 1972); *United States v. Owens, supra* at 87; *see also*, *United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990); *United States v. Coggs*, 752 F.Supp. 848 (N.D.Ill. 1990).  *Giglio v. United States*, *supra*, makes it clear that this duty to disclose is an affirmative one which the government must discharge responsibly, and that the ignorance of one prosecutor as to the promises made to a government witness by another prosecutor does not excuse the failure to disclose.  *See also*, *United States v. Bonnano*, 430 F.2d 1060, 1062 (2nd Cir. 1970), *cert. denied*, 40 U.S. 964 (1971)  (Court condemned the government's failure to disclose an outstanding indictment against its witness since the pendency of the charge

would have shown "possible motivation of the witness to testify favorably for government").

In *United States v. Padgent*, 432 F.2d 701 (2nd Cir. 1970), the Court reversed the defendant's conviction because his counsel had been denied the right to question a government witness on cross-examination with regard to the witness' vulnerability to indictment for bail jumping. Evidence of wrongdoing, even though not amounting to a felony conviction or comparable evidence of moral turpitude or bad character, may nonetheless be adduced when relevant to show the bias or self-interest of the witness. McCormick, *Evidence*, §40, at 78-80 (2nd Ed. 1972). Typical of this category is information concerning the witness' possible vulnerability to prosecution, parole or probation revocation, or other sanction by the government. *Davis v. Alaska*, 415 U.S. 308, 316-317 (1974) (petitioner's constitutional right of confrontation denied when state, out of effort to maintain confidentiality of juvenile convictions, successfully prevented cross-examination as to the probationary status of an important witness against the defendant; the witness might have colored his story in favor of the government to avoid the possibility of revocation, and the defendant was entitled to prove this source of possible bias or interest); *Meeks v. United States*, 163 F.2d 599, 600 (9th Cir. 1947) (parole status).

The prosecution should disclose such sources of bias or interest as potential financial reward by the United States, *Wheeler v. United States*, 351 F.2d 946 (1st Cir. 1965), or, for example, civil tax liability to the United States--even though in either event no promises of consideration have been made. The witness' hopes or expectations are

10

what counts. The "possibility of reward" gives the witness a "direct, personal stake." *Bagley*, *supra*, 105 S.Ct. at 3384.

The existence and identification on each occasion on which a witness has testified or otherwise narrated the facts should be disclosed so that the defendant can order transcripts of testimony for use in cross-examination or can investigate sources of extrinsic impeachment. *See United States v. Dominquez*, 131 F.R.D. 556 (N.D.Ill. 1990) (must notify defendant of other cases in which witness testified on behalf of government. *See United States v. Noetzel*, 124 F.R.D. at 522 [par. (11)(a)] (Ponsor, U.S.M., orders disclosure of dates and locations of courts where its witness has previously testified on behalf of the government); McCormick, *Evidence*, § 34, at 67 (2nd Ed. 1972). *See also* F.R.Evid.801(d)(1) and 806. If the Government has available information which may lead to proof of prior inconsistent statements or other evidence helpful to the defendant, such as the specific requests which have been made, fairness requires that it be turned over to the defense. *See United States v. Barash*, 365 F.2d 395, 400-401 (2nd Cir. 1966). As the Ninth Circuit concluded:

> Considering the vast investigatory resources and power at the Government's disposal, an elemental sense of fair play demands disclosure of evidence that in <u>any</u> way may be exculpatory. If the government, upon request by the accused, has serious doubts about the usefulness of the evidence to the defense, the Government should resolve all doubts in favor of full disclosure.
>
> *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976) (emphasis in original).

*See also Landano v. Rafferty*, 126 F.R.D. 627 (D.N.J. 1989) (government's suppression of handwritten note indicating that possibly three witnesses had been shown and rejected

11

photograph of defendant was *Brady* violation); *United States v. Isgro*, 751 F.Supp. 846 (C.D.Cal. 1990).

If the witness is an informer, accomplice or alleged co-schemer, the Government should disclose all occasions known to the Government on which the witness has previously testified. In *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975), the Court granted federal habeas corpus relief to a prisoner convicted on the testimony of a paid informer. At his state trial, petitioner offered to prove that the witness had lied and attempted to frame a defendant in another trial in another state. The Court of Appeals concluded that given the witness' informer status, the jury was entitled to know of the former testimony. The exclusion of the evidence amounted to a denial of due process.

If the Government seeks to prove its case against the defendant by introducing the declarations of non-witnesses, as it no doubt will in the instant case, the defendant is permitted to impeach such declarants. F.R.Evid.806; 32 Wigmore, *Evidence*, §884 (3rd Ed. 1940). Any description(s) of the suspect(s) which differ from those of the defendant(s) or their alleged co-schemers is exculpatory. *United States v. Bundy*, 472 F.2d 1266 (D.C.Cir. 1972). Disclosure of the names of persons the government does not plan to call as witnesses may be even more important to an adequate defense than a witness list. Such persons may have knowledge of the case which cannot otherwise be obtained by the defense. *See United States ex rel. Meers v. Wilkins*, 326 F.2d 135 (2nd Cir. 1964) (holding that a due process violation resulted from the failure to disclose the existence of two eye witnesses to a robbery whose testimony would have tended to exculpate the defendant).

