UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-10025-GAO |
| | ) | |
| SCOTT BOIDI | ) | |

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO STRIKE DEFENDANT'S MOTIONS FOR DISCOVERY

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Assistant U.S. Attorney Laura J. Kaplan, submits this memorandum in support of its motion to strike defendant's discovery motions, filed on May 27, 2005, on the grounds that the motions fail to comply with the Local Rules, are overbroad and contain sweeping requests for information which go far beyond the requirements of the Local Rules of this Court and case law governing pretrial discovery. In the alternative, the government requests that all of defendant's motions for discovery be denied.

The defendant's requests include information already produced and covered by automatic discovery under Local Rule 116.1. Therefore, the motions violate Local Rule 116.3(D), which provides, in part, as follows:

> A defendant participating in automatic discovery
> must not request information expressly required
> to be produced under L.R. 116.1.

In addition, prior to filing the motions, the defendant did not confer with the government in order to eliminate or narrow areas of disagreement or so certify in its motions. Therefore, the

motion violates Local Rule 116.3(F).  Indeed, it was not until
the government contacted defendant's counsel upon receiving his
discovery motions that a discussion even took place to determine
whether the issues could be either eliminated or narrowed.
Obviously, the parties were unable to reach any agreement and
thus, the need for the Court's intervention.

The extent of permissible pretrial discovery is, of course,
controlled and limited by Fed.R.Crim.P. 16, the Local Rules of
this Court and Brady v. Maryland, 373 U.S. 83 (1963) and its
progeny.  A prosecutor is not required to make files available to
a defendant for an open-ended "fishing expedition" for possible
Brady material. United States v. Andrus, 775 F.2d 825, 842-43
(7th Cir. 1985); United States v. Davis, 752 F.2d 963, 976 (5th
Cir. 1985).  Moreover, Brady does not require the government to
disclose evidence available to the defense from other sources,
evidence the defendant already possesses, or evidence the
prosecutor does not possess.  United States v. Hicks, 848 F.2d 1,
3-4 (1988); United States v. Ramirez, 810 F.2d 1338, 1343 (5th
Cir.), cert. denied, 484 U.S. 844 (1987); United v. Mabry, 808
F.2d 671, 686-87 (10th Cir.), cert. denied, 484 U.S. 874 (1987).

By his motions, the defendant seeks disclosure of
exculpatory evidence, early discovery and production of materials
relating to impeachment evidence, Jencks materials and Fed. R.
Evid. 404(b), information relating to electronic surveillance and

2

discovery of the grand jury minutes.  Despite the fact that
disclosure (and timing of same) of these materials is governed by
the Local Rules of this Court, the defendant does not provide any
compelling, case-specific reasons why the presumptive deadlines
for disclosure under the Local Rules should be abandoned
particularly when the parties in this matter are participating in
automatic discovery.  The Local Rules provide an orderly
framework and timing for discovery of the information requested
in the defendant's motions and, as explained in more detail
below, there is no reason why the Court should abandon their
application in this case.

### A.    **Automatic Discovery by the Government**

On February 24, 2005 (and in a supplemental letter on March
4, 2005), the government provided the defendant with the
automatic discovery required under Rule 116.1 of the Local Rules
of the United States District Court for the District of
Massachusetts.  <u>See</u> Copies of "Government's Discovery Letters"
attached at Tab 1.  These letters included information required
to be produced under Local Rule 116.1(C) (including that
information required to be produced under Fed. R. Crim. P. 16 and
Local Rule 116.1(B)(1)).  As shown in the government's Discovery
Letters, the government's discovery production was large
including but not limited to tapes of consensually recorded
conversations.  It also included information regarding

3

exculpatory evidence under Local Rule 116.2 (B)(1).  See Tab 1
(February 24, 2005 letter at pp. 4-5).  Although the government
declined to identify two of its cooperating witnesses by name, it
made the requisite disclosures under Local Rule 116.2(B)(1) about
these anticipated witnesses.

On March 9, 2005, defendant sent the government a letter
memorializing a telephone conversation wherein the government
advised the defendant (which it had done on at least one if not
two other occasions) that it was not aware of the existence of
any Title III applications relevant to this matter.  A copy of
that letter is attached at Tab 2.

**B.  Discovery Letter Request by Defendant**

On or about March 30, 2005, the defendant served the
government with a fourteen page letter essentially requesting the
same materials previously provided in automatic discovery and
other items the defendant is clearly not entitled to under the
Local Rules.  A copy of that letter is attached at Tab 3.  The
government promptly responded to this request on March 31, 2005,
a copy of which is attached at Tab 4 and refused to provide the
requested information since it either had previously been
provided or is expressly disallowed under the Local Rules.

The only additional materials that have not been provided by
the government to date are: (1) statements or grand jury
testimony falling within the purview of the Jencks Act, and (2)

4

*Brady/Giglio* impeachment material (if any exists) of witnesses
whom the government anticipates calling in its case in chief.
However, in accordance with Local Rule 116.2(B)(2), the
government agrees to disclose these materials (Jencks and
Brady/Giglio) not later than twenty-one (21) days before the
start of trial.

### C.    **The Defendant's Discovery Motions**

As with defendant's discovery letter, his discovery motions
cover several categories of discovery: 1) exculpatory information
and early disclosure of impeachment material; 2) early disclosure
of the government's intention to introduce Fed. R. Evid. 404(b)
evidence at trial; 3) information relating to electronic
surveillance; 4) early disclosure of Jencks material and 5) grand
jury minutes.   The government will address each request.

### 1.    Exculpatory Evidence and Early Disclosure of Impeachment Material

As discussed above and in the attachments at Tab 1, the
government has made the requisite disclosures about exculpatory
evidence in its automatic discovery letter pursuant to Local
Rules 116.1(C) and 116.2(B)(1) and will make the requisite
disclosures under Local Rule 116.2(B)(2) and Fed. R. Crim. P.
26.2 in the time and manner provided in those rules and Local
Rule 117.1(A)(4),(5).   The defendant seeks broadly sweeping
information as to Brady material.   This request should be
stricken for failing to comply with the Local Rules.

The only specific information the government can glean that the defendant is seeking relates to information about (1) individuals interviewed by the government regarding whether they gave the defendant anything in exchange for membership in Local 88 or (2) individuals who may have stated that they did not see the defendant use drugs or do not believe that he stole union funds.  Even if such interviews exist, none of this information would constitute exculpatory evidence nor is it discoverable under the Local Rules, the rules of discovery or case law.

In these requests, defendant is essentially seeking discovery about any individual interviewed during the course of this multi-year investigation as to whether they paid money to the defendant to gain membership into Local 88, or whether they witnessed the defendant use drugs or steal union funds.  The government has already stated in its automatic discovery letter that it is not aware of any Brady material and recognizes its continuing obligation to disclose same.  The fact that some individual interviewed during the course of the investigation may have told the government, in response to questioning, that they never witnessed the defendant do drugs or steal union funds does not exculpate the defendant in any way.  Nor does the statement of an individual that that individual did not pay the defendant for his/her union book negate the charges in the indictment.  The charges in the indictment relate to two specific individuals.

6

The government agrees that if it had some specific information
that would tend to exculpate the defendant as to his dealings
with witnesses Tom Brennan and his brother or Jim McClellan - the
witnesses involved in the counts involving the sale of union
books, that might arguably be exculpatory material which it is
required to disclose.  The government is not aware of any such
information.  Moreover, the counts relating to the sale of union
books do not allege a conspiracy.  They involve fraud involving
specific individuals.

