UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES                       )
                                    )
v.                                  )
                                    )        Criminal No.: 05 CR 10025-GAO
SCOTT R. BOIDI,                     )
          Defendant.                )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### SCOTT BOIDI'S MOTION TO DISMISS AND/OR SEVER COUNTS OF SECOND
### SUPERCEDING INDICTMENT AND/OR FOR A BILL OF PARTICULARS

## I. PRELIMINARY STATEMENT

In the instant Second Superceding Indictment, ("the Indictment"), the sole defendant Scott Boidi  is charged in nine separate counts. Count One alleges a substantive RICO violation (to wit; 18 U.S.C. §1962[c]). It charges that the defendant conducted he affairs of the "enterprise" (said to be Local 88 of the Laborer's International Union of North America Compressed Air & Free Air Shafts, Tunnels, Foundations, Caissons Test-Boring, Subway, Sewer, Sewer Cofferdam Construction Workers Union of Massachusetts and Vicinity, hereinafter referred to as "Local 88") through a pattern of racketeering activity. The Indictment alleges that the defendant "conducted and participated, directly and indirectly, in the conduct of the affairs of Local 88 through" the commission of the seven predicate racketeering acts enumerated below.

Racketeering Act No. 1 alleges that the defendant committed "Mail Fraud" (18 U.S.C. §1341) in September of 1994. This Racketeering Act is based upon the theory that the defendant's conduct "deprived Local 88 and its members of the defendant's honest services." See 18 U.S.C. §1346; (Ind., at p. 6-7, ¶15).  Racketeering Act No. 2 also charges a violation of the Mail Fraud stature which purportedly occurred in August of 1998, and is similarly based upon a "deprivation of honest services" theory.  (Ind, at p. 8-9, ¶15). Racketeering Act No. 3 charges the defendant with a Taft- Hartley violation (29 U.S.C. §501[c]), alleging that the

defendant embezzled $16,148.93 in Union assets.  (Ind, at p. 9, ¶15).  Racketeering Act No. 4 also alleges a Taft-Hartley violation, asserting that the defendant embezzled $1,802.56 by having the Union pay for a Hertz rental car, which the government claims he use for personal purposes. (Ind. at p. 9, ¶15).  Racketeering Act. No. 5, also a Taft-Hartley violation, alleges that the defendant unlawfully converted to his own use $7,500 in dues owed to the Union.  (Ind., at p. 10, ¶15).  Racketeering Act No. 6 alleges two separate criminal violations. Paragraph (a) alleges that between January 2000 and June 2002 the defendant possessed at least 500 grams of a Schedule II controlled substance (cocaine) in violation of 21 U.S.C. §841(a)(1). Paragraph (b) of Racketeering Act No. 6, charges the separate offense of Using a Communications Facility to facilitate the narcotics offense alleged in Racketeering Act 6 (a) and in Count 5 (which pleads the same section 841(a)(1) offense as a substantive count), in violation of  21 U.S.C. §843(b). (Ind. at p.10-11, ¶15).  Finally, Racketeering Act No. 7 alleges that the defendant attempted to obstruct justice by corruptly persuading John Doe No. 4 to lie before a federal grand jury. (Ind. at p. 11, ¶15).

Count Two of the Indictment alleges the same conduct described in Racketeering Act No. 3, the alleged embezzlement of Union funds on October 10, 2001, charging it as a substantive violation of 29 U.S.C. §501(c). (Ind. at p. 12,  ¶16).  Count Three charges the same conduct alleged in Racketeering Act No.4  - the personal use of a vehicle paid for by the Union - charging it as a substantive violation of 29 U.S.C. §501(c). (Ind. at p. 13,  ¶17).  Count Four alleges the same conduct plead as Racketeering Act No. 5 - the embezzlement of dues owed to the Union - charged as a substantive, section 501(c), Taft-Hartley violation. (Ind. at p. 14,  ¶18).  Counts Five and Six allege the same conduct alleged in Racketeering Act. No. 6 - i.e. a substantive violation of 21 U.S.C. §841(a)(1) and the Use of a Communications Facility to facilitate a drug transaction in violation of 21 U.S.C. §843(b).  (Ind. at p. 15-16,  ¶19 & 20).   Count Seven alleges that the defendant used and carried a gun in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).(Ind. at p. 17,  ¶21).  Count Eight alleges that the defendant obstructed justice by attempting to influence a witness's testimony at a proceeding before the National Labor

Relations Board, in violation of 18 U.S.C. §1505. (Ind. at p. 18, ¶22). Count Nine alleges the same conduct plead in Racketeering Act No. 7 - attempting to influence a witness's testimony before a federal grand jury - as a substantive "Witness Tampering" count, in violation of 18U.S.C. §1505. (Ind. at p. 19, ¶23).

The instant memorandum of law is offered in support of the defendant's motion to dismiss Counts One, Five, Six and Seven and for a Bill of Particulars.

As more fully addressed in Argument A *infra*, the defendant seeks the dismissal of Count One of the Indictment upon the grounds that the "pattern of racketeering activity" element of the substantive RICO violation charged (§1962[c]), is defective as a matter of law. This claim is based upon the fact that the predicate offenses alleged in Racketeering Act No. 6 are not "horizontally related"[1] to the other predicate acts said to constitute the "pattern of racketeering activity," nor is the conduct alleged in connection with Racketeering Act No. 6, "vertically related" to the named enterprise. Further, Racketeering Act No. 6 is duplicitous in that it charges two separate offenses - a violation of 21 U.S.C. §841(a)(1) in Racketeering Act 6(a) and a violation of 21 U.S.C. §843(b) in Racketeering Act No. 6(b) - in a single racketeering act. (See Argument C, *infra*.). Finally, Racketeering Act No. 6(a) is duplicitous in that it alleges multiple violations of 21 U.S.C. §841(a)(1) in a single predicate act.(see Argument B, *infra*.).

Count Five, which charges as a substantive offense the same conduct said to support the allegations underlying Racketeering Act No. 6(a), is defective because it too, is duplicious. (See Argument B, *infra*.). Mirroring the allegations contained in Racketeering Act No. 6(a), in Count Five the government has plead a series of separate, independent, violations of 21 U.S.C. §841(a)(1) - all of which purportedly occurred during the 18 month period from January 2000 until June of 2002 - as a single §841(a)(1) violation.

---

[1] The constructs of "horizontal relatedness" and "vertical relatedness" derive from the Supreme Court's efforts in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) to explain the temporal and transactional parameters of connectivity that predicate acts must exhibit in order to demonstrate that they are sufficiently "related" to one another, as well as to the enterprise to constitute constituent parts of a single unitary "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

Count Seven, which charges that the defendant used and carried a firearm in relation to a drug trafficking crime, is also defective because it is linked to, and dependent upon, Count Five. Since Count Five impermissibly aggregates multiple violations of 21 U.S.C. §841(a)(1) in a single count, it is impossible to determine which specific §841(a)(1) violation the defendant purportedly used and carried a firearm in connection with. As a result, Count Seven is rendered both duplicitous and constitutionally insufficient. (See Argument D, *infra*.).

## II. ARGUMENT

A.     **THE INDICTMENT FAILS TO CHARGE A UNITARY PATTERN OF RACKETEERING ACTIVITY WITHIN THE MEANING OF 18 U.S.C. §1961(5). IT THEREFORE FAILS TO CHARGE A LEGALLY SUFFICIENT VIOLATION OF 18 U.S.C. §1962(c).**

As explained in the preceding Preliminary Statement, Count One of the instant indictment charges a violation of the substantive provision of RICO, 18 U.S.C. §1962(c).[2] In order to establish a violation of §1962(c), the government must plead and prove 4 separate elements; (1) that an "enterprise" (within the meaning of §1961[4])[3] existed (2) that the defendant was associated with or employed by that enterprise (3) that the enterprise was engaged in interstate or foreign commerce, and that (4) the defendant conducted the affairs of that enterprise through "a pattern of racketeering activity."[4]

For a substantial period of time following the enactment of the RICO in 1970,[5] courts struggled with the issue of what was the proper formulation to be given to the RICO element of

---

[2] 18 U.S.C. §1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[3] 18 U.S.C. §1961(4) provides that an: "Enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

[4] 18 U.S.C. §1961(5) provides that a: Pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

[5] P.L. 91-452, Title IX, §901(a), 84 Stat. 941, Oct. 15, 1970.

