**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

**UNITED STATES**      )
                       )
**v.**                 )
                       )          **Criminal No.: 05 CR 10025-GAO**
**SCOTT R. BOIDI,**    )
     **Defendant.**    )
_____)

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**AND/OR SEVER COUNTS OF SECOND SUPERCEDING INDICTMENT**
**AND/OR FOR A BILL OF PARTICULARS**

**POINT I**

**THE REASONING AND AUTHORITY**
**RELIED UPON BY THE GOVERNMENT IS**
**INAPPOSITE AND REVEALS THE**
**FUNDAMENTAL FLAW IN ITS THEORY AS**
**TO WHY THE RACKETEERING ACTS**
**ALLEGED ARE PURPORTEDLY**
**SUFFICIENTLY RELATED TO FORM A**
**RICO "PATTERN OF RACKETEERING**
**ACTIVITY"**

In brief reply to the government's response to Point I of the defendant's Memorandum -

which argued that Count One of the Indictment was defective on its face because the pattern of

racketeering activity charged therein failed to demonstrate the requisite vertical and/or horizontal

relatedness - several observations are germane.

First, although the principal thrust of the defendant's argument was that the pattern

alleged did not demonstrate the necessary attributes of horizontal and/or vertical relatedness, the

government devoted the principal portion of its response to a discussion of the separate

requirement of "continuity." (Government Memo at pp. 5-9) The defendant does not base his

motion for dismissal upon any claim relating to the pattern requirement of "continuity."

Nonetheless, to the extent that the government does address the issues of horizontal and/or vertical relatedness, the basis upon which it relies to argue that such relatedness exists is both factually and conceptually erroneous.

The government rests the defense of its claim that the drug related acts are somehow "horizontally related" to the Taft-Hartley/embezzlement/fraud acts, upon the contention that all such acts relate to the same criminal enterprise. As the government writes: "That the individual racketeering acts were related to the others is easily shown by their relationship to one of the overarching purposes of the enterprise: that of carrying out unlawful and other activities,"(Government memo at p.9). And further: "Courts have held diverse predicate acts to be related, where the acts served the purpose of the enterprise... [t]he relatedness requirement is met even if the predicate acts 'are functionally unrelated acts and offenses, if the predicates are undertaken in association with, or in furtherance of criminal purposes of the same organized crime enterprise." (Government memo at pp. 11-12)

This statement by the government is simply factually wrong. The Labor Union which serves as the enterprise in Count One, is not a criminal enterprise existing solely for the purpose of carrying out illegal activities. That being the case, as shown below, the government's argument in support of horizontal relatedness fails entirely.

Functionally, there are two types of criminal RICO cases. The first category, are those cases where the enterprise is a so-called "passive," wholly legitimate, enterprise. In these instances the enterprise is functionally the victim of the defendants' racketeering activities. The defendant corruptly uses the enterprise to commit his RICO violation. Criminal RICO cases in

which the enterprise is wholly legitimate are legion, and perhaps the most famous were the "Operation Graylord" RICO prosecutions which took place in Chicago in the early 1990's, in which the RICO enterprise was Circuit Court of Cook County. Moreover, in virtually every labor racketeering/Hobbs Act/Taft-Hartley RICO case that is brought, the enterprise is typically the union itself.

In such instances, there is no criminal "overarching purpose" of the enterprise." The only "overarching purpose" of the Union enterprise charged herein, was legitimate union activities. That the defendant is said to have corruptibly used the enterprise for his own criminal purposes does not make the Union a "criminal enterprise" within the meaning of RICO jurisprudence.

The second category of RICO prosecutions are those that involve cases where the enterprise is in fact a wholly illegitimate "criminal enterprise" - i.e. the organized crime or Mafia family, criminal gang, and/or corrupt association-in-fact species of RICO enterprises. In those cases, the enterprise exists solely to carry out and facilitate criminal activities.

