UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 05CR10025GAO |
| ) | |
| SCOTT BOIDI ) | |
| ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION
*IN LIMINE* TO ADMIT TESTIMONY OF ROBERT LUSKIN
AND CROSS MOTION TO PRECLUDE CONFUSING AND IRRELEVANT
EVIDENCE OF LABOR UNION REGULATIONS, STATUTES,
BYLAWS, ETC. AND INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

The Defendant, Scott Boidi, through counsel, submits this memorandum in opposition to the Government's Motion *In Limine* to Admit Testimony of LIUNA GEB Attorney Robert Luskin[1], ("Luskin"). For the reasons stated below, Luskin's testimony should be excluded in its entirety.

**ARGUMENT**

**I. LUSKIN'S TESTIMONY IS INADMISSIBLE PURSUANT TO FED.R.EVID. 401, 402, 403, 702 AND 704**

The admissibility of expert testimony is governed by Fed.R.Evid.702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

---

[1] Robert Luskin, Esquire is currently a controversial public figure with such interesting clients as controversial high profile public figure Karl Rove. The cloud of Luskin's controversy will distract from this case and his proposed testimony. It would be impossible for anyone on the jury to disregard Luskin's considerable baggage. Assuming the Court allows the Government's motion, there must be someone less controversial available to the United States Government.

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 codifies the Daubert line of cases, pursuant to which the trial court must perform a "gatekeeping function [which] requires a preliminary evaluation of both the reliability and the relevance of the proffered expert testimony." United States v. Bueno, 2006 WL 240060, at *6 (D.Mass. 2006).

The Government intends to use the testimony of the proffered witness, Robert Luskin, "to teach the jurors about [certain] documents [i.e.,the Labor Management Reporting and Disclosure Act, the Uniform Local Union Constitution of Laborer's International Union of North America ("LIUNA"), and the LIUNA Ethical Practices Code]" and "educat[e] them about the technical aspects of labor law." See Government's Motion In Limine, pp.1-2.

The technical aspects of labor law, and intricate knowledge of the above-referenced documents, are not relevant in helping the jury decide whether Boidi committed honest services mail fraud.

The essence of the alleged criminal acts as set forth in the Third Superseding Indictment is that on two separate occasions, Boidi, in his capacity as Business Manager of Local 88, accepted a thing of value from a person and was thereby influenced to admit another person to membership in Local 88 and place that individual in a job, and in doing so used the mail to send a Report of Initiation for that individual. See Third Superseding Indictment, ¶15 (Racketeering Acts One and Two). In committing these alleged acts Boidi violated Title 18, U.S.C. §§1341, 1346, and 2. See Third Superseding Indictment, ¶15.

"One of the criteria for the admission of expert testimony under Rule 702 is whether a lay person can be expected to decide the issue intelligently without an expert's help." United

2

States v. Sebaggala, 256 F.3d 59, 66 (1st Cir.2001).  The elements of the honest services mail fraud statute are neither so exotic nor esoteric that the proffered expert testimony is necessary.

To establish a violation of the mail fraud statute, 18 U.S.C. §1341, the Government must prove two elements: (1) that the defendant used the mails in furtherance of the scheme to defraud; and (2) that the defendant participated in a scheme or artifice to defraud with the specific intent to defraud.  Where honest services mail fraud is alleged, Section 1346 requires proof that the scheme or artifice to defraud "deprive[d] another of the intangible right of honest services."  See United States v.Sawyer, 239F.3d 31, 39-40 (1st Cir. 2001).  The First Circuit, in the context of a public official, has explained the elements of §§1341 and 1346 as follows:

> Underlying the applicability of §§1341 and 1346 to government officials is the notion that a public official acts as trustee for the citizens and the State... and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them.  Theft of honest services occurs when a public official strays from this duty: When a government officer decides how to proceed in an official endeavor - as when a legislator decides how to vote on an issue - his constituents have a right to have their best interests form the basis of that decision.  If the official instead secretly makes his decision based on his own personal interests - as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest - the official has defrauded the public of his honest services.

Id. at 39.

Thus, the First Circuit has described "two of the ways that a public official can steal his honest services from his public employer: (1) the official can be influenced or otherwise improperly affected in the performance of his duties...; or (2) the official can fail to disclose a conflict of interest, resulting in personal gain."  Id. at 40 (citation omitted).

It is not beyond the understanding of a jury to determine whether Boidi, as Business Manager of Local 88, stole his honest services from Local 88 and its members in the same manner as described by the First Circuit in Sawyer:  by accepting a thing of value from a person

and thereby being improperly influenced in performing his duties, specifically, by admitting another into membership and placing that person in a job, using the mails in furtherance thereof. Simply put, a jury is qualified to decide, without the admission of the proposed expert testimony, the issue of whether Boidi breached his duties of honesty and loyalty to Local 88 and its members by allegedly making a decision to admit a person to union membership based upon his own personal interest.

"There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject involved in the dispute." United States v. Rodriguez-Berrios, 2006 WL 2336884, at 1 (D.P.R. 2006) citing Fed.R.Evid. 702 advisory committee's notes (citing Ladd, *Expert Testimony*, 5 Vand.L.Rev.414, 418 (1952). An education in the "technical aspects of labor law" is not necessary for the jury to determine whether Boidi acted improperly in his position as Business Manager of Local 88, in violation of §§1341 and 1346.

Assuming *arguendo* that the proffered testimony had any probative value, its probative value would be substantially outweighed by its potential to mislead or otherwise confuse the jury. "[B]ecause ... all... expert testimony involves significant risks 'that distinguish it from lay evidence about what happened here,' its probative value must be carefully weighed against its tendency to cause unfair prejudice, confusion of the issues, or to mislead the jury." Rodriguez-Berrios, supra, 2006 WL 2336884, at *2, citing Fed.R.Evid. 403.

This Court articulated its concern with expert testimony in the following way:

> [A] certain patina attaches to an expert's testimony unlike any other witness; this

>is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve.

United States v. Hines, 55 F.Supp.2d 62, 64 (D.Mass. 1999).  Given Luskin's lofty position as General Executive Board Attorney of LIUNA, his authorship of the LIUNA Ethical Practices Code, and his role as White House Deputy Chief of Staff Karl Rove's personal attorney, it is of paramount concern that Luskin's testimony would be given more credence by the jury than it may deserve.

The nature and scope of the honest services which Mr.Boidi is alleged to have stolen from Local 88 and its members is not a matter beyond the ken of the average juror.  Admission of the proffered testimony of Luskin on the technical aspects of labor law and the general theories contained within the LMRDA, the LIUNA Constitution, and the LIUNA Ethical Practices Code would be irrelevant to the issues before the jury as well as unfairly prejudicial, confusing and misleading.   It would also be inadmissible for Luskin to opine on whether the Defendant violated any union regulations pursuant to Rule 704.  Accordingly, Luskin's testimony should be excluded.

**II.    EVIDENCE OF LABOR UNION REGULATIONS, BYLAWS, STATUTES, ETC. ARE IRRELEVANT, MISLEADING, CONFUSING AND MORE PREJUDICIAL THAN PROBATIVE**

It is anticipated that the Government will seek to introduce evidence at trial regarding labor union regulations, bylaws, statutes, etc. at trial for purposes of establishing that the Defendant may have deprived the Local 88 of honest services.  The Government has produced thousands of pages of documentation regarding this evidence including training seminars that the Defendant supposedly attended.  Because the Indictment in this case charges the Defendant with separate acts of embezzlement and honest services mail fraud, the Government's interest in

introducing evidence that the Defendant may not have comported with union regulations in proving an honest services mail fraud or embezzlement is specious, irrelevant and likely to mislead the jury. It is also likely to delay the conclusion of the trial by several days of witness testimony and evidence. Accordingly, the Government should be precluded from offering this evidence at trial.

## CONCLUSION

Based on the foregoing arguments and authorities, it is respectfully submitted that the Government's Motion In Limine to Admit Testimony of LIUNA GEB Attorney Robert Luskin

should be denied and the Government should be precluded or limited in its presentation of labor union regulations.

**THE DEFENDANT REQUESTS A HEARING ON THIS MOTION.**

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

**CERTIFICATE OF SERVICE**

I, Peter Charles Horstmann, Esquire, hereby certify that on this 30th day of August, 2006, a copy of the foregoing DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT TESTIMONY OF ROBERT LUSKIN AND CROSS MOTION TO PRECLUDE THE INTRODUCTION OF LABOR UNION REGULATION, BYLAWS STATUTES, ETC. AND INCORPORATED MEMORANDUM OF LAW was served electronically upon Laura Kaplan, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire