UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No.: |
| ) | 05CR10025GAO |
| SCOTT BOIDI ) | |
| _____ ) | |

**DEFENDANT SCOTT BOIDI'S OPPOSITION TO
GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE THE
INTRODUCTION OF INADMISSIBLE HEARSAY
IN DEFENDANT'S  OPENING STATEMENT OR
IN EXAMINATION OF WITNESSES AT TRIAL**

**INTRODUCTION**

The Defendant, Scott Boidi, through counsel, submits this memorandum

in opposition to the Government's Motion in Limine to Preclude the Introduction

of Inadmissible Hearsay In Defendant's Opening Statement Or In Examination of

Witnesses At Trial ("Government's Motion In Limine").   In January, 2001, Mr.

Boidi received a death threat from a Morgan Curran, a union member, which he

reported immediately to the FBI.  (A copy the FBI 302 will be filed at the Pretrial

Conference scheduled for September 7, 2006).  Boidi  intends to call the FBI

agents he spoke to about the threat as witnesses on his behalf, for the purpose of

showing that he felt threatened and, as a result, regularly carried a firearm for his

own protection.  The Government contends that such testimony would constitute

inadmissible hearsay.

For the reasons stated below, Mr. Boidi should be permitted to introduce

evidence that he felt threatened, through the testimony of FBI agents or other law

enforcement personnel.[1]

## ARGUMENT

**I.     Evidence As To The Defendant's State of Mind Constitutes An Exception To The Hearsay Rule, As Codified Under Federal Rule of Evidence 803(3).**

Evidence that Mr. Boidi felt threatened is governed by Federal Rule of

Evidence 803(3), which provides:

**Hearsay Exceptions; Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the

declarant is available as a witness:

(3) **Then existing mental, emotional, or physical condition**.

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The First Circuit has recognized the state of mind exception to the hearsay rule as

being well established in the law:

The state-of-mind exception has been recognized by the Supreme Court and the SJC for over a century.  Indeed,  the exception exists in every jurisdiction in the country, whether by statute, court rule, or common law tradition, and has been codified in the Federal Rules of Evidence, *see* Fed.R.Evid. 803(3).  The premise for admitting hearsay statements evidencing state-of-mind is that such statements are reliable because of their spontaneity and [the] resulting probable sincerity.  Thus, the rationale for the state-of-mind exception is similar for the other hearsay exceptions that the

---

[1] The Government has represented that the two FBI agents are retired.  If defense efforts to locate and serve these witnesses are not successful, it is anticipated that the defense will call a State Police representative who also interviewed the Defendant.

> Supreme Court has recognized as "firmly rooted." Considering the state-of-mind exception's lineage and policy origins, we agree with the many other courts that have recognized it to be a firmly rooted hearsay exception.

Horton v. Allen, 370 F.3d 75, 85 (1st Cir. 2004), cert.den., 543 U.S. 1093 (2005), (internal citations, quotations omitted).

The Government has acknowledged that Mr. Boidi seeks "to introduce evidence that Boidi felt threatened by Curran and, therefore, to protect himself, he regularly carried a firearm on his person." See Government's Motion In Limine, p.1. Evidence that Boidi felt threatened demonstrates his "state of mind." The FBI agents' testimony as to Boidi's feelings and reaction to the threat made on his life is being offered not to show that the threat was made, but to show Boidi's state of mind, for which purpose the agents' testimony is admissible. Compare Jeannite v. City of Haverhill, 2006 WL 1806410, at *2 n.4 (D. Mass. 2006) (contents of police dispatcher's call was admissible, where defendant police officers referred to the call not for its truth, but to show their state of mind).

In fact, Boidi also plans to introduce evidence that he purchased a new handgun within days of the threats, thereby further corroborating Boidi's fearful state of mind. It is not anticipated that the Government will contest this purchase as it has produced records through discovery which confirm the purchase.

The case of United States v. Ouimette,753 F.2d 188 (1st Cir.1985) is instructive. The defendant was convicted of being a felon in possession of a firearm based on the testimony of three police officers: two officers testified to

having seen the defendant drop a gun on the floor of the bar, while the third officer testified that he picked up a gun from the floor at the place where the other officers said they saw the defendant drop the gun.  Id. at 189-90.  The trial court had excluded two statements by a witness:  the first, that the police told the witness they were searching her purse because they were looking for a gun; and the second, that as the police were kicking over trash cans, they were saying "where's the gun, where's the gun."  Id. at 190-91.

On review, the First Circuit ruled that the witness' testimony as to both police statements was admissible under Federal Rule of Evidence 803(3):

> The prosecutor's insistence that the statements were hearsay misses the point; even though they were hearsay, they were admissible to show the existing state of mind of the police.

Id. at 191.

The excluded testimony - that the officers were still looking for a gun - was an essential element of the defense, and what the police said during their activities of searching the witness' purse and turning over garbage cans would indicate why they took the action they did.  Id. at 191.   If the jury believed the witness, it could infer that no gun had been dropped on the floor at all; the witness' testimony, if believed, undercut the foundation of the government's case.  Id. at 191-92.

The First Circuit concluded:

> The state of mind of the police as evinced by what they said during the search was, therefore, an important issue.  **The least complicated situation involving mental state to which Rule 803(3) applies is when the statement is used to evince a state of mind in issue.**

-4-

> When a declaration is used to evidence a state of mind directly in issue, one encounters little difficulty is justifying the admission of the declaration. State of mind has to be proved in some way and frequently other evidence is nonexistent or inadequate.

Id. at 192 (emphasis added). Exclusion of the testimony was not harmless error, as it went to the core of the defendant's case, and so a new trial was ordered. Id. at 193.

Boidi seeks to introduce testimony from the FBI agents that he felt threatened and, as a result, began to carry a firearm for self-protection. This testimony will go to the heart of Boidi's defense to the charge that he knowingly used and carried a firearm "during and in relation to" a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A). See Third Superseding Indictment, Crim. No. 05 CR 10025 GAO, Count Seven.

Section 924(c)(1) requires the Government to make two showings: first, that the defendant used or carried a firearm; and second, that the use or carrying was "during and in relation to" a "crime of violence or drug trafficking crime." Smith v. United States, 508 U.S. 223, 227-28 (1993), rehearing den., 509 U.S. 940 (1993). The first element is not at issue: Boidi was licensed to carry a firearm and did carry one on a regular basis for self-protection, in response to the threats which he had received. Boidi's dispute is with the second element - the characterization that he was carrying the firearm "during and in relation to a drug trafficking crime."

Although the phrase "in relation to" is to be broadly construed, it is not

without limit.  Thus, the firearm "must have some purpose or effect with respect to

the drug trafficking crime; its presence or involvement cannot be the result of

accident or coincidence."   Id. at 238.

> As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime.

Id. at 238, quoting United States v. Stewart, 779 F.2d 538, 539 (9th Cir. 1985)

(Kennedy, J.).

Boidi seeks to introduce evidence of his state of mind following the threat

he received, and his subsequent act of carrying a firearm for self-protection,

through the FBI agents to whom he reported the threat.  This evidence goes to the

core of his defense to the 924(c) charge. Specifically, by calling the FBI agents to

testify about Boidi's state of mind and his reaction to the threats, Boidi intends to

show that he was not carrying the firearm "in relation to" the drug trafficking

crime, but that the presence of the firearm was for self-protection against the

parties who had threatened him, and entirely unrelated to the drug trafficking

crime.

II.    **Evidence As To The Defendant's State Of Mind And Demeanor Is Not Being Offered For The Truth Of The Matter Asserted And Is Therefore Not Hearsay, And Is Admissible And Relevant To The Defense.**

Alternatively, Boidi states that the FBI agents' testimony of his report

about the threats made against him is not being offered for the truth of the matter

asserted, but for the non-hearsay purpose of showing the effect the threats had on him.  See United States v. Meserve, 271 F.3d 314, 319-20 (1st Cir. 2001) ("Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Testimony that is not offered to prove the truth of an out-of-court statement, but is instead offered to provide relevant context or background, is not considered hearsay. Moreover, the hearsay rule does not apply to statements that are offered to show what effect they produced on the actions of a listener."). (internal citations omitted).

The case of United States v. Fulmer, 108 F.3d 1486 (1st Cir. 1997), illustrates this point.  In that case, the defendant was convicted of threatening a federal agent, in violation of 18 U.S.C. §115(a)(1)(B).  At trial, the federal agent and his supervisor testified regarding a conversation which occurred the morning after the agent received the threat.  Id. at 1500.  The agent played the tape for his supervisor, and told his supervisor that he thought the message was a threat which he intended to bring to the attention of the United States Attorney.  Id. at 1500-01. The supervisor testified that the agent considered the message a threat; he further testified that the agent was "clearly upset, concerned, agitated.  His motions were somewhat exaggerated. Typical reaction you would see under those circumstances."  Id. at 1501.  The trial court ruled that these statements were admissible as either statements of present sense impression or of then-existing state of mind.  Id.

On review, the First Circuit found that the agent's testimony was not being

offered for the truth of the matter asserted, *i.e.*, that the statements were a threat

and that he was going to bring the message to the attention of the United States

Attorney's Office - but instead related to the nature and extent of the impact of the

threat upon the agent.  Id. at 1501.  As such, his statements were not hearsay.  Id.

Further, the supervisor's testimony about the agent's statements were cumulative,

and his testimony about the agent's demeanor during the course of their

conversation was not hearsay at all.   Id.  The district court had not erred in

admitting the evidence.  Id.

  As in Fulmer, Boidi seeks to admit the FBI agents' testimony about the

threats, not for the truth of the matter asserted, (*i.e.,* that a threat was made and that

he reported it to the FBI), but for the nature and extent of the impact of the threat

upon him, the same evidence which the First Circuit found was *not* hearsay in

Fulmer.   Similarly, the agents' testimony concerning Boidi's demeanor during the

course of their interviews with him would not constitute hearsay, as that testimony

would relate the agents' observations of Boidi's physical reactions to the threats.

See Fulmer, supra, 108 F.3d at 1501 ("Regarding Schlabach's testimony, we find

that ... his comments regarding Egan's demeanor during the course of this

conversation were not hearsay at all.").

  The Second Circuit has explained the difference between offering evidence

under the state of mind *exception* to the hearsay rule and offering it for a non-

hearsay purpose in the following way:

    The *exception* to the hearsay rule is invoked when the statement is

-8-

offered for the truth of the matter asserted *and* shows the declarant's state of mind (e.g. "I hate X.") In contrast, the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind...of the declarant and is *not hearsay* (e.g.,"I am Napoleon.").

Smith's counsel significantly failed to argue that the 911 tape was *not* hearsay. If the tape were played for the jury to show Smith's state of mind- i.e. his fear, excitement, agitation - it would not be hearsay because the defense would not be offering it for the truth of the matter asserted. The tape would not be offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming. As Smith's state of mind was the only relevant issue at trial, we believe this point, if made, would have been persuasive.

Smith v. Duncan, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (internal citations, quotations omitted).

Accordingly, Boidi should be allowed to call the FBI agents to testify about Boidi's state of mind and his demeanor during their conversation in order to defend himself against the 924(c) charge, as well as to use the anticipated evidence in his opening statement.

## III.   BOIDI CANNOT BE FORCED TO CHOOSE BETWEEN TWO EQUALLY PROTECTIVE CONTITUTIONAL RIGHTS

At the heart of the Government's motion is the hope that this Court will limit Boidi's ability to call witnesses as to his state of mind on the firearms charge and thereby force Boidi to testify. This strategy must fail for the reasons articulated in United States v. Simmons, 390 U.S. 377, 394 (1968), where the Supreme Court held that a defendant should not be compelled to forego one constitutional right in order to assert another. Here, Boidi's constitutional right to defend himself by

-9-

offering witnesses on his behalf should not be curtailed in order to get him to waive his Fifth Amendment right not to testify. The preclusion of this evidence would clearly violate Boidi's constitutional right to defend himself which must take precedent over any hearsay concerns.

Significantly, the Government has not argued that the prior statement of Boidi to the FBI is unreliable. This is the primary concern of the hearsay rules embodied in Rule 801. Where the Government has not articulated a concern as to the reliability of the statements, this Court should decline to limit Boidi's defense.

**CONCLUSION**

Based on the foregoing arguments and authorities, it is respectfully submitted that the Government's Motion In Limine To Preclude The Introduction of Inadmissible Hearsay In Defendant's Opening Statement Or In Examination of Witnesses At Trial should be denied.

Respectfully submitted,

Peter Charles Horstmann, Esquire
B.B.O. #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

<u>**CERTIFICATE OF SERVICE**</u>

I, Peter Charles Horstmann, Esquire, hereby certify that on this 6th day of September, 2006, a copy of the foregoing motion was served electronically upon Laura Kaplan, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire

-11-