The defendant's exculpatory material is not to be determined unilaterally by the Government. Rather, the defendant should have the opportunity to discover for themselves and determine in the exercise of their own judgment, what is exculpatory. *See Dennis v. United States*, 384 U.S. 855, 874-875 (1966). If the Government's decision not to call a witness is based on the prosecution's view that the information the witness would provide is not relevant, then there should not be an interest in non-disclosure. If, however, the reason the Government has decided against calling a particular witness is because the information to be offered is not helpful to the Government's case, then disclosure is mandated by *Brady*, and the names and addresses of such witnesses should be disclosed in accordance with *United States v. Houston*, 339 F.Supp. 762 (N.D.Ga. 1972). *See also United States v. Ladd*, 48 F.R.D. 266 (D.C.Alaska 1969) (granting discovery of exculpatory statements of witnesses not to be called by the Government).

In *Owens*, Judge Young made clear the Government's obligation to search for exculpatory evidence. 933 F.Supp. at 86. In this regard, the Government in the case at bar must make certain, for example, that it has reviewed all the FDIC files for exculpatory evidence, not merely those that have thus far been forwarded to federal prosecutors.

### 3. Electronic Surveillance

The Government has provided the undersigned counsel with several consensually recorded conversations made by cooperating individuals. However, the Government has indicated that it does not possess any "electronic communications of the defendant as defined in 18 U.S.C. § 2510 . . . relating to the charges in the indictment." Given the fact

13

that the Defendant has been under investigation by multiple law enforcement agencies for a variety of alleged conduct for the better part of the last eight years, it is likely, if not probable, that electronic surveillance application(s) were made to this Court and granted. The Defendant respectfully requests that the Court order the production of any such electronic surveillance applications and recordings. With regard to electronic surveillance, the Government is not the best arbiter of exculpatory information.

   4.   **F.R. Evid. 404(b) Information.**

The defendant requests early disclosure of "[a] description of all crimes or bad acts, together with the dates and places thereof, which the Government intends to offer against each defendant pursuant to Fed. R. Evid. 404(b)." The defendant requests said disclosure at least sixty (60) days prior to trial to allow adequate opportunity to investigate any such evidence which the government was seeking to use at trial.[1]

The problem with the government's general notice is that it is wholly inadequate to provide the defendant with the kind of timely notice required to enable the defense to investigate and prepare to defend against the allegations in advance of trial. Nor does the government's disclosure provide sufficiently specific notice to enable the defendant to identify that evidence which it will seek to exclude by motion *in limine*, pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence. The government has essentially provided generalities and an "example" of the evidence it will seek introduce, rather than a comprehensive list, which identifies the dates and places of the specific alleged criminal conduct.

In his concurring opinion in *United States v. Williams*, 985 F. 2d 634, 640 (1st Cir. 1993), Circuit Judge Torruella wrote a separate opinion to highlight his "exasperation at

---

[1] Local Rule 117.1(4)(b) requires production of such information no later than twenty-one (21) days before the trial date.

14

the repeated abuse of Rule 404(b) by government prosecutors." Complete and meaningful notice of evidence of other crimes, wrongs or acts the government intends to offer at trial is necessary to safeguard against such abuses. If the government is not held to the full breadth of the notice requirement, it will be able to proceed by "trial by ambush". The express purpose of the notice requirement of Rule 404(b), which was added by a 1991 amendment, was to reduce the surprise experienced by the defendant by the introduction of 404(b) evidence at trial and to protect the accused from "trial by ambush." *United States v. Perez-Tosta*, 36 F.3d 1552, 1561 (11th Cir. 1994).

As noted above, it is impossible for the defendant to challenge the admissibility of this evidence, either under Rule 404(b) or F.R.Evid. 403, without proper notice. It is obviously equally impossible for the Court to evaluate these same issues. As importantly, the defendant is left without any meaningful opportunity to prepare to meet the mystery evidence the government proposes to introduce, inevitably leading to the types of delays and prejudice Rule 404(b) was designed to prevent.

These concerns are precisely what led the Judiciary Committee to amend Rule 404(b) in 1991 to include a notice requirement. As set forth in the Advisory Committee's Note:

> [t]he amendment to Rule 404(b) adds a pretrial notice requirement in criminal cases and is intended to reduce surprise and promote early resolution on the issue of admissibility. The notice requirement thus places Rule 404(b) in the mainstream with notice and disclosure provisions in other rules of evidence ... the rule expects that counsel for both the defense and the prosecution will submit the necessary requests and information in a reasonable and timely manner ... the amendment requires the prosecution to provide notice regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case in chief, for impeachment, or for possible rebuttal.

15

Accordingly, this Court is respectfully urged to order the government to promptly provide the defendant with notice of all 404(b) evidence it will seek to introduce at trial, and to disclose the full panoply of information relating thereto which is required by the Rules. To the extent that the essence of the Rule 404(b) information is embodied in the statements of witnesses, the early production of Jencks material would provide the most obvious fair and expedient remedy to this discovery dispute.

5.     **Jencks Material.**

Although it is anticipated that the government will ultimately not seek to strictly employ the provisions of the Jencks Act, 18 U.S.C. §3500, and withhold the production of witness statements until the completion of the direct testimony of each witness, it is respectfully submitted that - in this case - early production is necessary and should be ordered by this Court.

The Indictment in this case alleges that the defendant engaged in certain criminal conduct during a specific time period. The government's case rests largely on the testimony of two codefendant who pleaded guilty, and are now expected to testify in this case as part of their cooperation agreements. Evidence of the criminal activities of these witnesses is clearly exculpatory, as defined under Local Rule 116.2 (A), and consistent with the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *Kyles v. Whitley*, 514 U.S. 419 (1995), and their progeny. Similarly, evidence relating to the delay in the commencement of this prosecution and in identifying these codefendants as being involved in the alleged illegal activity is exculpatory. Furthermore, evidence reflecting the bias of these witnesses against the defendant, perhaps born from alleged prior dealings, is exculpatory.

It is probable that much, if not all of this exculpatory information is contained in the statements of the government's witnesses. Disclosure of exculpatory evidence is

dictated in this District by Local Rule 116.2.[2]  The Report of the Judicial Members of the Committee Established to Review and Recommend Revisions of the Local Rules of the United States District Court for the District of Massachusetts Concerning Criminal Cases, dated October 28, 1998, (hereinafter the "Judicial Report"), explicitly recognized that the presumptive dates for production contained in the Rules might well have to be tailored to meet the needs of particular cases.  As the Judicial Report states: "the court has 'a wide measure of discretion to ensure' that the government meets its obligation to disclose exculpatory information in time to allow the defense to use the information effectively in the preparation and presentation of its case."  Judicial Report, at §V. A., quoting *United States v. Pollack,* 534 F.2d 964, 973 (D.C. Cir.), *cert. denied*, 429 U.S. 924 (1976).  In this case, the length of time since the offense conduct was alleged to have been committed, the number and nature of the witnesses the government intends to call at trial, and the absence of the production of most of the investigative reports concerning information relating to the areas of exculpatory information discussed above, are all factors that support the need for the immediate production of witness statements bearing on this information.  Moreover, there are no countervailing considerations supporting later disclosure given that most of the subject witnesses have already been identified by the government.

The Judges of this District have been particularly cognizant of the potential conflict between the duty to disclose exculpatory evidence and the timing provisions of the Jencks Act.  As at least one district judge concluded, the government has an immediate obligation to produce *Brady* evidence contained within Jencks material.  *United States v. Snell*, 899 F.Supp. 17, 21 n.8 (D.Mass. 1995) (Gertner, J.).  Judge

---

[2] It should be noted that exculpatory evidence in the form of information that would cast doubt on the admissibility of evidence, *e.g.*, identification evidence and, presumably, F.R.Evid. 404(b) evidence, must be produced within the time provided for under the Local Rules for Automatic Discovery.  *See* Local Rule 116.2(B)(1)(b).

17

Gertner also noted that "the concerns undergirding Jencks are simply not triggered" if, as in the case at bar, there is no law enforcement reason prohibiting earlier disclosure (*e.g.*, threats to witnesses).  As noted above, the identity of the witnesses - in the main - already has been accomplished in the instant case.

While the drafters of the Local Rules were unwilling to adopt the unequivocal position of the *Snell* court, they clearly recognized that the issue should be resolved on a case-by-case basis.  Judicial Report, at §V.B.  It is submitted that in this case, the provisions of the Jencks Act must give way to "the government's duty to disclose exculpatory information early enough to permit effective use by the defendant[s]."  *Id.*

**5.    Promises, Records and Inducement.**

Several witness have entered into cooperation agreements with the Government. To date, limited discovery regarding their cooperation agreements has been provided to the defendant. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)(mandating the disclosure of evidence of promises, rewards and inducements).

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street
Boston, Massachusetts 02116
(617) 859-9999

Attorney for Defendant
Scott Boidi

### CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 27th day of May, 2005, a copy of the foregoing DEFENDANT'S DISCOVERY MOTION was served electronically upon Laura Kaplan, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Suite 9200, Boston, MA 02210.

Peter Charles Horstmann, Esquire