Similarly, if the government were aware of any information
which tended to exculpate the defendant as to his drug
transactions with two as yet unnamed cooperating witnesses who
engaged in drug deals with him, the government would disclose
that information.  The fact that one of the many individuals
interviewed during the course of this investigation might have
stated that they never saw the defendant use drugs is not
exculpatory nor impeachment evidence.  The fact that one of the
many individuals interviewed during the course of this
investigation might have stated that they do not believe that the
defendant stole union funds is also not exculpatory or
impeachment evidence.  For the defendant to claim that this type
of information is exculpatory would mean that anytime a family
member or friend of a defendant stated that they found it hard to
believe that their loved one (now the accused) engaged in

7

criminal conduct would also be exculpatory. It is not
exculpatory and probably not admissible. It is also not evidence
which would impeach government witnesses at trial.

As a threshold matter, the government states that it is well
aware of its constitutional and statutory obligations to produce
exculpatory material as required by Brady and its progeny. See
United States v. Williams, 792 F. Supp. 1120 (S.D. Ind. 1992)
(where government acknowledges its continuing obligation to
disclose exculpatory information, court need not compel specific
exculpatory discovery requests well in advance of trial where
defendants have not offered any evidence of non-compliance by the
government). It is also aware of its duty to disclose
information that "could be used to impeach a key government
witness." United States of America v. Coppa, 267 F.3d 132, 135
(2nd Cir. 2001). However, "[T]hose portions of defendant's
requests which go further than Brady need not be disclosed."
United States of America v. Coggs, 752 F. Supp. 848, 849 (N.D.
Ill. 1990).

Here, defendant's motion for discovery is nothing more than
a generalized request for purportedly exculpatory and impeachment
information, which is in large part unsupported by, and in part,
in direct conflict with Fed.R.Crim. P. 16 and the Brady-Agurs
doctrine. See United States v. Agurs, 427 U.S. 97 (1976); Brady
v. Maryland, 373 U.S. 83 (1963). Under the guise of seeking what

8

is constitutionally required, the defendant is attempting to obtain pre-trial discovery of nondiscoverable information.

As noted above, pursuant to Local Rules 116.1 and 116.2, the government has already notified the defendant of all exculpatory material pursuant to Brady v. Maryland and its progeny, to date. To the extent that the defendant seeks information beyond that required by Brady, the government opposes the defendant's motions and individual requests for information. These efforts by the defendant to rummage through the government's files is contrary to well-established law and should be rejected.

There is a limit to the scope of material to which the defendant is entitled under Brady. Brady and Agurs, require that the government turn over to a defendant any evidence which would be exculpatory to the defendant, and evidence which would impeach government witnesses at trial, including promises, rewards or inducements. In addition, Giglio v. United States, 405 U.S. 150 (1972), requires the government to disclose any immunity agreements entered into with the witnesses called by the government at trial. It is well established, however, that Giglio materials need not be produced until trial, and, therefore, the government opposes any motion for early disclosure of impeachment material. United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2nd Cir. 1974), cert. denied, 420 U.S. 393 (1975); United States v. Frumento, 405 F. Supp. 23, 32 (E.D. Pa.

1975); <u>United States v. Leta</u>, 60 F.R.D. 127, 131 (M.D. Pa. 1973).

    2.   Disclosure of intention to offer F. R. Evid. 404(b)
        <u>evidence</u>

    This request is squarely covered by the Local Rules
regarding automatic discovery. Unless a defendant has declined
to participate in automatic discovery, the government is required
to disclose a general description of any crime, wrong, or act
that it proposes to offer under Fed. R. Evid. 404(b) to the
defendant twenty-one days before trial and will do so at that
time.  Local Rule 117.1(A)(4)(b); <u>see also</u> <u>United States v.
Tuesta-Toro</u>, 29 F.3d 771, 775 (1st Cir.1994) (noting that the
government's obligation, upon proper request, is to provide the
defense with notice of its intent to introduce Rule 404(b)
information at a reasonable time before trial).

    Notwithstanding the plain language of the provisions of the
Local Rule cited above, the defendant requests, without any
individual showing as to why it's necessary *in this case*, that
the government be required to produce the Rule 404(b) information
*now*. The timing requirements of the Local Rules are based on a
common sense and practical understanding of how trials and trial
preparation proceed. In order to produce the materials requested
by the defendant, the government would essentially have to start
preparing for trial *now*. It generally takes multiple days of
work time (over several weeks because often times the government
has to send out letters or subpoenas requesting information) to

10

prepare the 21-day discovery letter that the government sends to defense counsel prior to trial.

It makes no sense for the government to undertake this arduous task at this stage in the case where the trial judge *has not even set a date for trial*.

The defendant has not even attempted, much less shown, that his case merits special treatment under the Local Rules. The defendant has done nothing to show that, from a discovery perspective, his case is anything other than the types of case contemplated by the drafters of the Local Rules. Like the many cases that are presented to this Court each year, this case can be fully and fairly addressed through the framework and orderly timing mechanisms contained in the Local Rules.

### 3.  Information Relating to Electronic Surveillance

Despite the government's repeated representations that there is no electronic surveillance (Title III) evidence in this case, the defendant continues to demand production of same. The government has repeatedly advised the defendant, both orally and in writing, that no electronic surveillance evidence exists in this case. The defendant has been provided with all consensually recorded conversations where he was overheard. The government cannot provide the defendant with something that simply does not exist.

11

### 4. Early Production of Jencks Material

Defendant's motion regarding early production of Jencks
materials should also be stricken or, in the alternative, denied.
Under the Jencks Act, statements of government witnesses are not
required to be produced *until after they have testified*.  18
U.S.C. § 3500.  Since, the timing of such production is often not
workable, the Local Rules contemplate that the timing of such
disclosures will be discussed at the initial pretrial conference.
See Local Rule 117.1(A)(5).  The defendant's request for the
production of Jencks at this stage is simply untenable,
particularly where, as here, the defendant gives no justification
for why this case requires special treatment.

### 5. Discovery of Grand Jury Minutes

Defendant seeks certain information relating to the grand
jury proceeding in this case.  The government responds to items 1
and 2 by representing that Assistant U.S. Attorneys Laura J.
Kaplan and Cynthia Young and former AUSA Frank Gaziano are the
only assistants appearing before the grand jury in this case.
The defendant has requested and the government refuses to provide
the addresses of said assistants.  The government will also
represent that no unauthorized person or unsworn witness was
present in the grand jury room during the presentation of this
case.  As to the remainder of the requests, they should be
denied.

12

It is now well-settled that an indictment returned by a legally constituted and unbiased grand jury if valid on its face, is enough to call for trial of the charge on the merits. U.S. v. Maceo, 873 F.2d 1 (1st Cir. 1989), Costello v. United States, 350 U.S. 359, 363 (1956). A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during the trial. See United States v. De Rosa, 783 F.2d 1401, 1405 (9th Cir), cert denied, 477 U.S. 908 (1986). The Court in Maceo recognized, 873 F.2d at 4, that any other rule would force criminal defendants and the court to bear two trials on the charge.

In Maceo, the First Circuit went on to say that under certain circumstances, however, it is appropriate to inquire into the proceeding surrounding a grand jury's decision to indict i.e. if there has been prosecutorial misconduct that actually biases the grand jury in performing its fact-finding function. The fact that the defendant may have a defense to the charges in the indictment, which the government does not believe is the case, is not cause to order discovery of the grand jury minutes.

The defendant has attached exhibits to his motion which he alleges provides a defense to Racketeering Act 3, (Count Two). The government provided those documents to the defendant and,

13

without laying out its entire case, does not believe those documents are exculpatory or provide a defense to the charges. The defendant is certainly free to argue otherwise at trial.

Similarly, the defendant argues that with respect to the embezzlement charge - Racketeering Act 4 (Count 3), the government's presentation of this conduct to the grand jury is suspect since he alleges that he was never asked to pay back any portion of the embezzled funds.   Again, this is something the defendant can argue at trial if he so chooses but does not provide a sufficient basis for a claim of prosecutorial misconduct leading to disclosure of the grand jury minutes.

The fact that the defendant may have been in an inpatient drug treatment facility at or around the time period alleged in the indictment relating to one of the obstruction of justice count involving Lynne DeMita is also a matter for trial.  If the defendant can prove that he was not in a position to coerce the witness to change her testimony, he may have a defense to that charge at trial.  However, the government has no reason to believe that the conduct did not take place at or around the time alleged or that the witness committed perjury.    The defendant makes other vague and unsubstantiated allegations that the government "may have violated the strict secrecy requirements as proscribed by Rule 6(d) and 6(e) of the Federal Rules of Criminal Procedure" but never elaborates further.  How did the government

14

violate Rule 6(d) and 6(e)?  The defendant also argues that the
government may have violated its ethical and Fifth Amendment duty
to present exculpatory evidence to the grand jury but gives no
basis for such an allegation.  As previously stated, the
government is not aware of any Brady material.  The defendant
makes other vague and unsubstantiated arguments for seeking
discovery of the grand jury minutes.  All are nothing more than
hypothetical and speculative at best.

        Finally, it is well-settled that it is enough that there
is some competent evidence to sustain the charge issued by the
grand jury even though other evidence before it is incompetent or
irrelevant in an evidentiary sense or even false.  Coppedge v.
United States, 311 F.2d 128 (D.D.Cir. 1962), cert denied, 373
U.S. 946 (1963).  The grand jury in this case heard competent
evidence to sustain the charges.  This grand jury was legally
constituted and unbiased which, on its face, is enough to call
for trial of the charges on the merits.  For all of the above
reasons, the defendant's motion for inspection of the grand jury
minutes should be denied.

## Conclusion

        For the foregoing reasons, the defendant's motions should be

15

stricken or, in the alternative, denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
LAURA J. KAPLAN
Assistant U.S. Attorney

June 9, 2005


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by hand upon counsel for the defendant, Peter C. Horstmann, Esq.

_____
Laura J. Kaplan
Assistant U.S. Attorney

Dated:    June 9, 2005

16

**Tab 1**



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

February 24, 2005

Peter Horstmann, Esq.
Partridge, Anker & Horstmann
200 Berkeley
Boston, MA 02116

> Re:  United States v. Scott Boidi
>      Criminal No. 05-10025 (GAO)

Dear Counsel:

Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government provides the following automatic discovery in the above-referenced case:

A.    Rule 16 Materials

1.    Statements of Defendant under Rule 16 (a)(1)(A)

    a.    Written Statements

Enclosed please find the following written reports or statements of your client:

    1.    Deposition testimony dated 9/17/93 (bates numbers 00001-00092);
    2.    CAP Organizational Interview Questionnaires (bates numbers 00821-00856);
    3.    Letter to Local 88 members dated 5/07/02 (bates numbers 00872);
    4.    Interview of Scott Boidi by Richard Cleary (bates numbers 00873-00880);
    5.    Scott Boidi change of plea dated 10/27/03 (bates numbers 00889-00967);
    6.    FBI FD-302 dated 6/3/94 (bates numbers 00818-00820);
    7.    Report of Lt. Robert H. Friend dated 2/11/00 (bates

numbers 00857-00858);
8.    Letters to Douglas Gow dated 2/20/01 (bates numbers
      00859-00860);
9.    Report of Investigation dated 08/23/02 (bates numbers
      00995-01007); and
10.   FBI FD-302 dated 01/29/01 (bates numbers 00099-00103).

There are no other relevant written statements of the
defendant SCOTT BOIDI in the possession, custody or control of
the government, which are known to the attorney for the
government.

    b.    Recorded Statements

Consensual tape recordings were made of telephone
conversations and personal meetings involving the defendant SCOTT
BOIDI.   These recordings are available for your review and copies
are enclosed.

    c.    Grand Jury Testimony of the Defendant

The defendant testified before the grand jury on March 22,
2001 in a related matter.  He invoked his Fifth Amendment
privilege against self-incrimination.  A copy of that testimony
is enclosed (bates numbers 00093-00098).

    d.    Oral Statements to Then Known Government Agents

The following document is enclosed:

        1.    FBI 302 dated January 29, 2001 is enclosed (bates
      numbers 00099-000100).

The government is unaware of any oral statements made by the
defendant before or after arrest, in response to interrogation by
a person then known to the defendant to be a government agent,
which the government intends to use at trial.

2.    Defendant's Prior Record under Rule 16 (a)(1)(B)

Enclosed is a copy of the defendant's prior criminal record
(bates numbers 00101-00112).

3.    Documents and Tangible Objects under Rule 16(a)(1)(C)

The relevant Rule 16 documentary evidence is listed in
Attachment A and copies of those documents are enclosed.

Additional books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to the defendant, such as boxes of subpoenaed materials belonging to Local 88 including bank statements, cashier audit reports, deposit tickets, pre-numbered duplicate receipts, Scott Boidi's 2001 American Express and expense records, as well as Providian National Bank records of Scott Boidi, American Express records of Scott Boidi, and records relating to handwriting exemplars may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time.

4.   Reports of Examinations and Tests under Rule 16 (a)(1)(D)

Enclosed is the following document:

1.   Certificate of Examination and Test Firing dated June 10, 2002 (bates number 00113).

Results of handwriting exemplars are available upon request.

There presently are no other reports of physical or mental examinations or scientific tests or experiments made in connection with this case.

B.   Search Materials under Local Rule 116.1(C)(1)(b)

A search warrant was executed at 30 Quincy Street, Quincy, Massachusetts on April 2, 2002.  A copy of the search warrant, application, affidavit, and evidence log are enclosed (bates numbers 00114-00141).  The seized items are available for your review upon request.

C.   Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire, or electronic communications of the defendant as defined in 18 U.S.C. § 2510 were intercepted relating to the charges in the indictment.

D.   Consensual Interceptions under Local Rule 116.1(C)(1)(d)

A written description of interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of wire and oral communications, relating to the charges contained in the

3

indictment made with consent of one of the parties to the communication ("consensual interceptions"), in which the defendant was intercepted or which the government intends to offer as evidence in its case-in-chief is enclosed as Attachment B.

E.   Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

There is no conspiracy count charged in the indictment.

F.   Identifications under Local Rule 116.1(C)(1)(f)

The defendant SCOTT BOIDI was not the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo spread or other display of an image of the defendant SCOTT BOIDI.

G.   Exculpatory Evidence Under Local Rule 116.2(B)(1)

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1.   The government is unaware of any information that would tend directly to negate the defendant's guilt concerning any count in the indictment.

2.   The government is unaware of any information that would cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress or exclude.

3.   The following witnesses testified pursuant to orders issued pursuant to 18 U.S.C. 6001, et. seq. and/or informal immunity letters.

> 1.   Lynne DeMita ("John Doe 4");
> 2.   Dominick Mazzeo; and
> 3.   Kevin Bird.

Another witness testified pursuant to an informal immunity letter, however, pursuant to L.R. 116.6, the government declines at this time to identify this witness by name, as disclosing the name might result in witness tampering, interference with an ongoing investigation, and/or risk of physical harm to a witness. Promises, rewards and inducements were provided to this witness. He or she has been provided with an application for a job with

the Police Department and given $500 for services and information provided to the DEA.

Another witness who, pursuant to L.R. 116.6, the government declines at this time to identify by name, as disclosing the name might result in witness tampering, interference with an ongoing investigation, and/or risk of physical harm to a witness, was assisted by agents of this investigation in filing a complaint with the police for an assault that occurred in December 2004 wherein he was the victim.  He or she was debriefed by the government pursuant to a proffer agreement.

James McClellan ("John Doe 2") was debriefed by the government pursuant to a proffer agreement.

Tom Brennan ("John Doe 1") entered into a plea agreement with the government wherein he agreed to cooperate and provide substantial assistance.  The government agreed that if he provided substantial assistance to the government, the government would move for a downward departure pursuant to U.S.S.G 5K1.1. In addition, for his security, the FBI provided Tom Brennan with $10,000 to relocate.

Robert Brennan is "John Doe 3."

4.   I have enclosed a copy of the criminal records of the following individuals:

   A.   Thomas Brennan (bates numbers 00142-00143);
   B.   Lynne DeMita (bates numbers 00144-00148);
   C.   Dominick Mazzeo (bates numbers 00149-00150); and
   D.   Robert Brennan (bates numbers 00157-00158)

I have also enclosed copies of the criminal records of two other witnesses, redacted so as to conceal their identity (bates numbers 00151-00156).

5.   The government is unaware that any of its other named case-in-chief witnesses has any criminal record.

6.   No named percipient witness failed to make a positive identification of the defendant with respect to the crimes at issue.

H.   Other Matters

Although disclosure is not required by the Local Rules, on November 7, 2001, toll analysis on the target phone, (617)921-

8858, subscribed to Local 88 and used by Scott Boidi, shows a call to (617) 515-1922. Enclosed you will find a copy of the toll analysis sheet containing that call as physical evidence that will be used in the government's case-in-chief (bates numbers 00159-00165).

The government is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(D).

Please call the undersigned Assistant U.S. Attorney at (617)748-3124 if you have any questions.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: LAURA J. KAPLAN
Assistant U.S. Attorney

enclosures

6

## ATTACHMENT A

1.  Letter from LIUNA dated 1/10/05 and Report of Initiation (bates numbers 00166-00170);
2.  Letter from LIUNA dated 10/4/2004 and Report of Initiation (bates numbers 00171-00173);
3.  Hertz rental car records and union minutes (bates numbers 00174-00179);
4.  November 27, 2002 Independent accountant's report (bates numbers 00180-00182);
5.  Money order dated 7/5/01 in the amount of $10,657.60 (bates numbers 00183-00184);
6.  March 6, 2001 union minutes (bates numbers 00185-00186);
7.  LIUNA Ethics and Disciplinary Procedure (bates numbers 00187-00241);
8.  LIUNA Constitution as amended September 23-26, 1996 (bates numbers 00242-00316);
9.  LIUNA Constitution as amended September 9-12, 1991 (bates numbers 00317-00388);
10. Toll analysis sheet for 11/07/01 (bates numbers 00159-00165);
11. Treasurer's check for $10,537.38 dated 12/20/01 (bates numbers 00391-00392);
12. Local 88 check number 1887 in the amount of $1802.56 payable to Hertz (bates numbers 00393-00394);
13. LIUNA Report of Initiation dated 9/94 (bates number 00395);
14. Two pages from LIUNA Official Receipt Book 8/31/94 to 9/24/94 (bates numbers 00396-00399);
15. LIUNA Report of Initiation dated 8/24/98 and cashier's audit report (bates numbers 00400-00402);
16. One page from LIUNA Official Receipt Book 7/15/98 to 7/30/98 (bates numbers 00403-00404);
17. Local 88 Monthly report of employee business expenses 9/5/01 to 10/03/01 (bates numbers 00405-00409)
18. Local 88 Monthly report of employee business expenses 8/7/01 to 8/31/01 (bates numbers 00410-00416);
19. Local 88 check number 1859 dated 10/10/01 in the amount of $16,148.93 (bates numbers00417-00418);
20. Photo of gun seized by Quincy Police Department (bates number 00389);
21. Photo of Quincy District Court bathroom paper towel dispenser (bates number 00390);
22. Records relating to NLRB complaint by Thomas Brennan (bates numbers 00419-00434);
23. Boidi grand jury testimony (bates numbers 00093-00098);
24. Boidi deposition testimony (bates numbers 00001-00093);
25. 1/29/01 FBI 302 (bates numbers 00099-00100);
26. Certificate of Examination and Test Firing dated June 10, 2002 (bates number 00113);
27. Boidi criminal history (bates numbers 00101-00112);
28. DeMita criminal history (bates numbers 00144-00148);

29.   Mazzeo criminal history (bates numbers 00149-00150);
30.   T. Brennan criminal history (bates numbers 00142-00143);
31.   R. Brennan criminal history (bates numbers 00157-00158);
32.   Sentry South repair invoice dated 11/6/01 (bates numbers
      00435-00436);
33.   Labor Organization Annual Report Forms LM-2 for 1998, 1999,
      2000, 2001, 2003 (bates numbers 00437-00553);
34.   Labor Organization Information Report Form LM-1 dated
      12/31/59 (bates numbers 00554-00555);
35.   Labor Organization Information Supplement Form LM-1A dated
      3/28/92 (bates number 00556);
36.   Citizens Bank records of Lynne M. DeMita, including account
      transcript, deposit items, and withdrawal slips (bates
      numbers 00557-00569);
37.   Citizens Bank statement of Local 88 dated 12/31/01 (bates
      numbers 00570-00573);
38.   Work papers of Campana, Sarza & Tatewosian, LLP. (bates
      numbers 00574-00817);
39.   5/24/94 FBI 302 (bates numbers 00818-00820);
40.   U.S. Department of Labor CAP Organizational Interview
      Questionnaire dated 10/22/96 (bates numbers 00821-00837)
41.   U.S. Department of Labor CAP Organizational Interview
      Questionnaire dated 3/22/99 and CAP Financial Questionnaire
      dated 3/12/99 (bates numbers 00838-00856);
42.   Massachusetts State Police memo dated 2/11/00 (bates numbers
      00857-00858);
43.   Letter to Douglas Gow from Paul McNally dated 2/20/01 (bates
      numbers 00859-00860);
44.   Letter to Douglas Gow from Paul McNally dated 2/28/01 (bates
      numbers 00861-00863);
45.   Memorandum to W. Douglas Gow from Richard Cleary dated
      3/14/01 (bates numbers 00864-00866);
46.   Memorandum to W. Douglas Gow from William Rotella dated
      3/26/01 (bates numbers 00867-00868);
47.   Memorandum to W. Douglas Gow from Richard Cleary dated
      3/27/01 (bates numbers 00869-00870);
48.   Memorandum to W. Douglas Gow from Richard Cleary dated
      4/25/01 (bates number 00871);
49.   Letters to Local 88 members from Scott R. Boidi dated 5/7/02
      (bates number 00872);
50.   Scott Boidi report of interview by Richard Cleary and George
      Bates, III dated 7/30-31/02 (bates numbers 00873-00880);
51.   Report of investigation by Richard Cleary dated 9/10/02
      (bates numbers 00881-00888);
52.   Boidi change of plea testimony dated 10/27/03 (bates numbers
      00889-00967);
53.   LIUNA Inspector General investigative documents (bates
      numbers 00968-01092);
54.   American Express statements dated 9/5/01 and 10/4/01 (bates
      numbers 01093-01106).

**ATTACHMENT B**
**DISCOVERY TAPES 2/24/05  SCOTT BOIDI**

| AGENCY | DATE | EXH. # | DESCRIPTION |
|---|---|---|---|
| OLRFI | 9/19/91 | | TELEPHONE CONVERSATION BETWEEN SCOTT BOIDI & PHIL BOHAN |
| FBI | 11/30/99 | | CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| FBI | 1/23/00 | | CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| FBI | 2/23/00 | | CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| DEA | 10/24/00 | N61 | MESSAGE LEFT ON DARDINSKI CELLL PHONE BY BOIDI |
| OLRFI | 12/7/00 | | UNDERCOVER CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| DEA | 1/11/01 | N77 | TELEPHONE CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| DEA | 1/11/01 | N78 | UNDERCOVER CONVERSATION BETWEEN SCOTT BOIDI & RONALD DARDINSKI |
| DEA | 4/3/-4/8/02 | N93 | BRIDGEWATER STATE HOSPITAL 3 TAPES SCOTT BOIDI, BRIAN BOIDI, ELAINE BOIDI, KEN MACLEAN |
| DEA | 4/9-11/02 | N103 | BRIDGEWATER STATE HOSPITAL 3 TAPES SCOTT BOIDI, BRIAN BOIDI, ELAINE BOIDI, KEN MACLEAN, RITA MCCARTHY, GEORGE GRIGORLUNAS |
| DEA | 5/14-19/02 | N111 | MIDDLESEX COUNTY JAIL CONVERSATIONS BETWEEN SCOTT BOIDI & BRIAN BOIDI, & VISITATION CARD |

**Tab 2**

# PARTRIDGE, ANKNER & HORSTMANN, LLP

ATTORNEYS AT LAW
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116

Telephone: (617) 859-9999
Facsimile: (617) 859-9998

Peter Charles Horstmann
pete@horstmannlaw.com

March 9, 2005

Laura Kaplan, Assistant U.S. Attorney
U.S. District Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 02110

Re:  *United States v. Scott R. Boidi*
     Docket No.: 05CR10025-GAO

Dear Attorney Kaplan:

This letter will confirm our conversation of yesterday, in which I inquired as to the existence of any Title III applications relevant to the above-referenced matter. You advised me that there are no such documents in existence, which relate to the above-referenced matter.

If you have any questions, please contact me.

Very truly yours,

Peter Charles Horstmann

PCH/fl

**Tab 3**

# PARTRIDGE, ANKNER & HORSTMANN, LLP

ATTORNEYS AT LAW
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116

Telephone: (617) 859-9999
Facsimile: (617) 859-9998

Peter Charles Horstmann
pete@horstmannlaw.com

March 30, 2005

AUSA Laura Kaplan
Assistant U.S. Attorney
U.S. District Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 02110

     Re:     *United States v. Scott R. Boidi;* Docket No.: 05CR10025-GAO

             Defendant Scott Boidi's Request For Discovery, Inspection,
             The Production of *Brady* Material, etc.

Dear Attorney Kaplan:

Please accept this submission as the Defendant Scott Boidi's formal request for discovery, inspection, the production of "*Brady*" materials and other pre-trial and evidentiary matters.

## A.   The Defendant's Request For Discovery And Inspection

Discovery and inspection of the items described below is necessary to the preparation of the defense to the instant charges. This request for discovery and inspection relates to items in the possession, custody, or control of the prosecutors in this case as well as all federal and state agencies or other Governmental entities that may have jointly participated in the investigation and/or preparation of this case.

With respect to those items which are requested, if the Government does not have physical possession of any or all such item(s), then the Defendant asks for a representation from the prosecution that, to its knowledge such items do not exist, or alternatively, that such items do exist but they are not in the physical possession or control of the Government. Further, if the prosecution in this case is aware that a requested item(s) exists, but it is not in its physical possession or control, then the Defendant requests that the prosecution disclose the whereabouts of such item(s).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 2

In this regard, the Government is requested to preserve and maintain any and all evidence that may be relevant to the Defendant's case pending resolution of disputed matters by the trial court. Moreover, the Government is asked to contact any or all federal, state and/or local Governmental agencies that participated in any manner in the investigation and preparation of this case to determine whether such agencies are in possession of any discoverable items, and if so, to secure such item(s), specifically including but not limited to any notes or reports (handwritten or otherwise), so that the Defendant may have discovery thereof.  It is the Defendant's position that this investigation has been in existence for over ten years and has involved many federal, state and local investigators.  The Government's attention is respectfully directed to the decision in *Kyles v. Whitley*, 514 U.S. 419 (1995), in which Mr. Justice Souter, expressing the opinion of the Court, explained the Government's obligation to determine the existence of, and to produce, "Brady" materials to a Defendant:

> [The State] suggested below that it would not be held accountable under *Bagley* and *Brady* for evidence known only to police investigators and not to the prosecutor.  To accommodate the State in this manner would, however, amount to a serious change of course from the *Brady* line of cases.  In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know.  But neither is there any serious doubt that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it."  Since, then, the prosecutor has the means to discharge the Government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the Government's obligation the ensure fair trials.

*Id.* at 1568 (quoting *Giglio v. United States*, 405 U.S. 150, 154 [1972]).  Accordingly, the Government is requested to contact any and all such agencies that may have participated in the investigations of this case and to insure that the files of such agencies and their representatives are carefully examined to confirm that all items to which the Defendant is entitled are produced.[1]

---

[1]    As noted above, the Defendant's request that the Government produce any and all information as may be known to, or otherwise be in the possession, custody and/or control of any city, state or federal agency,  is not limited to such information and/or materials that they may be entitled to under the provisions of Rule 16 Fed. R. Crim. Pro., but his request is also for production of any and all "*Brady* and/or *Gigilo*" material and/or "*Jenks*" materials and/or statements (18 U.S.C. § 3500). See, *United States* v. *Paternina-Vergara*, 749 F.2d 993, 996-997 (2nd Cir. 1988).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 3

As used herein, the term "document" means any tangible thing containing, reflecting or capable of reproducing or have reproduced from it, visually or orally, language, numerals or pictures, and relating or referring in any manner to the allegations of the Indictment and the matters referred to therein.  It is requested that the Government disclose the following:

1.    The Government is requested to permit the Defendant and his counsel to inspect and or copy any relevant, written or recorded statements or copies thereof, within the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known to the prosecutors in this case, which were purportedly made by the Defendant, Scott Boidi or any unindicted co-defendant.

2.    The Government is requested to produce for the Defendant's inspection and/or copying, that portion of any written record containing the substance of any relevant oral statement(s) that may have been made by the Defendant or any unindicted co-defendant.

3.    The Government is requested to produce for the Defendant's inspection and/or copying, the substance of any other relevant oral statement made by the Defendant or any unindicted Co-Defendant, whether before or after arrest in response to any person then known by the Defendant or any unindicted Co-Defendant, to be an agent of the Government or any investigating agency, if the Government intends to use such statement(s), in any manner, at trial.

4.    The Government is requested to produce, for the Defendant's inspection and/or copying, in whatever form, and any and all books, papers, documents, photographs, tangible objects, buildings places or copies of portions thereof, which are within the possession, custody or control of the Government in this case and which are material to the preparation of the Defendant's defense or which are intended for use by the prosecutors in this case as evidence-in-chief at the trial or were obtained from or belong(ed) to a Defendant.

5.    The Defendant further requests production of any books, papers, documents, photographs, tangible objects, buildings or places, or copies thereof, which are within the possession, custody or control of the prosecution that (a) are referred to directly or indirectly in the Indictment; (b) relate to any statement of fact in the Indictment, and/or will be alleged to constitute the fruits or means of perpetuating any offense set forth in the Indictment.

6.    The Government is requested to produce for the Defendant's inspection and/or copying any results or reports of physical or mental examinations and/or any scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the Government in this case, the existence of which is known, or by the exercise of due diligence may become known to the prosecutors in this case and which are material to the preparation of the Defendant's defense. Your attention is respectfully drawn to the fact that this obligation to provide discovery is not limited to only such reports, etc., which the Government intends to offer

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 4

during its case-in-chief, but applies to all such information whether the prosecution intends to offer it as evidence or not.

7.    The Defendant requests a designation by the prosecution in this case of those persons it intends to call as witnesses at the trial of the Indictment and the addresses of such parties. See, *United States v. Sainato*, 33 F.Supp. 155, 161 (E.D.N.Y. 1998).

The Government is respectfully reminded of its "continuing duty to disclose" any and all additional evidence or other material which has been previously requested or ordered to be disclosed or produced by the Court, or which is subject to discovery under Rule 16 of the Fed. R. Crim. Pro., or otherwise. In the event such additional evidence or information becomes known to the Government, counsel for the Government is requested to contact defense counsel as soon as possible so that discovery and/or inspection thereof can be accomplished. (See, Rule 16 [c]).

B.    *Brady/Gigilo/Bagley/Kyles* Material

1.    The Government is requested to disclose at this time, the names and addresses of any person whom the prosecution knows or through the exercise of due diligence may come to know, to have relevant information regarding any of the areas specifically described below, and/or any such information which the Government has reason to believe may tend to exculpate the Defendant, or which may otherwise reflect adversely or be inconsistent with the theory(ies) of the Government's case or which may impeach some or all of the information provided by any Government witnesses or potential witnesses, or otherwise adversely reflects upon any potential Government witness or any person who has supplied information to law enforcement agents in connection with the charges laid in the instant Indictment.

2.    In this regard, the Defendant respectfully asserts that any information which falls under the broad purview of *Brady* and its progeny - and in particular so-called *Gigilo*[2] or "impeachment materials" - must be turned over at this time. See, *United States v. Sainato, supra* at 161.

3.    The Government is requested to produce at this time, copies of all documents, statements, and any other evidence including, but not limited to, a written summary of all oral evidence and statements, known to the prosecutors in this case or which may become known or which through due diligence may be learned from the investigating agents or witnesses in this case or persons interviewed in connection with this investigation, which is exculpatory in nature or favorable to the Defendant, or which tends to negate or mitigate the guilt of the Defendant as to the offenses charged, or any uncharged criminal conduct which will be proffered by the Government, or which would tend to reduce any punishment therefore, or which may otherwise

---

[2] See, *Gigilo v. United States*, 405 U.S. 450 (1972).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 5

reflect adversely or be inconsistent with the theory(ies) of the Government's case or which may impeach some or all of the information provided by any potential Government witness or any person who has supplied information to law enforcement agents in connection with the charges laid in the instant Indictment. Please include the names, addresses, and telephone numbers of all persons who know or may know of any such favorable or exculpatory evidence.

4.      With respect to each person the prosecution may call as a witness at the trial of this Indictment, the Government is respectfully requested to identify and produce, in whatever form, any agreement(s) and/or understanding(s) to take any action, or refrain from taking any action, or to take or refrain from taking any action(s) at anytime in the future, which exist between such prospective witness and the prosecutor's office or between such witness and any city, state or federal Governmental agency, which has served, or arguably served, as any form of inducement or reward to such putative witness, or which the witness believes will or may enure to his benefit or to the benefit of any member of such witness' family (herein after "benefits"), boyfriend, girlfriend, lover, or to any business or criminal associate(s) of such witness (herein after "persons"). Such "benefits" are intended to include, but are not limited to:

    a.      With respect to any indictments, complaints and/or informations brought against any "person(s)" by the federal Government, or by any state or local Government, or any disciplinary actions, licensure  proceeding or the like, against any such "persons" - the Government is asked to disclose what actions have been taken, or proposed, including but not limited to, the disposition of any and all charges, consideration in sentencing or other punishment, or any agreement to adjourn the disposition of or not to bring charges. The Government is requested to disclose the circumstances underlying any convictions, dismissals, or understandings to dismiss at a future date, with respect to any "persons." The Government is asked to provide copies of any relevant documents, including but not limited to, any indictments, complaints and/or informations, as well as the date or dates of any dismissals, adjournments, pleas of guilty, or other dispositions, if any, that may have occurred, or will occur in the future, with respect to any such "persons." The Government is asked to disclose the names of the any judges or hearing officers before whom any such relevant actions took place. If the prosecution does not have copies of all indictments, complaints, information, or disciplinary actions, state the dates and places of arrests, hearings, indictments, information, etc., please provide a statement describing any charges brought, and the disposition of those charges so far as they are  known.

    b.      Set forth a written summary of all charges which could have been brought by any federal, or state of local Government, against any "person," but which have not or may not be brought, or which the witness believes have not or

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 6

may not be brought because the witness is cooperating with or has cooperated with
the federal, state or city Governments, in connection with this case.

5.    Include copies of all "cooperation agreements," or "plea agreements," or
"memoranda of understanding" between the prosecutors in this case and any potential witnesses
(or his counsel), whether by way of a letter to the attorney for a witness or otherwise.    In this
regard, and in light of existing case law,[3] this request expressly includes a request for disclosure
of any benefits extended to a witness(es) regarding his (their) conditions of confinement, access to
contact visits, telephone privileges, or the like. By extension, this request also embraces any
inducements or promises or benefits conferred on any other "person" at the behest of any
individual whom the prosecution intends to call as a witness at the trial.

6.    The Government is requested to disclose at this time, all information which may
bear on the credibility of any witness and all information bearing on his/her relationship to any
federal, state or city agency or agent, and any services or acts performed by him/her with the
knowledge of, or at the request of any state, city or federal Government agency.

7.    The Government is requested to disclose at this time, all documents and other
evidence regarding drug or alcohol usage and/or dependency by any individual the prosecution
intends to use as a witness at trial, including but not limited to, records relating to treatment of
such individuals in any federal, state, city or military drug or detoxification program.

8.    The Government is requested to disclose at this time, all documents and other
evidence or information regarding any physical or mental disease, disability, or disorder, past or
present, regarding any individual the prosecution intends to use as a witness at trial, including but
not limited to records of hospitalization or other treatments for such physical or mental disease,
disability, or disorder.

9.    The Government is requested to disclose at this time, all information which may
demonstrate an inconsistency or arguable inconsistency by a witness with another statement made
by another person or that person and all information which may demonstrate a lack of knowledge
or denial of knowledge by a witness about the facts of this case or the guilt or innocence of the
Defendant.

10.    The Government is requested to disclose at this time, all information and/or
documents relevant to social services, welfare, and other services provided free or at a reduced
cost by the City, State or Federal Government to any prosecution witness.

---

[3] See, *United States v. Burnside*, 824 F.Supp. 1215 (N.D. Ill. 1993).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 7

11.    The Government is requested to disclose at this time, copies of any and all records of any law enforcement or other Governmental agency reflecting any commendations, awards, or recognition of any kind received by, or requests for any commendations, awards or recognition of any kind made by, any Governmental attorney, agent or law enforcement officer for any work, action or conduct undertaken in connection with the investigation and prosecution of this case.

The law is well settled that it is not for the prosecutor to serve as the exclusive arbiter to unilaterally decide what material falls within the purview of *Brady* and its progeny. Accordingly, we ask that any information, which arguably falls within the aforementioned categories be disclosed to defense counsel or at least submitted to the Court for a judicial determination.

C.    Search, Seizure, Identifications and Related Material

1.    The prosecutors in this case are requested to disclose any and all applications (and attendant documents and/or exhibits), affidavits, testimony, inventories and/or orders seeking, granting or denying judicial permission to conduct a physical search of the person of Scott Boidi or any premises in which the Defendant had a reasonable expectation of privacy, which are within the possession, custody or control of the prosecutors, the existence of which is known or through the exercise of due diligence may become known to prosecutors in this case.

2.    The Government is requested to disclose any and all documents, objects or other tangible things which were obtained by virtue of any physical search and/or seizure of the person of Scott Boidi or any premises in which the Defendant had a reasonable expectation of privacy, with or without prior judicial authorization, and which are within the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.

3.    The Government is requested to disclose whether any pre-trial identification procedures were used in this case, and which concerned the defendant Scott Boidi, including but not limited to photographic displays, lineups, show-ups, etc. If so, the Government is requested to disclose at this time, the nature and circumstances of such identification procedure as well as the time, date, and place of the identification. State whether any witnesses were able and/or unable to identify of the defendant Scott Boidi, made a mistaken identification, or were uncertain in making an identification of the Defendant.

4.    The Government is requested to disclose any and all information, documents, reports, orders, affidavits, etc., which relate in any way to any "mail cover" operations or the examination of the mail of any of the Defendant in this case.

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 8

5.    The Government is requested to disclose any and all information, documents, reports, orders, affidavits, etc., which relate in any way to any "pen register" operations or to the affixing of any instruments to record the telephone number of any incoming or outgoing telephone calls which were utilized in the investigation of this case and which are within the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.

6.    The prosecutors in this case are requested to disclose any and all photographs (still photography), as well as any and all video recordings or motion pictures which were made in conjunction with this case, or which relate in any manner to this case, which are within the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.

7.    The prosecutors in this case are requested to disclose any and all applications, affidavits, orders or other documents which relate to any telescopically enhanced surveillance which was conducted in conjunction with the investigation underlying this case or which relate in any manner to this case, which is in the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.  If telescopically enhanced surveillance was accomplished without court order, please indicate this, including relevant dates, times, places, etc.

8.    If any "consent" search of any person or premises was conducted, provide all details of date, time, place and results. The prosecutors in this case are requested to disclose any and all forms, affidavits, or other documents which purport to grant consent to search any individuals, persons or premises which relate, in any manner, to this case and which are in the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.

9.    The prosecutors in this case are requested to disclose any and all court-authorized or non-court authorized observations by law enforcement officers of the Defendant that were made from: (a) airplanes, helicopters or other airborne devices; ( b) property owned, leased or in which any Defendant had a possessory, leasehold or ownership interest.

10.    The prosecutors in this case are requested to disclose whether there was any use of any sort of electronic tracking devices (including the tracking of any cellular phones), and if so, whether the use of such devices was pursuant to court or not. The Government is requested to state, if any electronic tracking devices was used, whether such device was wired to any vehicle. If any device was utilized pursuant to the order of any court, then the Government is asked to disclose any and all applications (and attendant documents and/or exhibits), affidavits, testimony, inventories and/or orders seeking, granting or denying judicial permission to use such device(s).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 9

D.    Wiretapping, Eavesdropping and Consensual Recordings and Related Materials

1.    Discovery is sought as to all documents, applications, affidavits, supplemental affidavits, exhibits, transcripts, testimony, memoranda, warrants, orders, etc., which purport to grant permission to intercept the "oral," "wire" and/or "electronic" communications (as those terms are defined in 18 U.S.C. § 2510[1], [2]&[5]) of the Defendant and which were issued by any federal, state or city judicial officer, or which relate to communications that emanated from any premises or over any instrument in which any Defendant possessed a proprietary interest, or which were made in connection with a court ordered eavesdropping warrant in which the Defendant was a person against whom the interception of any wire, oral or electronic communication was directed.

2.    Discovery is also sought as to any and all statements of the Defendant, whether oral, recorded or written, which were seized pursuant to court-ordered eavesdropping, or which emanated from any premises or over any instrument in which the Defendant possessed a proprietary interest, or which were made in connection with a court ordered eavesdropping warrant in which the Defendant was a person against whom the interception of any wire, oral or electronic communication was directed, which are within the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government.

3.    Discovery is sought as to any and all mechanical or electronic recordings and/or tapes that contain the Defendant's, "oral communications," and/or any "wire communications" which emanated from any premises or over any instrument in which the Defendant possessed a proprietary interest, or which were made in connection with a court ordered eavesdropping warrant in which the Defendant was a person against whom the interception of any wire, oral or electronic communication was directed or who was named as a party to be intercepted or was a person who was in fact intercepted.

4.    Discovery is sought as to any and all memoranda, logs, line sheets, reports, notes, summaries, transcripts, periodic reports or other written or oral communications whatsoever, which were made by any public servant, or their duly authorized representatives, which relate in any way to any wiretapping or eavesdropping conducted by agents of federal, state or city Governments in which the "oral communications," of the Defendant, were intercepted, or any "wire communications" which emanated from any premises or over any instrument in which the Defendant possessed a proprietary interest, or which were made in connection with a court ordered eavesdropping warrant in which the Defendant was a person against whom the interception of any wire, oral or electronic communication was directed or who was named as a party to be intercepted or was a person who was in fact intercepted.

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 10

5.      Discovery is sought as to any and all requests, applications (whether granted or not) and/or orders seeking or granting any order for the renewal or extension of any previously existing eavesdropping order(s), authorizing the interception of the of the Defendant's communications, whether issued in accordance with 18 U.S.C. §2518 (1)(f) and (3), or which relate to communications that emanated from any premises or over any instrument in which the Defendant possessed a proprietary interest, or which were made in connection with a court ordered eavesdropping warrant in which the Defendant was a person against whom the interception of any wire, oral or electronic communication was directed.

6.      Discovery is sought as to copies of any and all progress reports, or orders to make such reports, whether issued in accordance with 18 U.S.C. §2518 (6), or otherwise.

7.      Discovery is sought as to any and all requests, applications and/or orders amending any eavesdropping order or warrant to retroactively authorize the seizure of conversations, of the Defendant dealing with offenses other than those specified in the original order, or any extensions or renewals thereof, made in accordance with the provisions of 18 U.S.C. § 2517 (5), or otherwise.

8.      Discovery is sought as to any schedule(s), or logs or other documents maintained during or made in conjunction with the interception of any wire or oral communications of the Defendant by law enforcement personnel, which relate to efforts to minimize (as required by 18 U.S.C. §2518[5]) the seizure of privileged communications or communications not otherwise subject to interception under the terms and conditions imposed by the judicial eavesdropping order(s) extent.

9.      Discovery is sought as to any and all requests, applications and/or orders seeking or requiring the sealing of tapes recordings (as required by 18 U.S.C. § 2518[8][a]) that relate to this case, specifically including any submissions made by any Government representative to any judge, and/or the transcript(s) or record(s) of any proceedings and any affidavits or other written papers submitted in connection therewith, which relate to the sealing of any tapes, or the failure to seal or the failure to "immediately" seal any tape recordings that relate to this case.  Discovery of such information is also requested as to any "agent," co-Defendant, or alleged "co-conspirator" of the Defendant.

10.     Any and all documents which relate to the use of "pen registers," "trap" or "trace" devices by law enforcement personnel in conjunction with this case.

11.     Copies of any and all inventories prepared in conjunction with wiretapping or eavesdropping activity, which relate to this case.

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 11

     12.    Copies of any and all transcripts prepared from tapes made in conjunction with or subsequent to wiretapping or eavesdropping activity, which relate to the present case.

     13.    Copies of any and all reports required pursuant to 18 U.S.C. § 2519(1) or state counterparts thereof.

     14.    Copies of any and all orders served in conjunction with the requirement to provide notice of overhear, pursuant to 18 U.S.C. § 2518 (8)(d) or otherwise, and any and all documents relevant to extensions or renewals thereof.

     15.    Any and all documents which reflect the consent of any person to have his or her wire or oral communications intercepted, which are in the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to the Government;

     16.    Any and all applications, requests or correspondence seeking the permission of the Attorney General of the United States or any other federal or state law enforcement officer, to consensually record wire or oral communications, which are in the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government;

     17.    Any and all transcripts, tapes or recordings (made pursuant to consent of the party[ies] or by court order) in the possession, custody or control of the Government, the existence of which is known or through the exercise of due diligence may become known to counsel for the Government, which were made by a person who had given prior consent to such interception whether or not such person was a law enforcement officer or Government employee;

     18.    Any and all orders permitting the interception of radio communications and all tapes or recordings produced in accordance therewith.

     19.    Any and all subscriber or customer records of the Defendant obtained pursuant to Section 2703 of the Electronic Communications Privacy Act of 1986, and any documents which authorized the Government to obtain such information.

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 12

> E.    The Defendant Requests That The Government Give Notice
> Of And Identify, Any Evidence Of Uncharged Crimes Or
> Alleged Prior And/Or Subsequent Acts Of Moral Turpitude,
> Which The Government Proposes To Introduce Pursuant To
> Rule 404 (b) Of The Fed. R. Evid.

Pursuant to Rule 404(b), the Government is required to "provide [the defense with] reasonable notice, in advance of trial . . . of the general nature of any such evidence it intends to offer at trial." The notes of the Committee on Judiciary indicate that the disclosure of such "other crimes" proof is not limited to evidence which the Government intends to offer in its case-in-chief; "the amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal."    Accordingly, the Defendant respectfully requests that the Government provide notice, at this time, of any evidence, which would be subject to the provisions of Rule 404(b).

The Defendant's request for "other crimes" proof is also predicated upon the authority of Rule 12(d)(1) and (2) of the Federal Rules Criminal Procedure. As Judge Elfvin explained in *United States v. Gullon*, 672 F.Supp. 99, 105 (W.D.N.Y. 1987), "one of the purposes of Rule 12(d) is to obviate the need for Defendant to make motions against evidence which will not be introduced at trial." "Other crimes" proof has specifically been deemed to fall within the purview of Rule 12(d)(2).[4] Thus, the Defendant relies upon the authority of Rule 12(d) as a supplementary basis to seek pretrial disclosure of such proof.

> F.    Defense Request Pursuant To Rule 12 (d)(2) For Notice By
> The Government Of Its Intention To Use Evidence

The Defendant respectfully requests that the Government give notice of its intention to offer evidence in accordance with the provisions of Rule 12 (d)(2) of the Fed. R. Crim. Pro. In order to afford the Defendant a full and fair opportunity to move to suppress or otherwise exclude evidence pursuant to, *inter alia*, Rule 12 (b)(3) of the Fed. R. Crim. Pro., 18 U.S.C. § 3504, 18 U.S.C. § 2515 and 2518 (9)&(10)(a) and the Fourth Amendment of the United States Constitution, the Government is herewith requested to give notice at this time of its intention to use any evidence, including but not limited to, evidence that the Defendant is entitled to discover under Rule 16, 18 U.S.C. 2518 *et seq*, or under the authority of any other Rule, statute or by Order of this Court.

---

[4]See also, *United States v. Padilla*, 744 F.Supp. 1425, 1427 (N.D.Ill. 1990);  *United States v. Cole*, 707 F.Supp. 999, 1004 (N.D.Ill. 1989).

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 13

G.    Request Pursuant To Rule 807 Of The Federal Rules Of Evidence

The Defendant respectfully requests that the Government provide his counsel with notice, at this time, of any evidence which it will seek to offer pursuant to Rule 807 of the Federal Rules of Evidence. This Rule provides, *inter alia*, that a hearsay statement offered under this exception may not be admitted ". . . unless the proponent of it makes known to the adverse party, sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponents intention to offer the statement and the particulars of it, including the name and address of the declarant." Accordingly, in the event that the Government intends to offer any evidence pursuant to Rule 807, it is requested to make pretrial disclosure of all relevant information at this time.

H.    Notice Of The Government's Intention To Offer Any Statements, Pursuant To 18 U.S.C. § 3501 Or Otherwise, Alleged To Be A "Confession" Of The Defendant, Or Any "Confession(s)" Of Any Co-Defendant(s) That May, Directly Or Indirectly, Implicate Such Defendant

The Defendant respectfully requests that the Government, at this time, provide notice of its intention to offer any evidence which could be deemed to constitute a "statement" and/or a "confession" by any co-Defendant of the Defendant, Scott Boidi, and/or the "statements" and/or "confession(s)" of any co-Defendant(s), which arguably implicate, directly or indirectly, Mr. Scott Boidi. Notice of any confessions by any co-Defendant(s) is sought so that the Defendant may move, pursuant, *inter alia*, to 18 U.S.C. § 3501 and/or *Bruton v. United States*, 392 U.S. 123 (1968) and its progeny, to suppress or otherwise exclude such evidence. Also see, 18 U.S.C. §3501

I.    Miscellaneous Materials

1.    The Defendant Scott Boidi requests a copy of his prior criminal record. In addition, he requests the prior criminal record, if any, of any unidicted Co-Defendant and/or alleged agents or co-conspirators if the prosecution intends to offer such records at trial.

2.    State whether any witness or prospective witness was hypnotized. If so, describe the circumstances surrounding the hypnosis and provide copies of any video and/or tape recordings which may have been prepared to memorialize the hypnotic procedure.

3.    The Defendant requests timely production of all statements required to be disclosed under the provisions of 18 U.S.C. § 3500, including but not limited to handwritten and other informal notes of interviews. The Government is also requested to produce all responsive materials prepared by or in the possession of any participating agencies. *See United States v.*

PARTRIDGE, ANKNER & HORSTMANN, LLP

A.U.S.A. Laura Kaplan
March 30, 2005
Page 14

*Paternina-Vergara*, 749 F.2d 993, 997 (2d Cir. 1984).  Additionally, the Defendant requests that rough drafts or handwritten notes of such statements be preserved and produced.  In this regard the Government is specifically requested to immediately contact any and all law enforcement agents, agencies, individuals or entities that may possibly have information or statements subject to production under 18 U.S.C. §3500 and to inform them to preserve any and all rough drafts, handwritten notes, recordings or other memorialized statements or information.  If any such statements, drafts or notes have been or are intended to be discarded or destroyed, please identify such statements and notes in sufficient detail to permit a request to the Court for appropriate relief in advance of trial.

      4.     The Defendant requests that the Government produce any and all "draft transcripts" which it may have created from any electronically recorded communications which relate to this case, and to continue to produce such additional "draft transcripts" as may subsequently be created in preparation for the trial of this matter.  In this regard counsel for the Defendant will agree to enter into and execute a stipulation representing that he will not utilize such draft transcripts as may be produced by the prosecution for the purpose of cross examining any Government witness as to the accuracy of any such transcript or the contents of any underlying tape recording.

      J.    <u>Conclusion</u>

      If you would like to discuss any of the items or information requested, or the basis upon which any request is predicated, please do not hesitate to contact my office. Your attention to this matter is greatly appreciated.

              Very truly yours,

              Peter Charles Horstmann, Esquire

cc:    Clerk of the Court
       United States District Court, Electronically

# Tab 4



**U.S. Department of Justice**

FILED
CLERKS OFFICE

*United States Attorney*
*District of Massachusetts*

2005 MAR 31  P 2: 06

U.S. DISTRICT COURT
DISTRICT OF MASS.

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

March 31, 2005

Peter Horstmann, Esq.
Partridge, Anker & Horstmann
200 Berkeley
Boston, MA 02116

COPY

        Re:  United States v. Scott Boidi
             Criminal No. 05-10025 (GAO)

Dear Counsel:

        I am in receipt of your discovery letter dated March 30,
2005.  The government does not agree to provide the requested
information since it is expressly disallowed under Local Rules of
the United States District Court 116.3(D).  Much, if not all, of
the requested information has previously been provided to you in
automatic discovery.  Some of your other requests relate to
information the government is not under an obligation to provide
until 21 days prior to trial under Local Rule 117.1(A)(4).

        If there is specific information that you are looking for, I
would be happy to discuss the matter with you further.

                        Very truly yours,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                By:  _____
                        LAURA J. KAPLAN
                        Assistant U.S. Attorney

cc: Clerk of the Court