"a pattern of racketeering activity." Ultimately, the Supreme Court granted *certiorari* in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), principally in an effort to provide guidance on what was required to prove a "pattern of racketeering activity."

The Court in *H.J. Inc.*, explained that the determination of whether a group of predicate acts demonstrated sufficient transactional and temporal attributes to qualify as a "pattern," depended upon the relative "relatedness" and "continuity" of the acts in question.[6]

The Court went on to find that the requirement of "relatedness" was two fold. Mr. Justice Brennan, who wrote the majority opinion for the Court in *H.J. Inc.*, explained that under RICO, acts said to constitute a  "pattern" had to show that both they were related  *inter se*, and that they also were  individually related to the enterprise. These dual concepts of  "relatedness" would later be described in terms of "horizontal relatedness" (the relationship between the acts themselves) and "vertical relatedness" (the relationship between the acts and the enterprise). "The requirement of 'relatedness' embodies two different concepts.  The racketeering acts must be related to each other 'horizontal' relatedness, and they must be related to the enterprise 'vertical' relatedness'" *United States v. Minicone*, 960 F.2d 1099, 1106 (2nd Cir. 1992); accord, *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992); *United States v. Simmons*, 923 F.2d 934, 951 (2d Cir. 1991).

The Court in *H.J. Inc*. found that the second component of pattern - "continuity" - could be demonstrated in two possible ways. Either by showing that the acts continued for so long a period of time as to be deemed "continuous" (so-called "closed-end continuity"), or alternatively, that the conduct at issue threatened to continue into the future (so-called "open-ended"

---

[6] At the time, the majority's formulation of "relatedness" drew rather sharp criticism from Mr. Justice Scalia. Objecting to what he felt was an overly vague description of what had to be shown to establish that predicate acts are sufficiently related to one another to justify inclusion in a single "pattern. Justice Scalia wrote: "Elevating to the level of statutory text a phrase taken from the legislative history, the Court counsels the lower courts: "'continuity plus relationship.'" Ante, at 239 (emphasis deleted). This seems to me about as helpful to the conduct of their affairs as 'life is a fountain.' Of the two parts of this talismanic phrase, the relatedness requirement is said to be the 'easier to define'...[but it] hardly closes in on the target to know that 'relatedness' refers to acts that are related by 'purposes, results, participants, victims, . . . methods of commission, or [just in case that is not vague enough] otherwise." (Scalia, J., concurring, *Id*. at 252).

continuity). As the Court noted: "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

While the Court explained that "closed-end continuity" could be established by "proving a series of related predicates extending over a substantial period of time," *Id.* at 241, it took some time before the lower courts sorted out just how long "a substantial period of time" was. Since the decision in *H.J. Inc.*, it has come to be the generally accepted rule that so called "closed-end continuity" requires that the racketeering activity continue for at least a period of two years.[7]

Open-ended continuity is somewhat more difficult to characterize. The Court in *H.J. Inc.*, explained that; "[w]hether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case... A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat

---

[7] *Abn Amro Mortgage Group, Inc., v. Maximum Mortgage, Inc.*, ___ F. Supp. 2d ___, 2005 U.S. Dist. LEXIS 17612 (N.D. Ind. 2005): "Although the Seventh Circuit has not established a per se duration requirement, in Midwest it provided an expansive list of cases where a duration of less than two years was insufficient to establish continuity under a closed-ended analysis." Also; *Gicc Capital Corp., v. Technology Finance Group, INC.*, 67 F.3d 463, 468-469 (2d Cir. 1995): "As noted above, we have twice found closed-ended continuity since the Supreme Court's decision in *H.J. Inc.*, and in each case the alleged pattern extended for a longer period of time. Those courts of appeals considering the issue have consistently refused to treat predicate acts occurring over a similar (or even longer) period of time a 'pattern of racketeering activity' under RICO. See *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.) (finding single-victim scheme lasting seventeen months insufficient to show continuity), cert. denied, 513 U.S. 1017 (1994); *Hughes v. Consol-Pennsylvania Coal Co.,* 945 F.2d 594, 611 (3d Cir. 1991) (holding that 'twelve months is not a substantial period of time' for purposes of establishing pattern of racketeering activity), cert. denied, 504 U.S. 955 (1992); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (concluding that thirteen months is not substantial under RICO); *Menasco v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (holding that predicate acts with single goal occurring over one-year period do not form pattern); see also *Metromedia*, 983 F.2d at 369 (noting that 'periods of 19 or 20 months . . . have been held sufficient to support a finding of continuity'); *Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) (per curiam) (noting that 'we have found no case in which a court [of appeals] has held the [continuity] requirement to be satisfied by a pattern of activity lasting less than a year'). Though an approach giving such weight to the duration of criminal activities alleged in connection with a closed-ended pattern of racketeering activity is undoubtedly somewhat mechanistic, we believe that it is required to effectuate Congress's intent to target 'long-term criminal conduct.' *H.J. Inc.*, 492 U.S. at 242; see id. at 243 n.4 ('When Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity.'); see also S. REP. NO. 91-617, at 158 (1969) (explaining pattern requirement); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n.14 (1985) (discussing RICO's legislative history). As the Court suggested in H.J. Inc., continuity is centrally a temporal concept." 492 U.S. at 242."

of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity." *Id.* at 242-243

**1.     The Present Case Directly Implicates Both the Horizontal Relatedness And the Vertical Relatedness Requirements of the Pattern Element.**

As explained above, the first requirement, which must be met to justify the amalgamation of a series of acts into a unitary "pattern of racketeering activity," is that such acts must, *inter alia*, show the indicia of so-called "horizontal relatedness. "

**a.     The Drug Predicates Are Not Horizontally Related to Other Predicates Acts Alleged, and Therefore, They Cannot be Joined in a Single Pattern of Racketeering Activity.**

In *H.J. Inc.*, the Court held that predicate acts will be deemed horizontally related when they "**have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events**." *Id.* 492 U.S. at 239, emphasis supplied.  As the Court further explained: "There is something to a  RICO  pattern beyond simply the number of predicate acts involved . . . The mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" *Id.* at 238.

Thus the question that is presented at bar, is upon what basis can it be said that the seemingly disparate allegations set forth in Racketeering Act No. 6 - which charge the defendant with possession with intent to distribute cocaine and using a communications facility in furtherance thereof - are somehow "related" to the Taft- Hartley, Mail Fraud and Witness Tampering predicates which make up the rest of the pattern.

In this regard, during a recent the appearance before Magistrate Judge Judith G. Dein, the Court asked the government upon what theory it had proceeded in joining the drug charges in the same pattern of racketeering activity with the other predicates. The prosecution explained that

the basis upon which they relied; was their contention that the defendant allegedly had the drugs that he purchased delivered to his offices at the Union, that he possessed and alleged used and shared such drugs with others at the Union office, and that he had possessed and/or used such drugs in a vehicle which the Union had rented for him for the purposes of conducting Union business.

However juxtaposing the drug charges with the other predicate acts alleged - and even viewing the facts in the most favorable light to the government - no argument can be made that a valid basis exists for joining these disparate acts in a single unitary pattern. Applying the *H.J. Inc*. test for determining horizontal relatedness to the facts extant, it is clear that the acts giving rise to the drug charges were, vis-à-vis the other predicates; (1) not for "the same or similar purposes" (2) that the drug charges did not have the same "results, participants, victims, or methods of commission" (3) and finally, that such charges were not "otherwise interrelated by distinguishing characteristic[s]."

Most respectfully, the contention that because the defendant allegedly had drugs delivered to and/or purportedly consumed such drugs at the Union offices, or in a Union vehicle, somehow provides justification to join this conduct in a single pattern of racketeering with the other crimes said to make up the pattern, is to simply ignore the criteria upon which horizontal relatedness in predicated.

**b.     The "Same Pattern" Double Jeopardy Analysis Confirms that the Drug Predicates Cannot be Joined in the Pattern of Racketeering Alleged In Count One**

A parallel analytical model for determining whether various predicate acts can be said to constitute a unitary pattern of racketeering activity, derives from the RICO double jeopardy cases. As these cases teach, in order to determine whether a successive RICO prosecution constitutes a violation of the Double Jeopardy Clause, the initial determination which must be made - is what did Congress intend to be the allowable "unit of prosecution" for a substantive §1962(c) violation. *Toussie v. United States*, 397 U.S. 112, 114 (1970);  *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978).

The decision by the Eighth Circuit in Court of Appeals in *United States v. Dean*, 647 F.2d 779 (8th Cir. 1981), was the progenitor of the RICO double jeopardy cases and the first decision to formulate the standards for determining an allowable "unit of prosecution" under RICO. The case arose out of series of bribes allegedly received by Frank Dean while he was County Judge of Poinsett County, Arkansas. An Arkansas federal grand jury returned two indictments against Dean. One indictment, involved his bribery transactions with Paul A. Baldwin, and charged twenty-nine counts of violating the Travel Act and one count of violating 18 U.S.C. §1962(c). The other indictment involved Dean's bribery transactions with Irvin R. Pratt. It charged seven Travel Act violations and one count of violating 18 U.S.C. §1962(c).

Dean argued that to try him separately for both RICO counts "would amount to double jeopardy, because both counts alleged the same offense, participation in the same enterprise through the same 'pattern of racketeering activity,' i. e. a bribery and kickback pattern." *Id* at 785

Although the Court in <u>Dean</u> conceded the "undeniable similarity between the patterns of activities under the two RICO counts," *Id.* at 789, and further recognized that "all the activities allegedly involved the same crime of bribery under the Arkansas statutes and the federal Travel Act" *Id.* at 789, it ultimately held that while both patterns of racketeering activity were made up of the same kind of criminal activity, "different time periods were involved in the racketeering activity," and the "nature and scope of the activity was somewhat different under each count." *Id.* at 788. As a result, the Court held that, "all in all, the charges involve two distinct patterns of bribery rather than one." *Id.* at 789. Finding what the Eight Circuit described as an "unmistakable Congressional purpose to allow a separate unit of RICO prosecution for each distinct pattern of racketeering activity," the Court held:

> Giving full weight to the rule of lenity, **we still perceive an unmistakable Congressional purpose to allow a separate unit of RICO prosecution for each distinct pattern of racketeering activity...** It would not be consistent with this basic purpose to read too readily into the act limitations preventing punishment for each instance of the evil Congress sought to address. That evil was the use of a pattern of racketeering activity as a means of operating an

enterprise. **We conclude that RICO includes a separate unit of prosecution for each distinct pattern of racketeering activity**.

*Id*. 647 F.2d at 787-788, emphasis supplied. The reasoning and methodology applied in *Dean* has been adopted and uniformly followed by all Courts to reach the issue. As the First Circuit Court of Appeals observed in *United States v. DeCologero*, 364 F.3d 12, 18 (1st Cir. 2004):

> Every circuit to have examined the issue has agreed that double jeopardy only bars successive RICO charges involving both the same enterprise and the same pattern of racketeering activity . . . (citations omitted) . . . In deciding whether two patterns are 'the same' for double jeopardy purposes, other circuits all employ some variation of a 'totality of the circumstances' analysis [derived from *Dean*] . . . These factors include the time, the place, the people, and the nature and scope of the activities involved in each indictment.

Similarly, in *United States v. Flemmi*, 108 F. Supp. 2d 39, 56-57 (D. Mass. 2000), Judge Wolf held:

> Thus, it is important that courts be vigilant in answering the 'crucial inquiry' concerning whether the activities alleged in two sets of charges constitute 'one "pattern of racketeering activity" or two different patterns.' Where, as here, the same Enterprise is alleged, unless the patterns are truly distinct, rather than substantially the same, the RICO offenses charged are the same, rather than different.

*Dean,* 647 F.2d at 787-88; *Ciancaglini,* 858 F.2d at 928."

The test that has evolved from *Dean* and it progeny - as to the appropriate criteria for determining when an act is sufficiently related to other acts to require inclusion in a single pattern - further serves to elucidate the matter at issue. The *Dean* test for judging when predicate acts can be joined in a unitary pattern is a similar - albeit not identical - test to that articulated in *H.J. Inc*. The *Dean* test described the appropriate inquiry in the following terms: It instructed that the Court must analyze: "(1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of

the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge." *Id*. at 34

Overlying the *Dean* template to the racketeering acts plead in Counts One of the Indictment, similarity confirms that the alleged drug predicates cannot possibly qualify for inclusion with the Taft-Hartley, Mail Fraud and Witness tampering charges.

Thus whether the analysis is performed under the "horizontal relatedness" test established in *H.J. Inc.*, or under the "totality of circumstances" test developed by *Dean* and its progeny, the result is the same, there is insufficient relational connectivity between the drug predicates and the other acts charged, to join both them in a single, unitary, pattern of racketeering activity.

Therefore, the pattern of racketeering activity element of Count One is defective as a matter of law, and therefore Count One, or alternatively Racketeering Act No. 6, must be dismissed.

**c.      The Drug Predicates Fail to Qualify For Inclusion in the Pattern of Racketeering Activity Because They are Not "Vertically Related" to the Enterprise.**

As previously noted, in order to qualify for inclusion in a pattern of racketeering activity, a particular act must not only be sufficiently horizontally related to the other acts alleged, but it must also be "vertically related" to the enterprise. As the Court in *United States v. Persico*, 1994 U.S. Dist. LEXIS 928, at 15-17 (E.D.N.Y.) observed:  "[T]he link between the predicate acts and the enterprise must be a strong one: no RICO violation can be shown unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise."

In many RICO cases, the "enterprise" is an illegitimate or criminal association-in-fact, such as an Organized Crime family or a gang. Since such enterprises most often exist and operate for the purpose of making money through the commission of illegal acts, the issue of whether a particular criminal act is "vertically related" to the activities of such an enterprise, is generally not at issue. See, *United States v. Bellomo*, 263 F. Supp. 2d 561, 564 (E.D.N.Y. 2003): "The enterprise alleged here is the Genovese Organized Crime Family ... [t]he principal  purpose

of this enterprise is alleged to be making money for its members and associates through racketeering activity;" *United States v. Adams*, 1996 U.S. App. LEXIS 11336 (2d Cir.): "Here, the predicate acts - the robberies - were plainly related to one another as well as to the enterprise's common purpose of making money."

However in the instant case, the enterprise is a wholly legitimate enterprise, Local 88. While the Supreme Court held in *United States v. Turkette*, 452 U.S. 576 (1981) that legitimate enterprises as well as illegitimate enterprises are within the reach of RICO, when the enterprise alleged is a legitimate enterprise, different dynamics evolve. Obviously, it is not particularly difficult to establish that the affairs of an organized crime family were conducted through a pattern of illegal conduct; indeed, that is how the affairs of such an enterprise are functionally always conducted. However, when the underlying enterprise is legitimate, it is a more difficult undertaking to show that a defendant has "conducted" the affairs of that enterprise through the commission of criminal acts.

For example, in the present case, were the government able to prove that the defendant had been involved in a continuous series of acts in which he accepted bribes to admit individuals to membership in the Union, one might fairly argue that such conduct was evidence of the fact that he had conducted the affairs of the enterprise through a pattern of racketeering activity. If such proof was adduced, the defendant would be hard put to argue that the government had not established the requisite "vertical relatedness" between the acts alleged and the enterprise. As the Court in *H.J. Inc*., explained, a legitimate business may serve as a RICO enterprise when the associated pattern of racketeering activity is the "regular way of conducting defendant's ongoing legitimate business... or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* 492 U.S. at 243; Accord, *United States v. Amato*, 86 Fed. Appx. 447, 450, 2004 U.S. App. LEXIS 851 (2d Cir. 2004) "Vertical relatedness can be proven by showing either that (1) the offense related to the activities of the enterprise, or (2) defendant was able to commit the offense solely because of his position in the enterprise. See *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992); *United States v. Anthony Megale*, 363 F. Supp. 2d 359, 364 (D. Conn.

2005): "The government also must prove that the collection of the unlawful debt is connected to the enterprise, otherwise known as the requirement of 'vertical relatedness. (citations omitted) The requisite vertical nexus between the RICO enterprise and the predicate racketeering acts may be established by evidence that the defendant was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or that the predicate offenses are related to the activities of that enterprise.' Id. (citing *United States v. Robilotto*, 828 F.2d 940, 947-48 (2d Cir. 1987), *cert. denied* 484 U.S. 1011 (1988))."

However, each individual predicate act said to constitute a constituent part of the pattern must itself show that it is vertically related to the enterprise. It is not enough that merely some or even most of the racketeering acts are "vertically related" to the enterprise.

In this regard, the government simply cannot muster any reasonable argument as to how the drug predicates included in the pattern of racketeering are somehow "vertically related" to the enterprise. While RICO may cast a broad net, its reach is not as wide as the government would have it. The instant case does not present a situation where the "the offense (racketeering act) related to the activities of the enterprise." Merely because the offending conduct allegedly took place in the Union office building, or in some vehicle leased by the union, does not make it "related" to the enterprise, as that term is construed and applied in RICO jurisprudence. Indeed, assuming, without in any way conceding, that this conduct occurred, it simply had nothing to do with the affairs of the enterprise. The defendant certainly did not "conduct the affairs of the enterprise" through this alleged drug activity. The activity was not conjoined with any activities of the enterprise. It did not impact, effect, or even involve the activities of the enterprise, rather it was wholly incidental thereto.

Nor do the facts presented support any claim that the defendant was allegedly able to commit these drug violations "solely because of his position in the enterprise." While that argument may have some purchase with respect to the Mail Fraud and/or Taft-Hartley violations, it has no basis to assert that the alleged drug possession or the use of a communications facility

to facilitate a drug transaction, was conduct "vertically related" to the enterprise. Accordingly, Racketeering Act No. 6 cannot be included in the pattern of racketeering activity charged in Count One of the Indictment.

For the reasons set forth above, it is respectfully asserted that an Order of this Court should issue, dismissing Count One of the Indictment upon the grounds that the RICO violation plead therein is based upon a pattern or racketeering activity that is defective as a matter of law; in the alternative, that an order of this Court should issue dismissing Racketeering Act No. 6.

**B.        RACKETEERING ACT NO. 6 (a) AND COUNTS FIVE AND SEVEN ARE DUPLICITOUS BECAUSE EACH CHARGES MORE THAN ONE CRIME IN A SINGLE COUNT AND THEREFORE MUST BE DISMISSED.**

Duplicity refers to the joining of two or more separate and distinct offenses into a single count. *United States v. Rizzo*, 121 F.3d 794 (1st Cir. 1997) citing *United States v. Huguenin*, 950 F.2d 23, 25 (1st Cir. 1991). "The vice of duplicity is that there is no way in which the jury can convict on one offense and acquit on another offense contained in the same count." 1A Charles A. Wright, FEDERAL PRACTICE AND PROCEDURE, § 142 at 16 (1999).

Federal Rule of Criminal Procedure 8(a) prohibits duplicitous pleadings by requiring that there must be a "separate count for each offense." If more than one offense is charged in a single count of an indictment, that count is void for duplicity. The reasons why duplicitous indictments are forbidden is explained in *United States v. Kimberlin*:

> First, courts condemn duplicitous indictments which fail to give defendants adequate notice of the nature of the charges against which they must prepare a defense . . . . Second, courts denounce duplicitous counts which threaten to subject defendants to prejudicial evidentiary rulings at trial . . . . Third, courts dismiss duplicitous indictments which produce trial records inadequate to allow defendants to plead prior convictions or acquittals as a bar to subsequent prosecution for the same offense . . . . Finally, courts overturn duplicitous indictments which present a risk that the jury may have convicted a defendant by a non-unanimous verdict.

781 F.2d 1247, 1250 (7th Cir. 1985), *cert. denied*, 479 U.S. 938 (1986); *United States v. Saleh*, 875 F.2d 535, 537-38 (6th Cir. 1989); *United States v. Brown*, 894 F. Supp. 1150, 1154 (N.D.Ill. 1995).

As previously noted, Racketeering Act No. 6(a) and Count Five of the Indictment are based upon the same conduct, that is; the alleged possession by the defendant of at least 500 grams of cocaine, with the intent to distribute, during the period from January 2000 until June 2002.

The fatal problem with the government's pleading however, is that Racketeering Act No. 6(a) and Count Five do not charge a single instance in which the defendant purportedly possessed 500 grams of cocaine. Rather, what the proof will show, is that Racketeering Act #6 and Count Five are based on multiple separate instances, spanning an 18 month period, when the defendant alleged possessed various amounts of cocaine which he may have shared (and thereby "distributed") with others. That is why, both Racketeering Act #6 and Count Five, each charge that the offense occurred "[b]etween in or about January 2000 and June 2002." (Ind. At p.10, ¶15(a); p. 15, ¶19).

As an initial proposition, in order to determine when particular conduct constitutes a single or continuing offense, the first matter that must be resolved, is what did Congress intend to be the "unit of prosecution," for the offense at issue. As the Court explained in *Sanabria v. United States*, 437 U.S. 54, 69-7- (1978):

> It is Congress, and not the prosecution, which establishes and defines offenses . . . once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution'... that prescription determines... [w]hether a particular course of conduct involves one or more distinct 'offenses' under the statute.

With the exclusion of conspiracy statutes or statutes such as the mail fraud statute which contemplate a continuing series of acts, the "unit of prosecution" for virtually all substantive criminal statutes is complete when all of the elements of the offense have been satisfied. "In the typical case, an offense is complete as soon as every element in the crime occurs, and the statute of limitations begins to run from that date." *Toussie v. United States*, 397 U.S. 112, 124 (1970) (White, J., dissenting on other grounds) Similarly, as the Court in *United States v. Vogt*, 910 F.2d 1184, 1197 n.4 (4th Cir. 1990) explained:

When the legislatively intended 'unit of prosecution' under a criminal statute is a 'course of conduct' rather than a 'multiplicity of offenses' making up the conduct, the limitations triggering event is perforce the concluding act in the course of conduct alleged.

With respect to violations of 21 U.S.C. §841(a)(1), the law is settled beyond cavil that each possession with intent to distribute is a separate violation, and therefore a separate unit of prosecution. The statute does not operate as a "continuing offense" statute. A violation of 21 U.S.C. §841(a)(1) is complete when all of the elements are complete. To wit; *United States v. Sugar*, 606 F. Supp. 1134, 1144-1145 (S.D.N.Y. 1985):

> It is clear that each individual transfer of controlled substances, outside the scope of professional medical practice, is a crime punishable separately under *21 U.S.C. § 841*. (Citations omitted). *Blockburger v. United States,* 284 U.S. 299, 301-303 (1932) (two sales of controlled substance without proper markings, made to same person one day apart, chargeable as separate offenses). This is true even where the separate transfers are part of a continuous course of conduct. (citations omitted) The offense of distribution of a controlled substance is not inherently a continuous offense.

As the Court in *United States v. McDonald*, 692 F.2d 376, 378-378 (5th Cir. 1982) held:

> Count II charged distribution of and possession with intent to distribute... in violation of *21 U.S.C. § 841*(a)(1). Count III charged distribution of and possession with intent to distribute... in violation of *21 U.S.C. § 841*(a)(1)...The appellant was convicted of violating *21 U.S.C. § 841*(a)(1) , which states that 'it shall be unlawful for any person knowingly or intentionally to . . . distribute . . . a controlled substance.' 'Distribute' is defined under the Act as meaning 'to deliver (other than by administering or dispensing) a controlled substance.' *21 U.S.C. § 802*(11). "Deliver" is defined to mean "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship. § 802(8). **These relatively simple and unambiguous statutes indicate that Congress has chosen the unit of prosecution to be an unauthorized distribution or delivery, as those terms are commonly used and understood.** There is no doubt that McDonald committed two criminal acts." (emphasis supplied).

Additionally, in *United States v. Thompson*, 624 F.2d 740, 742-743 (5th Cir. 1980), the Court concurred, stating that:

> According to Thompson, because the three prescriptions issued on April 12, 1979, were issued at the same time and to the same person, only one offense occurred. The same argument is advanced with respect to counts four through six... Thompson asks that we invoke the doctrine of lenity for the proposition that the issuance of each prescription should not have constituted a separate offense... The statute under which the appellant was indicted and convicted **is reasonably interpreted as making each unlawful dispensation a distinct offense. In this case, the appellant wrote three separate prescriptions on each of the two dates, by which he caused six separate dispensations of a controlled substance."**

(emphasis supplied)**;** *United States v. Lartey*, 716 F.2d 955, 967 (2d Cir. 1983) (**The plain language of the statute indicates, therefore, that illegal distribution under § 841 is not a continuing crime.  The law instead makes each unlawful transfer a distinct offense**.  **Courts resolving this issue have uniformly held that separate unlawful transfers of controlled substances are separate crimes under § 841, even when these transfers are part of a continuous course of conduct**.") (emphasis supplied); *United States v. Noel*, 490 F.2d 89, 90 (6th Cir. 1974) ("The principal issue argued before the court concerned whether or not the first two counts of the indictment represented in actuality the commission of only one crime. [since they occurred ] both on the same day and through the same agent. The government's testimony on this score, however, indicated that the sale arranged with appellant Noel pertained to two 'spoons' of heroin for two separate individuals. We regard these facts as being such as to require differing substantive proofs as to the two offenses, and that as a consequence, convictions on the two counts were valid.").

Thus each time the defendant was in possession of cocaine and/or each time he shared cocaine with another (purportedly "distributing it), a separate violation of 21 U.S.C. §841(a)(1) occurred, and as the cases referred to above establish indisputably establish, such multiple violations cannot be combined into a single count.

The duplicity of Racketeering Act No. 6(a) and Count Five - in addition to giving rise to the traditional disadvantages visited upon a defendant when the government has impermissibly

charged more that one offense in a single count - creates unique prejudice under the circumstances extant.

Of course the reason why the government has combined a series of independent section 841(a)(1) violations in pleading Racketeering Act No. 6(a) and/or Count Five, is self-evident. It did so to trigger the mandatory minimum sentencing provisions of 21U.S.C. §841(b)(1)(B). Under this statute, the government must show that the defendant, "possessed with an intent to distribute," at least "500 grams or more of a mixture or substance containing a detectable amount of ...cocaine." And, as the government well knows, in order to determine whether a defendant is subject to the mandatory minimum sentences set forth in 21 U.S.C. §841(b), one looks to each independent count. That is to say that, the provisions of Title 21 are not applied like the Sentencing Guidelines, where aggregation of drug quantities in multiple counts is permissible. Under Title 21, unless a the defendant is found guilty of a particular count that itself charges possession of a narcotic beyond the thresholds set forth in §841(b), he is not subject to a mandatory minimum sentence. Simply put, no "aggregation" is permissible under Title 21. See, *United States v. Harrison*, 241 F.3d 289, 291-292 (2d. Cir. 2001) ("However, the five-year mandatory minimum sentence did not apply to Birden because the statute did not call for aggregation of the drug quantities in the two substantive counts. See *United States v. Winston,* 37 F.3d 235, 240 (6th Cir. 1994). In other words, the weight of cocaine base involved in the two transactions was not combined for purposes of calculating a mandatory minimum"); *United States v. Rettelle*, 165 F.3d 489, 491- 492 (6th Cir. 1999) ("[E]ach count had to be considered separately when determining whether § 841(b)'s mandatory minimum sentence applied. This result was required because the mandatory minimum applies only to a defendant who commits a violation involving more than the threshold amount of drugs. We noted that in this respect § 841(b) is 'quite unlike the sentencing guidelines,' which require courts to  aggregate  all drug amounts for which the defendant is responsible, over all counts of conviction and all 'relevant conduct."); *United States v. Winston*, 37 F.3d 235, 240-241 (6th Cir. 1994) (**"Congress' expressed purpose in enacting 21 U.S.C. § 841(b),  was to target major drug traffickers and**

**manufacturers, kingpins, and masterminds of criminal organizations**... **If we were to construe 21 U.S.C. § 841(b)(1)(A) as applying to aggregate amounts of drugs held on various separate occasions, it could be used against small-time dealers or users who never possess more than a few grams at a time**. The phrase, 'a violation,' makes it clear that this was not Congress's intent") (emphasis supplied); *United States v. Eirby*, 262 F.3d 31, 40 (1st Cir. 2001); *United States v. Santos*, 195 F.3d 549 (10th Cir. 1999); *United States v. Barnes*, 158 F.3d 662, 669 (2d Cir. 1998); *United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir. 1995); *United States v. Estrada*, 42 F.3d 228, 232 (4th Cir. 1994); *United States v. Darmand*, 3 F.3d 1578, 1581 (2d Cir. 1993).

Accordingly, for the reasons set forth above, it is respectfully asserted that an Order of this Court should issue, pursuant to Rules 7, 8(a) and 12 of the Federal Rules of Criminal Procedure, and the inherent and supervisory powers of this Court, dismissing Racketeering Act No. 6(a) and Count Five, upon the grounds that they are duplicitous, and thereby legally defective.

### C.     BECAUSE RACKETEERING NO. 6 CHARGES TWO INDEPENDENT CRIMES WITHING A SINGLE RACKETEERING ACT, IT IS DUPLICITOUS, LEGALLY DEFECTIVE, AND MUST BE DISMISSED.

Racketeering Act No. 6(a) charges two separate crimes under the umbrella of a single Racketeering Act.  Paragraph (a) alleges that between January 2000 and June 2002 the defendant possessed at least 500 grams of a Schedule II controlled substance (cocaine) in violation of 21 U.S.C. §841(a)(1). Paragraph (b) charges the separate offense of Using a Communications Facility to facilitate the narcotics offense alleged in Racketeering Act 6 (a) and in Count 5 (which pleads the same section 841(a)(1) offense as a substantive count.) (Ind. at p.10-11, ¶15). Further, the Indictment expressly instructs that the commission of either one of these acts "alone[,] constitutes the commission of Racketeering Act Six." (Ind. at p. 10, ¶15)

Racketeering Acts, like substantive counts, will fail if they are found to be duplicitous. As the Court in *United States v. Pungitore*, 910 F.2d 1084, 1136 (3d Cir. 1990), observed:

> The fact that the appellants were specifically charged with racketeering, rather than with offenses involving murder, does not mean that the dangers associated with duplicitous pleading were not present in this case... [If] the jury returned only a general verdict as to the RICO predicates, we might have difficulty ascertaining the basis for the jury's findings as to individual predicates, and there might be a real question regarding the unanimity of the verdict.

Accord *United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996).

The duplicity of this racketeering act gives rise to several concerns.  First, is the question of unanimity.  As an initial proposition, in order for a jury to find a defendant liable for RICO, there must by unanimity as to the predicate acts.[8]L. Sand, J. Siffert, W. Loughlin and S. Reiss, *Modern Federal Jury Instructions*, Vol. 2, Instruction 52-27.  That is to say, every juror must unanimously agree on whether the defendant committed a particular racketeering act. When two different crimes are alleged to constitute the same racketeering act - and the jurors are told if they find that the defendant committed either crime they must find that the racketeering act was

---

[8]The requirement of the jury's unanimity as to each predicate act, is reflected in the Model Jury Instructions authored by Judge Sand.  To wit:

> The indictment charges the defendant with commission of [insert number alleged in the indictment] racketeering acts.  The government must prove beyond a reasonable doubt that at least two of the racketeering acts recited in the indictment were committed by the defendant within the prescribed time.

> However, you may not find the defendant guilty unless you all agree, unanimously, that at least two particular racketeering acts were committed by the defendant. It is not enough that you all believe that two racketeering acts were committed.  That is, you cannot find the defendant guilty if some of you think that only racketeering acts A and B were committed by the defendant and the rest of you think that only acts C and D were committed by the defendant.  There must be at least two specific racketeering acts that all of you believe were committed by the defendant in order to convict the defendant.

L. Sand, J. Siffert, W. Loughlin and S. Reiss, *Modern Federal Jury Instructions*, Vol. 2, Instruction 52-27.

committed - the real danger is that some jurors may find that the defendant committed one of the crimes alleged and others may find that he committed the other offense alleged. Because of the manner in which the government has plead Racketeering Act No. 6, it is impossible to insure that there was unanimity among the grand jurors, because it is impossible to determine which of the alternative allegations any grand juror may have relied upon.

 For a charge to be brought, at least twelve grand jurors must unanimously agree that there is probable cause to believe that a particular defendant committed all of the elements of a particular offense.  Accordingly, by way of example under the present case, six of the sixteen members of the jury could have concluded that a particular racketeering act had been satisfied because they believed that the defendant committed the crime plead in Racketeering Act No. 6(a), and alternatively, ten of the grand jurors could have found probable cause to believe that the conduct in Racketeering Act No. 6(b) occurred.

This was precisely the problem that the Court in *United States v. Pungitore*, 910 F.2d at 1084, was troubled by (albeit discussing the issue as it relates to the petit, rather than the grand jury).  As the Court noted, when a racketeering act is duplicitous, one may very well "have difficulty ascertaining the basis for the jury's findings as to the individual predicates and, there might be a real question regarding the unanimity of the verdict."  *Id*. at 1136.

Further, the language of the Indictment, which states, in essence, that it doesn't matter which of the alternatives any particular juror relies upon, only serves to exacerbate the situation. Contrary to this statement in the Indictment, which alternative each juror relied upon is critical. If some jurors (less than twelve) relied upon one alternative and other jurors upon a different alternative, the result could very well be that there is a general finding of probable cause for the racketeering act even though there was not unanimous agreement as to what conduct constituted the violation.

Given the seriousness of the charges presented at bar, this defendant is entitled to a grand jury presentation free of doubt. Accordingly, for the reasons set forth above, an Order of this Court should issue, striking Racketeering Act. No. 6 because it is impermissibly duplicitous, and

therefore defective as a matter of law.

**D.    RACKETEERING ACTS NO. 6(a) COUNTS FIVE AND SEVEN ARE FACIALLY INSUFFICIENT IN THAT THEY FAIL TO RECITE SUFFICIENT FACTUAL ALLEGATIONS TO STATE A CRIME, ALTERNATIVELY A BILL OF PARTICULARS SHOULD BE ORDERED.**

The defendant respectfully asserts that Racketeering Acts No. 6(a) and Counts Five and Seven are insufficient as a matter of law, in that they fail to recite sufficient factual allegations to state a crime or otherwise satisfy constitutional standards for the sufficiency of a criminal charge. In the alternative, the government should be ordered to provide a Bill of Particulars.

Racketeering Act No. 6(a), like Count Five, are entirely generic pleadings. They provide no factual information whatever. These pleadings merely assert that sometime during the 18-month period between January 2000 and June 2002, the defendant possessed, with the intent to distribute, at least 500 grams of cocaine. (Ind. at p. 11, ¶15; p.15, ¶ 19). All that is said as to where such conduct allegedly took place, is that it occurred in the "District of Massachusetts." The failure of these barren charges to provide the defendant with even minimal constitutional "notice"- so that he might know what factual allegations he must prepare to defend - would be defect enough, but when it is clear that these pleadings are also duplicitous, the situation is intolerable.

For the same reasons, Count Seven is similarly constitutionally defective. As explained in III, *supra*., insofar as Count Seven is inextricably tied to Count Five, the same defects that attend Count Five similarly effect Count Seven.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that each count of an indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." These requirements embodied in Rule 7(c) were designed to protect three constitutionally mandated principles.

First, is the guarantee, which derives from the Sixth Amendment, that any indictment, which an accused is called to answer must provide adequate notice to inform the individual of the charges he must prepare to defend and to ensure that he has the effective assistance of

counsel. Every charge contained in the Indictment, must provide the defendant with a sufficient basis to prepare his defense. See, *e.g., United States v. Santa-Manzano*, 842 F.2d 1, 3 (1st Cir. 1988); *United States v. Murphy*, 762 F.2d 1151, 1155 (1st Cir. 1985); *United States v. Conlon,* 628 F.2d 150, 155 (D.C. Cir. 1980); *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979); *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970).

Second, each count must be factually adequate on its face to enable a defendant to plead "double jeopardy" against a later prosecution, thereby protecting his rights guaranteed by the Fifth Amendment of the Constitution.

Finally, "[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2nd Cir. 2000). (A criminal charge must set forth sufficient factual allegations to "shield a defendant in a federal felony case from unfounded prosecutorial charges and . . . (by) requir(ing) him to defend in court only those allegations returned by an independent grand jury, as provided by the Fifth Amendment."). See also, *Hamling v. United States*, 418 U.S. 87 (1974); *Russell v. United States*, 369 U.S. 749, 768-71 (1962); ("To allow the prosecutor, or the Court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guarantee of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."); *United States v. Abrams*, 539 F.Supp. 378, 384 (S.D.N.Y. 1982) ("The counts in question here state no more than 'time and place in approximate terms' and the scope of that approximation is broad indeed. We find this is not sufficient under the Fifth Amendment"); *United States v. Rizzo*, 373 F.Supp. 204, 205-208 (S.D.N.Y. 1973); *United States v. Agone*, 302 F.Supp 1258, 1258-1262 (S.D.N.Y. 1969); *United States v. Farinas*, 299 F.Supp. 852, 854 (S.D.N.Y. 1969); *United States v. Schram*, 1996 U.S. App. LEXIS 1170, 19-20, (3d Cir. 1996); *United States v. McDonough*, 959 F.2d 1137, 1140 (1st Cir. 1992); *United*

*States v. Sloan*, 939 F.2d 499, 501 (7th Cir. 1991); *United States v. Bohonus*, 628 F.2d 1167,

1173 (9th Cir.1980).

Thus, although an indictment may track the language of a statute, "that language must be

supplemented with enough detail to apprise the accused of the particular offense with which he is

charged." *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976). Indeed, the Supreme

Court specifically held in *Russell v. United States*, *supra*, that:

> Where guilt depends so crucially upon such a specific
> identification of facts, our cases have uniformly held that an
> Indictment must do more than simply repeat the language of the
> criminal statute.
>
> It is an elementary principal of criminal pleading, that where the
> definition of an offense, whether it be at common law or by statute,
> 'includes generic terms, **it is not sufficient that the Indictment
> shall charge the offense in the same generic terms as in the
> definition; but it must state the species -- it must descend to
> particulars... An Indictment not framed to apprize the
> defendant "with reasonable certainty of the nature of the
> accusation against him... is defective, although it may follow
> the language of the statute... Undoubtedly the language of the
> statute may be used in the general description of an offense,
> but it must be accompanied with such a statement of the facts
> and circumstances as will inform the accused of the specific
> offense, coming under the general description, with which he is
> charged."**

Id. 369 U.S. at 764-65 (citations and footnotes omitted) (emphasis added).[9]  In accord see, *United*

*States v. Pirro*, 212 F.3d 86, 92 (2nd Cir. 2000): "Under modern pleading rules, 'we have

consistently upheld indictments that do little more than to track the language of the statute

---

[9] Although the Supreme Court in *United States v. Cotton*, 535 U.S. 625 (2002) overruled its holding of long standing in *Ex parte Bain*, 121 U.S. 1, 30 L. Ed. 849, 7 S. Ct. 781 (1887), - finding that a defective indictment does not, operate to deprive a court at *nisi prius* of subject matter jurisdiction - the principles of *Russell*, articulated above, nevertheless remain sound law. As the Court in *Cotton* explained: "Bain has been cited in later cases such as *Stirone v. United States,* 361 U.S. 212 (1960), and *Russell v. United States,* 369 U.S. 749 (1962), for the proposition that 'an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form,' *Id.*, at 770 (citing *Bain*, supra). But in each of these cases proper objection had been made in the District Court to the sufficiency of the indictment. We need not retreat from this settled proposition of law decided in *Bain* to say that the analysis of that issue in terms of 'jurisdiction' was mistaken in the light of later cases such as Lamar and Williams."

charged and state the time and place (in approximate terms) of the alleged crime.' (citations omitted)  The Supreme Court, however, has recognized a limitation on this practice, so that 'where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,-- it must descend to particulars.' *United States v. Cruikshank,* 92 U.S. 542 (1875) . . . .  "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483 (1888); *Russell,* 369 U.S. at 765.  *Id.* at 92-93."

The reasoning of the First Circuit in *United States v. Tomasetta*, *supra*, is particularly applicable to the case at bar. As the Court observed:

> A vital function of an indictment is to provide "such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation * * *." n2 This principle is derived directly from the Sixth Amendment's guarantee of the right of an accused "to be informed of the nature and cause of the accusation * * *" and is basic to the proper functioning of our adversary system of justice.  Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him ... **[W]here the location, time, and object of the communication are specified only in the most general terms or not at all, we cannot see how this manner of defense could be undertaken. In sum, this defendant could not possibly have made an adequate preparation for trial on the basis of the information contained in this indictment ... [Moreover] on an indictment as vague as that at bar, it is possible, however unlikely, for a prosecutor to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment.  The prosecution may not have the power "to roam at large" in this fashion."**

*Id*. at 979-980 (emphasis added).  The observations made in *Tomasetta* apply with equal force to the present Indictment. In the instant case there is no way to determine what evidence or what transactions the grand jury may have relied upon it voting this Indictment. The defendant has no notice on what day (or days) between the 18 month period running from January 2000 to June 2002, the government will claim that the defendant possessed cocaine or distributed cocaine. He has no notice of where these acts allegedly took place or with whom the government will claim he acted. It is trail by ambush, and it should not be permitted.

Moreover, the defendant's constitutional right to be tried only for those charges that the grand jury considered and voted upon, is entirely unprotected. It is impossible to tell from the Indictment the date, place or participants of any of the acts, which were purportedly proved before the grand jury in support of the charges alleged in Racketeering Act No. 6(a) or in Counts Five and Seven.  Similarly, the defendant's ability to assert the defense of double jeopardy to a subsequent prosecution is materially impaired by a pleading that is as indeterminate as this one. Because there are literally no factual allegations of any kind to confirm what conduct these charges include, it would be impossible for the defendant to effectively assert a double jeopardy claim in the face of a subsequent prosecution.

At the very least, it is respectfully asserted that this Court should order the government to file a Bill of Particulars with respect to these charges. Not only will a Bill provide some modicum of "notice" of what the defendant must prepare to defend, but it will flesh out the issue of duplicity. That is, whether these charges do in fact combine a number of separate violations - each constituting an independent unit of prosecution - in a single count or racketeering act.

For the reasons set forth above, it is respectfully asserted that an Order of this Court should issue dismissing Racketeering Act No. 6(a) and Counts Five and Seven, or in the

alternative, ordering the government to file a Bill of Particulars with respect thereto.

**E.    COUNT SEVEN IS RENDERED DUPLICITOUS AND DEFECTIVE BECAUSE IT DEPENDS UPON COUNT FIVE WHICH IS, ITSELF, DUPLICITOUS AND DEFECTIVE.**

Count Seven of the instant Indictment alleges that "between on or about January 2000 and June 2002, the defendant did knowingly use and carry a 9 millimeter handgun during and in relation to a drug trafficking crime... namely possessing cocaine with intent to distribute as charged in Count Five." (Ind. at p. 17, ¶ 7)

The government, in its pleading, has elected to link Count Seven to the conduct alleged in Count Five. The problem which arises however - and for the reasons explained in Argument B *supra* - is that Count Five is clearly duplicitous. Count Five is duplicitous as the result of the government's impermissible attempt to aggregate the total quantity of drugs involved to reach the 500-gram threshold of 21 U.S.C. §841(b) and trigger the mandatory minimum sentencing provisions of the statute.

Because Count Five has been plead as if the unit of prosecution for a 21 U.S.C. §841(a)(1) violation was a "continuing course of conduct" (which, as demonstrated, it is not), it is impossible to discern from the Indictment on which of the multiple times that the proof may show that the defendant possessed cocaine, he allegedly "use[d] and carr[ied]" a firearm. Of course the law is, that neither the unit of prosecution for a violation of 21 U.S.C. §841(a)(1), nor the unit of prosecution for a violation of 18 U.S.C. §924(c), is a continuing course of conduct. As the Court observed in *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993): "[W]e conclude that Congress considered the appropriate unit of prosecution to be the underlying drug-trafficking offense, not the separate firearms. Only where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes."

Accordingly, the defendant respectfully asserts that an Order of this Court should issue, dismissing Count Seven of the Indictment because is duplicitous and therefore, defective.

**F.     SEVERANCE IS REQUIRED UNDER THE PROVISIONS OF RULE 8(a) OF THE FED. R. CRIM. PRO. BECAUSE VARIOUS OF THE COUNTS CHARGED CANNOT BE SAID TO BE PART OF THE SAME ACT OR TRANSACTION OR SERIES OF ACTS OR TRANSACTIONS ALLEGED IN THE OTHER COUNTS.**

The defendant Scott Boidi respectfully moves this Court for an Order severing Counts Five, Six and Seven from this Indictment. As more fully discussed in the Preliminary Statement, Count Five and Six allege separate narcotics violations and Count Seven alleges a firearm violation, which is directly tried to the alleged narcotics activity. Rule 8(a) of the Fed. R. Crim. Pro.  However, prohibits the joinder of counts in a single indictment unless each count is "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

The seminal case in this Circuit on joinder under the provisions of Rule 8(a) is, *United States v. Randazzo* , 80 F.3d 623, 628 (1st Cir. 1996). In *Randazzo*, the government had joined a charge that the defendant had introduced adulterated shrimp into interstate commerce in violation of 21 U.S.C. §§ 331(a), (k) and 333(a)(2), with the charge that he had caused his company to file false corporate tax returns in violation of 26 U.S.C. § 7206(1). In opposition to the defendant's motion to sever, the government argued that the counts involved acts comprising parts of "a common scheme or plan." *Id*. at 626.  The Court reject this claim on the finding that: "The present case... offers no such connection between the shrimp and tax counts. Randazzo reduced the Company's reportable income by overstating corporate expenses... [t]he misconduct underlying the shrimp counts and the improper claiming of expenses on the returns were not part of the same 'scheme or plan' in any sense of the phrase." *Id*. at 626.

Alternatively, the government argued that joinder was permissible under Rule 8(a) because: "[T]he shrimp and tax charges are of the 'same or similar character' because (ignoring sales to commercial buyers) both sets of offenses involved the use of falsehoods or omissions to profit at the expense of the federal government. Further, it notes that many facts are common to both sets of charges: for example, they occurred during overlapping time frames; Randazzo's control over the Company was a common element; and the Company's sagging financial

condition provided a common motive." *Id*. at 626. Once again however, the Court rejected the government's efforts to pound a square peg into a round hole. As the Court found:

> It is obvious why Congress provided for joinder of counts that grow out of related transactions--ones that are 'connected' or 'part of a common scheme or plan'; the reason for allowing joinder of offenses having "the same or similar character" is less clear. n1 But whatever the rationale, we think that it is very hard to describe adulterating or mislabeling shrimp as offenses 'similar' to tax fraud--except at a level of generality so high as to drain the term of any real content. Even the government's best case does not stretch as far as the present facts. *United States v. Levine, 983 F.2d 165, 167-68 (10th Cir. 1992)* (bank fraud and mail fraud). *Id*. at 627-628.

Accord, *United States v. Edgar*, 82 F.3d 499, 503-504 (1st Cir. 1996); *United States v. Capozzi*, 73 F. Supp. 2d 75, 82-83 (D. Mass. 1999).

The facts of the instant case present even more compelling circumstances to those in *Randazzo*. Here, the government has joined counts alleging that the defendant was possessed, with intent to distribute, 500 grams of cocaine - and that he used and carried a firearm in relation thereto - with counts that allege Taft-Hartley violations, fraud, embezzlement and bribery in connection with Local 88. It is evident from the face of the Indictment that these acts are not, "of the same or similar character, based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Axiomatically, they have nothing to do with one another. Any tortured arguments that because the defendant purportedly used money he obtained from the Union to purchase drugs, or that he and others consumed drugs on the Union premises or in a Union vehicle, will not overcome the joinder limitations of Rule 8(a). As the First Circuit counseled in *United v. States*, 994 F.2d 885 (1st Cir. 1993): "To determine if the two schemes sufficiently were connected to the same series of acts to be joined, we must consider whether there is '**substantial identity of facts or participants'** underlying the charged offenses... **[m]ere similarity of the acts would not suffice**." *Id*. at 895. Here there no similarity of acts, identity of facts or common participants, and thereby no basis for joinder.

On the related issue of whether the present joinder of counts is unfairly prejudicial, the

defendant respectfully asserts that the prejudice is manifest. The infusion of evidence of alleged drug possession and distribution - and the possession of firearms purportedly used and carried in connection therewith - would be overwhelmingly prejudicial in a case otherwise involving allegations of non-violent Union fraud, embezzlement and bribery.

Accordingly, for the reasons set forth above, an Order of this Court should issue, severing Counts Five, Six and Seven from the Indictment.

**G.   A VIOLATION OF 21 U.S.C. §843(b) DOES NOT QUALIFY AS A "RACKETEERING ACT" WITHIN THE MEANING OF 18 U.S.C. §1961, ACCORDINGLY RACKETEERING ACT NO. 6 MUST BE DISMISSED.**

Racketeering Act No. 6(b) charges that " on November 7, 2001...the defendant Scott Boidi knowingly and intentionally used a communications facility, namely a telephone, in committing, causing and facilitating the offense set forth in Racketeering Act Six (a) and Count Five of this Indictment incorporated by reference herein, in violation of Title 21, United States Code, Section 843(b).

The defendant respectfully asserts however that a violation of 21 U.S.C. §843(b) does not qualify as a "racketeering act" within the meaning of 18 U.S.C. §1961(1). The RICO statute specifically enumerates those crimes that constitute "racketeering acts." With respect to narcotics offenses, 18 U.S.C. §1961(5) provides that it is only those offenses that constitute the "**felonious** manufacture, importation, receiving, concealment, buying, selling or otherwise dealing in a controlled substance or listed chemical... punishable under any law of the United States," that will qualify as a "racketeering act." (emphasis supplied).

First, there is a real question whether the government has a good faith basis to allege a violation of 21 U.S.C. §843(b). Defense counsel believes that if the government has any proof that the defendant used a telephone on November 7, 2001 to order drugs that such proof would reveal that the call was made for the purposes of acquiring cocaine for the defendant's personal use. The use of a communications facility to purchase drugs intended for personal use is not a violation of 21 U.S.C. §843(b). See, *United States v. Martin*, 599 F.2d  880 (9th Cir.1979): "[A]

purchaser's relationship to the distribution conspiracy from which he buys is of such a marginal nature that he cannot be considered a 'facilitator' within the meaning of the statute. Simply stated... a buyer cannot facilitate the very sale which creates his status."See also, *United States v. Baggett*, 890 F.2d 1095 (10th Cir. 1989): "The scheme of the Act shows that Congress intended to draw a sharp distinction between distributors and simple possessors, both in the categorization of substantive crimes and in the resultant penalties . . . .  To hold that persons who merely buy drugs for their personal use are on equal footing with distributors by virtue of the facilitation statute would undermine this statutory distinction;" *United States Castro-Avalos*, 105 Fed. Appx. 205, 206 n.1; 2004 U.S. App. LEXIS 14916 (9th Cir. 2004); *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986) ("evidence of the purchase of cocaine for personal use does not establish use of the telephone to further the conspiracy"); *United States v. Brown*, 761 F.2d 1272, 1278 (9th Cir. 1985) ("use of a telephone to order cocaine for personal use is . . . not a lesser-included offense; indeed, it is no offense at all"); *United States v. Adler*, 862 F.2d 210, 215 (9th Cir. 1988) (distinguishing a "personal use" case from one which "strong indicia suggested that a conspiracy was afoot and that appellant was participating in that conspiracy").

Second, the gravamen of the crime set forth in 21 U.S.C. §843(b) is the improper use of a communication facility. It does not involve the "**felonious** manufacture, importation, receiving, concealment, buying, selling or otherwise dealing in a controlled substance or listed chemical." Therefore it does not meet the statutory definition of a racketeering act set forth in 18 U.S.C. §1961.

Accordingly, for the reasons set forth above, the defendant respectfully asserts that an Order of this Court should issue dismissing Racketeering Act No. 6(b).

### III.  CONCLUSION

For the reasons set forth above, the defendant Scott Boidi, respectfully prays that an Order of this Court issue granting him the relief sought in the accompanying Motion to Dismiss and/or Sever Counts of Second Superceding Indictment and/or for a Bill of Particulars.

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street
Boston, Massachusetts 02116
(617) 859-9999


Co-counsel, pending admission *pro hac vice*
John W. Mitchell, Esq.
43 Greenwich Street, Suite 6E
New York, New York 10013
(212) 696-9500


### CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 6th day of September, 2005, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT SCOTT BOIDI'S MOTION TO DISMISS AND/OR SEVER COUNTS OF SECOND SUPERCEDING INDICTMENT AND/OR FOR A BILL OF PARTICULARS was served electronically upon Laura Kaplan, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Suite 9200, Boston, MA 02210.

Peter Charles Horstmann, Esquire