Depending upon the species of RICO enterprise, which is alleged (legitimate or illegitimate), there is a corresponding impact upon the horizontal relatedness analysis. That is to say, when the enterprise is a traditional organized crime family - whose sole purpose is to organize and carry out criminal activities - some courts have held that fact to be relevant to the horizontal relatedness calculus. The reasoning is, that because the enterprise exists only to carry out criminal activities, and thereby serves to facilitate the commission of the underlying predicate act conduct, that dynamic is said to provide some nexus or relationship between the acts themselves.[1]

---

[1]Although there is case law to this effect, in defense counsel's view, the underlying reasoning of such cases find themself at odds with the seminal case on the issue. In short, when

3

Whether such reasoning is sound or not (see note 1 *supra*.), it is nonetheless upon this ground (that the Union was somehow a wholly "criminal enterprise") that the government rests its contention that the disparate acts which it has joined in the underlying pattern of racketeering activity should be deemed to be horizontally related to each other; to wit; "[because] even if the predicate acts 'are functionally unrelated acts and offenses, if the predicates are undertaken in association with, or in furtherance of criminal purposes of the same organized crime enterprise... the relatedness requirement is met." (Government memo at p. 11-12).

In support of this position, the government proffers three cases. The first case is United States v. Angiulo, 897 F.2d 1169 (1st Cir. 1990). In Angulo, the enterprise was the Patriarca Family of La Cosa Nostra. The second case cited is United States v. Eufrasio, 935 F.2d 553 (3rd Cir. 1991). In Eufrasio, the enterprise was the: " Scarfo 'Family,' a Philadelphia and New Jersey based subdivision of La Cosa Nostra ("LCN" or "Mafia")... consisting of approximately 60 full members of the LCN, and at least 100 criminal associates." (*Id*. at 559). The final case offered by

---

the Supreme Court articulated its formulation of what constituted horizontal relatedness for RICO pattern purposes in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S. Ct. 2893 (1989), the Court was well aware that when Congress passed RICO, its principal focus was the interdiction of the activities of traditional organized crime organizations or so-called "Mafia Families." Nonetheless, the parameters that it established for determining horizontal relatedness make no mention of any criteria that considers whether the predicate acts were all committed in connection with the same organized crime enterprise. It is quite important to observe that the criteria for determining relatedness in H.J. Inc., depends exclusively upon transactional relationships between the acts *inter se*, not upon their relation to the enterprise. The test under H.J. Inc., is whether the acts, "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (*Id*. 492 U.S. at 239) Since the Supreme Court establishes the "law of the land," that is the only test that may be applied. Moreover, by saying that horizontal relatedness can be established solely upon the showing that all acts were committed in connection with the same enterprise (regardless of whether the enterprise is legitimate or illegitimate), would collapse the requirement of demonstrating horizontal relatedness into the wholly separate, and independent, requirement of vertical relatedness. Under the facts presented here however, since the enterprise is not a so-called "criminal enterprise," the issue need not be

the government is <u>United States v. Masters</u>, 924 F.2d 1362 (7th Cir. 1991). <u>Masters</u>, like <u>Angulo</u> and <u>Eufrasio</u>, was also a wholly illegitimate enterprise described by the Court as, "an informal association among the three defendants and three other entities... [t]he main purpose of the enterprise in this case was to bring under Masters' influence (for a price of course) the principal police agencies operating in his area of activity" (*Id.* at 1365-1366). The Court in <u>Masters</u> expressly emphasized that the association-in-fact enterprise in that case was a wholly illegitimate, criminal enterprise, observing that it was, "distinct from a lawful enterprise that commits occasional criminal acts. The business of a criminal enterprise is crime" (*Id*. at 1366)

Axiomatically, none of the cases relied upon by the government have any significance to the issue at hand. And of course, as a result, the question is posed; since the Union enterprise plead at bar is a wholly legitimate, "passive," enterprise, and since the only thesis offered by the government as to why these disparate acts are somehow horizontally related to one another was the erroneous claim that it was a "criminal enterprise," what then constitutes the basis for the assertion that the drug predicates are somehow horizontally related to the Taft Hartley/embezzlement/fraud counts.

In this regard it is particularly significant to note that the government's brief does not even mention the test established by the Supreme Court for determining horizontal relatedness of pattern acts. As noted in the defendant's opening brief, the Court in <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, *supra*, held that predicate acts will be deemed horizontally related when they "**have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events**."(*Id*. 492 U.S. at 239, emphasis supplied).

reached.

It is quite obvious why the government avoided any discussion of the transactional relationship test articulated in <u>H.J.Inc.</u> - because the acts alleged in the instant pattern are in fact disparate and transactionally unrelated. Indeed, once the government's misguided "criminal enterprise" argument is properly dispatched, it offers no basis whatever to support the claim that these acts can be deemed horizontally related, and therefore included in a unitary pattern of racketeering activity.

In the defendant's opening brief, he also challenged the sufficiency of the pattern of racketeering activity plead in Count One upon the grounds that it could not be said that the drug predicates were "vertically related" to the enterprise. Vertical relatedness, as noted above, is a separate and independent pattern component. As the defendant explained in his initial brief: "Vertical relatedness can be proven by showing either that; (1) the offense related to the activities of the enterprise, or (2) defendant was able to commit the offense solely because of his position in the enterprise." <u>United States v. Amato</u>, 86 Fed. Appx. 447, 450, 2004 U.S. App. LEXIS 851 (2d Cir. 2004).

Since no argument can be fashioned that the alleged purchase of cocaine by the defendant was somehow an act that "related to the activities of the enterprise," in its response, the government claimed that vertical relatedness nonetheless existed because "the defendant was able to commit the offense solely because of his position in the enterprise."  In support of this contention the government argued:

> The evidence will demonstrate that the defendant used his position in the union to embezzle money from the members' dues which he then used to purchase cocaine. The defendant used his office at the union hall to meet with his sources of supply and was observed taking money out of his desk drawer to pay for it. Thus, the defendant was able to commit the offense solely because of his position in the enterprise. This conduct had everything to do with

6

> the "conduct of the affairs of the enterprise."
> The defendant also represented to his sources of supply that he needed the cocaine to distribute to his workers, or for a union meeting. In addition, the sources of supply witnessed other individuals with the defendant at the union hall when the defendant engaged in his drug transactions. The defendant used the enterprise's cellular telephone to call his sources of supply to order up cocaine. The sources of supply will testify that they had no other relationship with the defendant other than as seller-customer.
> (Government Memo. at pp. 10-11)

Most respectfully, this claim fairs no better than the government's "criminal enterprise" argument in support of it assertion that there is horizontal relatedness among the pattern acts.

*Simpliciter*, to satisfy the requirement that an act was vertically related to an enterprise because the defendant was able to commit such act "solely by virtue of his position," the act must be something that the defendant was able to accomplish because his particular status or position with the enterprise afforded him the necessary access, authority, or empowerment to commit such an act. Or put differently, but for his particular position or status with the enterprise, he would not have been able to commit the act.

Against this backdrop, to say that the defendant was able to purchase cocaine - regardless of whether he used it at his Union office, took it home or shared it with others - "solely" because of his position with the Union, is simply to torture the facts. He didn't need any particular position or status with the Union in order to buy cocaine. Anyone at the Union, from the lowest level employee, could have done precisely the same thing. The purchase of cocaine had nothing to do with his Union position, anymore than it had anything to do with the "affairs" of the Union. These were personal matters, personal transactions. If he had gone next door to purchase the cocaine would the government's argument be different.

Accordingly, for the reasons set forth above, and for those reasons more fully described

in the defendant's opening brief, it is respectfully asserted that an Order of this Court should issue dismissing Count One of the Indictment.

**POINT II**

**COUNT SEVEN OF THE INSTANT INDICTMENT IS LEGALLY DEFECTIVE AND DUPLICITOUS**

In response to the arguments advanced in the defendant's initial memorandum of law, the government returned to the grand jury and restructured its Indictment. Among other matters, it changed the previous substantive drug charges - both the charge made in Racketeering Act #6, as well as Count Five - and re-plead them as conspiracies rather than substantive violations. Nonetheless, this has not cured the problems, which still attend Count Seven.

The problem with Count Seven is that it remains directly linked to the allegations contained in Count Five. More specifically, Count Five now alleges that the defendant engaged in a conspiracy to possess with intent to distribute cocaine that lasted for the roughly two and a half year period from January 2000 to June 2002. (Third Superceding Indictment at p. 15, ¶19). While Count Five is a conspiracy, and therefore a continuing offense, Count Seven is not, it is a substantive (not conspiratorial) offense. As previously briefed, the "unit of prosecution" for a violation of 18 U.S.C. §924(c)(1)(A) is not a continuing offense, but rather is complete when all of the elements of the offense are complete. Put differently, if on a particular occasion a defendant knowingly used and carried a weapon in connection with a drug trafficking crime, then the §924(c)(1)(A) is complete at that time.

The defect in the manner that Count Seven has been plead, is that it alleges that the substantive offense of 18 U.S.C. §924(c)(1)(A), occurred sometime between January 2000 and

8

June 2002. Therefore the problem with Count Seven, which still obtains, is that because Count

Five has been plead as if the unit of prosecution was a "continuing course of conduct, " which it

is not. It is therefore impossible to discern from the Indictment on which of the multiple times

that the proof may show that the defendant purchased or possessed cocaine, he allegedly "use[d]

and carr[ied]" a firearm.

Accordingly, the defendant respectfully asserts that an Order of this Court should issue,

dismissing Count Seven of the Indictment is duplicitous and therefore, defective.

### POINT III

**THE DEFENDANT IS ENTITLED TO A SEVERANCE OF COUNTS FIVE, SIX AND SEVEN UNDER THE PROVISIONS OF RULE 8(a) OF THE FED. R. CRIM. PRO. BECAUSE SUCH COUNTS CANNOT BE SAID TO BE PART OF THE SAME ACT OR TRANSACTION OR SERIES OF ACTS OR TRANSACTIONS ALLEGED IN THE OTHER COUNTS   OF THE INDICTMENT**

As more fully addressed in the defendant's opening brief, the government has joined

counts alleging that the defendant possessed, with intent to distribute, 500 grams of cocaine and

that he used and carried a firearm in relation thereto, in the same Indictment with counts that

allege Taft-Hartley violations, fraud, embezzlement and bribery.  Self-evidently, the drug related

acts are not, "of the same or similar character, based on the same act or transaction, or are

connected with or constitute parts of a common scheme or plan." Simply put, these separate

series of counts have nothing to do with one another.

Accordingly, the defendant moved, pursuant to Rule 8(a) of the Fed. R. Crim. Pro., for a

severance "as a matter of law." In its response, the government cites a series of cases that address

the issue of "spill-over prejudice" in instances where one defendant is made to participate in a joint trial with a co-defendant against which there is a greater volume or more prejudicial proof. Indeed, the government writes: "In any event, it is well understood that 'a measure of evidentiary spillover is a foreseeable concomitant of virtually every joint trial, yet seldom indicates undue prejudice.'" (Government Memo at p. 17)

Most respectfully, defense counsel has no idea what these cases have to do with the pending motion to sever.  Self-evidently the defendant is charged only by himself. He has no co-defendants. Not surprisingly he has never raised any claim that he will suffer "spillover prejudice" from a joint trial with some other defendant.

In any event, the government once again avoids the merits of the defendant's argument. Rather, the government argues that it would be unfair to the prosecution if it could not show the jury that the defendant used embezzled Union funds to support his cocaine habit. The government's perceptions of what is "fair," aside, the considerations, which attend whether a Rule 8(a) severance must be granted are not the same those which apply to a severance motion brought under Rule 14. While the decision as to whether to grant a Rule 14 severance is governed by the Court's sound discretion, a Rule 8 severance is required as a matter of law. Appeals by either side about what is fair or what is the most economic way to proceed, are beside the point. If the counts charged are not "of the same or similar character, based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan," then a severance must be granted, "as a matter of law."

Accordingly, for the reasons set forth above, an Order of this Court should issue, severing Counts Five, Six and Seven from the Indictment.

## **CONCLUSION**

With the Court's permission the defendant will rely upon his opening brief with respect to the other issues raised in his initial submission. Accordingly, for the reasons set forth above, and for the reasons described in his opening memorandum of law, the defendant Scott Boidi, respectfully prays that an Order of this Court issue granting him the relief sought in his Notice of Motion to Dismiss and/or Sever Counts of Second Superceding Indictment and/or for a Bill of Particulars.

Dated: October 26, 2005

Respectfully submitted,

Peter Charles Horstmann, Esquire
Partridge, Ankner & Horstmann
200 Berkeley Street, 16th Floor
Boston Massachusetts
(617) 859-9999

Co-counsel, pending admission *pro hac vice*

John W. Mitchell, Esquire
43 Greenwich Street, Suite 6E
New York, New York 10013
(212) 696-9500

## **CERTIFICATE OF SERVICE**

I, Peter Charles Horstmann, Esquire, hereby certify that on this 26th day of October, 2005, a copy of the foregoing DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR SEVER COUNTS OF SECOND SUPERCEDING INDICTMENT AND/OR FOR A BILL OF PARTICULARS was served, electronically upon Laura Kaplan, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire