UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. 05-10025-GAO |
| v. | ) |
| | ) |
| SCOTT BOIDI, | ) |
| Defendant | ) |

GOVERNMENT'S PRELIMINARY REQUESTS FOR JURY INSTRUCTIONS

The United States of America submits the attached requested jury instructions pursuant to Rule 30 of the Federal Rules of Criminal Procedure. The government reserves the right to supplement or modify these requested instructions in light of the requests, if any, filed by the defendants, as well as the evidence developed during the trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Laura J. Kaplan
LAURA J. KAPLAN
SUZANNE M. SULLIVAN
Assistant U.S. Attorneys

September 20, 2006

CERTIFICATE OF SERVICE

I, Laura J. Kaplan, Assistant United States Attorney, do hereby certify that I have this day served a copy of the foregoing Government's Preliminary Requests for Jury Instructions upon counsel for all defendants by electronic filing notice.

/s/ Laura J. Kaplan
Laura J. Kaplan
Assistant U.S. Attorney

## TABLE OF CONTENTS

Request No. 1: Duties of the Jury . . . . . . . . . . . . . . 1

Request No. 2: Nature of Indictment -- Presumption
    of Innocence . . . . . . . . . . . . . . . . . . . . . . 2

Request No. 3: Evidence; Objections; Rulings;
    Bench Conferences . . . . . . . . . . . . . . . . . . . 4

Request No. 4: Credibility of Witnesses . . . . . . . . . . . 7

Request No. 5: Conduct of the Jury . . . . . . . . . . . . . 8

Request No. 6: Note-Taking . . . . . . . . . . . . . . . . . 10

Request No. 7: Outline of the Trial . . . . . . . . . . . . . 11

Request No. 8: Interviews of Witnesses . . . . . . . . . . . 13

Request No. 9: Duty of the Jury to Find Facts
    and Follow Law . . . . . . . . . . . . . . . . . . . . 14

Request No. 10: Stipulations of Fact . . . . . . . . . . . . 15

Request No. 11: Impeachment of Witness's Testimony
    by Prior Conviction . . . . . . . . . . . . . . . . . 16

Request No. 12: Caution as to Cooperating Witness Testimony . 17

Request No. 13: Immunized Witnesses . . . . . . . . . . . . . 18

Request No. 14: Consider Each Count Separately . . . . . . . 19

Request No. 15: "On or About" - "Willfully and Knowingly" . . 20

Request No. 16: Presumption of Innocence;
    Proof Beyond A Reasonable Doubt . . . . . . . . . . . 21

Request No. 17: Defendant's Constitutional
    Right Not to Testify . . . . . . . . . . . . . . . . . 22

Request No. 18: What is Evidence; Inferences . . . . . . . . 23

Request No. 19: Kinds of Evidence:
    Direct and Circumstantial . . . . . . . . . . . . . . 24

Request No. 20: What is Not Evidence . . . . . . . . . . .  25

Request No. 21: Overview of the Indictment . . . . . . . .  28

Request No. 22: Overview of the RICO
    Statute - 18 U.S.C. §1962(c) . . . . . . . . . . . . .  30

Request No. 23: RICO - Elements of the Offense . . . . . .  31

Request No. 24: The First RICO Element - The Enterprise . . .  32

Request No. 25: The Second RICO Element - Interstate Commerce  34

Request No. 26: The Third RICO Element - Employed By or
    Associated With . . . . . . . . . . . . . . . . . . .  37

Request No. 27: The Fourth RICO Element — Conduct or
    Participate in the Affairs of the Enterprise . . . . . .  38

Request No. 28: The Fifth RICO Element — Pattern of
    Racketeering Activity . . . . . . . . . . . . . . . .  41

Request No. 29: Findings on Racketeering Acts . . . . . . .  45

Request No. 30: Overview of Racketeering Acts and
    Pattern Element . . . . . . . . . . . . . . . . . . .  47

Request No. 31: Racketeering Acts One and Two - Mail Fraud .  49

Request No. 32: Fiduciary Duties Owed . . . . . . . . . . .  53

Request No. 33: Honest Services Fraud Defined . . . . . . .  57

Request No. 34: Use of the Mails . . . . . . . . . . . . .  60

Request No. 35: Proof of Mailings and Transmissions . . . . .  61

Request No. 36: Racketeering Acts Three, Four, and Five and
    Counts 2, 3 & 4 : Embezzlement of Union Assets . . . . .  62

Request No. 37: Duties of Union Officers . . . . . . . . .  63

Request No. 38: Union Constitution and Bylaws . . . . . . .  64

Request No. 39: Ownership - Union Money and Property . . . .  65

Request No. 40: Purpose of Statute at Section 501(c) . . . .  66

Request No. 41: Elements of Embezzlement of Union Assets  . .  67

Request No. 42: First Element: Status of Local 88
        Tunnel Workers as a Labor Organization Engaged
        in a Industry Affecting Commerce . . . . . . . . . . .  68

Request No. 43: Second Element: Status as an Officer
        or Person Employed by a Labor Organization . . . . . .  70

Request No. 44: Third Element: Embezzlement, Steal,
        Abstract, Convert - Defined  . . . . . . . . . . . . .  72

Request No. 45: Fourth Element: Knowingly, Willfully,
        and Unlawfully - Defined . . . . . . . . . . . . . . .  75

Request No. 46: Proof of Fraudulent Intent Inferred from
        Evidence of all Surrounding Circumstances  . . . . . .  76

Request No. 47: Proof of Fraudulent Intent - Absence of
        Good Faith Belief in Authorization . . . . . . . . . .  78

Request No. 48: Proof of Fraudulent Intent - Absence of
        Good Faith Belief in Union Benefit . . . . . . . . . .  81

Request No. 49: Authorization and Lack of Union Benefit as
        Evidentiary Factors in Determining Fraudulent Intent . .  83

Request No. 50: Valid Authorization and Ratification Versus
        Invalid Exculpatory Resolution . . . . . . . . . . . .  85

Request No. 51: Return of Misappropriated Fund  . . . . . . .  87

Request No. 52: Approximate Amount - Explained  . . . . . . .  88

Request No. 53: Racketeering Act Six and Count 5:
        Conspiracy to Posses with Intent to Distribute Cocaine -
        Elements [21 U.S.C. §846]  . . . . . . . . . . . . . .  89

Request No. 54: Conspiracy to Possess with Intent
        to Distribute - Drug Quantity . . . . . . . . . . . . .  92

Request No. 55: Cocaine Conspiracy Charge - Elements  . . . .  93

Request No. 56: Possession  . . . . . . . . . . . . . . . . .  95

Request No. 57: Knowledge . . . . . . . . . . . . . . . . . .  97

Request No. 58: Intent to Distribute  . . . . . . . . . . . .  98

Request No. 59: Acts and Declarations of Co-conspirators  . . 100

Request No. 60: Racketeering Act Seven and
      Count 6: Use of Communication Facility . . . . . . . . 102

Request No. 61: Racketeering Act Eight and
      Count 9: Witness Tampering . . . . . . . . . . . . . . 103

Request No. 62: Carrying A Firearm - 18 U.S.C. §924(c) . . . 105

Request No. 63: Further definition of "Carrying" Firearm . . 108

Request No. 64: License to Carry a Firearm . . . . . . . . . 109

Request No. 65: Count 8: Witness Tampering . . . . . . . . . 110

Request No. 66: "On or About" - Explained . . . . . . . . . 112

Request No. 67: Foreperson's Role; Unanimity . . . . . . . . 113

Request No. 68: Consideration of the Evidence . . . . . . . 114

Request No. 69: Reaching Agreement . . . . . . . . . . . . . 115

Request No. 70: Return of Verdict Form . . . . . . . . . . . 117

Request No. 71: Communication With the Court . . . . . . . . 118

Request No. 72: Punishment . . . . . . . . . . . . . . . . . 119

Request No. 73: Possible Additional Proceedings . . . . . . 120

Request No. 1

<u>Duties of the Jury</u>

Ladies and gentlemen: You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial I will give you more detailed instructions.  Those instructions will control your deliberations.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts. You will hear the evidence, decide what the facts are, and then apply those facts to the law I give to you.  That is how you will reach your verdict. In doing so you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept.

You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

1

Request No. 2:

Nature of Indictment -- Presumption of Innocence

This criminal case has been brought by the United States government.    I will sometimes refer to the government as the prosecution.    The government is represented at this trial by two Assistant United States Attorneys, Laura Kaplan and Suzanne Sullivan.    The defendant, Scott Boidi, is represented by Peter Horstmann.

The defendant has been charged by the government with violations of federal law.    The charges against the defendant are contained in the indictment.    The indictment is simply a description of the charges against the defendant; it is not evidence of anything.    The defendant plead not guilty to the charges and denies committing the crimes.    He is presumed innocent and may not be found guilty by you unless all of you unanimously find that the government has proven their guilt beyond a reasonable doubt.

The indictment also contains three allegations of forfeiture. This is a charge that certain property is subject to forfeiture to the United States because of its connection to the crimes described in the indictment.    This property may not be forfeited by you unless all of you unanimously find that the government has proven its connection to the crimes described in the indictment.

2

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 3:

<u>Evidence; Objections; Rulings; Bench Conferences</u>

I have mentioned the word "evidence." Evidence includes the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated -- that is, formally agreed to by the parties.

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.

Then it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Certain things are not evidence. I will list those things for you now:

(1) Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.

(2) Objections are not evidence. Lawyers have a duty to their

4

client to object when they believe something is improper under the rules of evidence. You should not be influenced by the objection. If I sustain an objection, you must ignore the question or exhibit and must not try to guess what the answer might have been or the exhibit might have contained. If I overrule the objection, the evidence will be admitted, but do not give it special attention because of the objection.

(3) Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.

(4) Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for a particular purpose, and not for any other purpose. I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find or infer another fact. You may consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any

5

evidence.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 4:

## Credibility of Witnesses

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says or only part of it or none of it.

In deciding what to believe, you may consider a number of factors, including the following: (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (6) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

7

Request No. 5:

<u>Conduct of the Jury</u>

To insure fairness, you as jurors must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict;

Second, do not talk with anyone else about this case, or about anyone who has anything to do with it, until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me;

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you, please report it to me immediately;

Fourth, during the trial do not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.  If a person from one side of the lawsuit sees you talking to a person from the other side -- even if it is simply to pass the time of day -- an unwarranted and unnecessary suspicion about your fairness might be aroused.  If any lawyer, party or witness does not speak to

you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you;

Fifth, do not read any news stories or articles about the case or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it;

Sixth, do not do any research, such as consulting dictionaries or other reference materials, and do not make any investigation about the case on your own;

Seventh, if you need to communicate with me simply give a signed note to the court security officer to give to me; and

Eighth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 6:

<u>Note-Taking</u>

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use. I want to give you a couple of warnings about taking notes, however.  First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your grade-school experiences that not everything you write down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day and place them in the vault.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed.  These steps are in line with my earlier instruction to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

10

Request No. 7:

<u>Outline of the Trial</u>

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence that it intends to put before you, so that you will have an idea of what the government's case is going to be.

Just as the indictment is not evidence, neither is the opening statement evidence.  Its purpose is only to help you understand what the evidence will be and what the government will try to prove.

After the government's opening statement, the defendants' attorneys may, if they choose, make opening statements.  At this point in the trial, no evidence has been offered by either side.

Next the government will offer evidence that it says will support the charges against the defendants.  The government's evidence in this case will consist of the testimony of witnesses, and may include documents and other exhibits.  In a moment I will say more about the nature of evidence.

After the government's evidence, the defendants' lawyers may present evidence in the defendants' behalf, but they are not required to do so.  I remind you that the defendants are presumed innocent, and the government must prove the guilt of the defendants beyond a reasonable doubt.  The defendants do not have to prove their innocence.

After you have heard all the evidence on both sides, the

11

government and the defense will each be given time for their final arguments.  I just told you that the opening statements by the lawyers are not evidence.  The same applies to the closing arguments.  They are not evidence either.  In their closing arguments the lawyers for the government and the defendants will attempt to summarize and help you understand the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict. After hearing my instructions, you will leave the courtroom together to make your decisions.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

Following your verdict, there may be further proceedings. If such proceedings become necessary, I will give you additional instructions at that time.

Pattern Jury Instructions: first Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 8:

<u>Interviews of Witnesses</u>

A lawyer who calls a witness to testify in a criminal trial may properly conduct interviews of such a witness before he or she takes the witness stand at trial so as to present the evidence in the case to the jury in an orderly and proper manner. By the same token, a witness may make his own free and voluntary choice to either discuss the case or to refuse to discuss the case with counsel, whether it be counsel for the government or counsel for a defendant.  Accordingly, there is nothing improper in a lawyer interviewing a witness before he or she testifies. There is also nothing improper if a witness elects not to discuss the case with counsel before trial.

Request No. 9:

<u>Duty of the Jury to Find Facts and Follow Law</u>

It is your duty to find the facts from all the evidence admitted in this case.  To those facts you must apply the law as I give it to you.  The determination of the law is my duty as the presiding judge in this court.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return -- that is a matter entirely for you to decide.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

14

Request No. 10:

<u>Stipulations of Fact</u>

During the course of the trial, the lawyers read to you various stipulations.  A stipulation means simply that the government and the defendants agree that the facts stated in the stipulation are true.  Since there is no disagreement as to such facts, there is no need for the parties to present evidence apart from the stipulation.  You must accept the stipulation as fact to be given whatever weight you choose.

Adapted from <u>First Circuit Pattern Jury Instructions (Criminal Cases)</u>, Committee on Pattern Criminal Jury Instructions First Circuit (West 1998), §2.01; <u>Manual of Model Instructions for the Ninth Circuit</u> (West 1985), p.20.

Request No. 11:

<u>Impeachment of Witness's Testimony by Prior Conviction</u>

You have heard evidence that certain witnesses have previously been convicted of a crime. You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to those witnesses' testimony.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 12:

<u>Caution as to Cooperating Witness Testimony</u>

You have heard the testimony of several of the government's witnesses who participated in the crimes charged against the defendant and provided evidence under agreements with the government.  Some people in this position are entirely truthful when testifying.  Still, you should consider this testimony with care and caution.  You may consider whether he had reason to make up stories or exaggerate what others did to be helpful to law enforcement.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

17

Request No. 13:

<u>Immunized Witnesses</u>

The testimony of an immunized witness, someone who has been told his testimony will not be used against him in return for his cooperation, must be examined and weighed by the jury with greater care than the testimony of someone who is appearing in court without the need for such an agreement with the government.

Again, there is nothing wrong with the government giving testimonial immunity to a witness. In fact, if a witness's testimony would incriminate him or herself, then that witness has a constitutional right not to testify, and it can be overcome, and the witness can be made to testify, only if the government immunizes the witness.

You, the jury, must determine whether the testimony of each immunized witness has been affected by self-interest, or by the agreement he has with the government, or by his own interest in the outcome of this case, or by prejudice against the defendants.

Devitt, Blackmar, Wolff and O'Malley, <u>Federal Jury Practice and Instructions</u> (4th ed. 1992), §15.03.

18

Request No. 14:

<u>Consider Each Count Separately</u>

The charges in the Indictment are set forth in 9 counts which are based on a number of different federal criminal statutes.  Remember, that each separate offense, and the evidence pertaining to it, should be considered separately.  However, some evidence is relevant to more than one offense, so you may consider evidence for every offense to which the particular evidence is relevant.


Adapted from 1 Devitt & Blackmar, <u>Federal Jury Practice and Instructions</u>, §11.08.

Request No. 15:

"On or About" - "Willfully and Knowingly"

You will notice that the Indictment charges that various crimes were committed "on or about" or "in or about" a certain date rather than "on" a certain date.  The words "on or about" or "in or about" are used because the proof need not establish with certainty the exact date of the alleged offense.  It is sufficient if the evidence in the case established beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly" will be used from time to time in these instructions.  The term "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.  It does not require a showing that the defendant knew his conduct was against the law.


Adapted from 1 Devitt & Blackmar, Federal Jury Practice and Instruction, §13.05; Pattern Criminal Jury Instructions, Fifth Circuit Judges Association (West 1990), pp. 49, 50; see First Circuit Pattern Jury Instructions (Criminal Cases), Committee on Pattern Criminal Jury Instructions First Circuit (West 1998), §§2.13, 4.02.

Request No. 16:

<u>Presumption of Innocence; Proof Beyond A Reasonable Doubt</u>

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt. The presumption is not a mere formality.  It is a matter of the most important substance.

The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant. The defendants before you have the benefit of that presumption throughout the trial, and you are not to convict them of a particular charge unless you are persuaded of their guilt of that charge beyond a reasonable doubt.

The presumption of innocence until proven guilty means that the burden of proof is always on the government to satisfy you that the defendants are guilty of the crime or crimes with which they are charged beyond a reasonable doubt.  The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict. This burden never shifts to the defendants.  It is always the government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt by the evidence and the reasonable inferences to be drawn from that evidence.  The defendants have the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any

21

essential element of a crime charged against them.

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to one or all of the defendants' guilt of a particular crime, it is your duty to acquit the appropriate defendant or defendants of that crime.  On the other hand, if after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of a defendant or defendants' guilt of a particular crime, you should vote to convict the appropriate defendant or defendants.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 17:

22

<u>Defendant's Constitutional Right Not to Testify</u>

The defendant has a constitutional right not to testify and no inference of guilt, or of anything else, may be drawn from the fact that the defendant did not testify.  For any of you to draw such an inference would be wrong; indeed, it would be a violation of your oath as a juror.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 18:

23

<u>What is Evidence; Inferences</u>

The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and the defendants accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact even though nothing more was said about it one way or the other.

Although you may consider only the evidence presented in the case, you are not limited in considering that evidence to the bald statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.
                    Request No. 19:

24

## Kinds of Evidence: Direct and Circumstantial

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something. Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly. You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions – First Circuit
1998 Edition.

Request No. 20:

25

## What is Not Evidence

Certain things are not evidence.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence because the lawyers are not witnesses.  What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them from the evidence differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

(3) Anything that I have excluded from evidence or ordered stricken and instructed you to disregard is not evidence.  You must not consider such items.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at trial.

(5) The indictment is not evidence.  This case, like most criminal cases, began with a charge, or an indictment.  In this case, there were subsequent charges which are contained in a Indictment.  You will have that indictment before you in the course of your deliberations in the jury room.  That indictment was returned by a grand jury, which heard only the government's

26

side of the case.  I caution you, as I have before, that the fact
that these defendants have been indicted is no evidence
whatsoever of their guilt.  The indictment is simply an
accusation.  It is the means by which the allegations and charges
of the government are brought before this court.  The indictment
proves nothing.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 21:

<u>Overview of the Indictment</u>

The Indictment in this case contains 9 counts.  However, the first count charges the defendant with violations of the RICO statute.  The RICO charge is an actual violation of the RICO statute, and what I will call a "substantive offense," acts somewhat like an umbrella in this case and covers, from an evidence perspective, almost all of the remaining counts.  As I will explain in detail later in these instructions, a RICO charge is actually made up of a number of subparts, called racketeering acts, which could themselves be charged as separate crimes, some under federal laws and some under state laws.  Six of the remaining 8 counts of the Indictment charge crimes that are among the racketeering acts of the RICO charge.

As mentioned, the first count of the Indictment charges violations of the RICO statute.  Count 1 charges the defendant with a substantive violation of the statute and charges the defendant with actually engaging in the conduct that would, if proven, violate the RICO statute.

There are 8 racketeering acts, that the government charges in support of the RICO charge in Count 1 of the Indictment.  Also, to make it easier for you during your deliberations, you will have a copy of the Indictment, and verdict slips that list the counts and racketeering acts charged against the defendant.

I must also caution you at this point that charges in an

28

Indictment, whether in the form of counts or racketeering acts, are only charges.  The Indictment itself is not evidence that any crime has been committed.  Counts and racketeering acts must be proven by the government beyond a reasonable doubt and the mere fact that the charges have been brought in the Indictment is not evidence that any crime has been committed.  In a few minutes, I will instruct you in greater detail on the essential elements of the offenses and racketeering acts that are charged.

Request No. 22:

Overview of the RICO Statute - 18 U.S.C. §1962(c)

I will now turn to a discussion of the law applicable to the individual counts in the Indictment, and I will start with Count 1, which charge violations of the RICO statute, formally known as the Racketeer Influenced and Corrupt Organization Act.  A subsection of that statute defines the conduct that constitutes what the law refers to as a substantive violation of the RICO statute.  The term "substantive violation," as I will use it in these instructions, refers to a criminal offense as defined by law, as distinguished from a conspiracy or agreement to commit that offense.

Subsection (c) of the RICO statute reads as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. Section 1962(c); United States v. Cincotti, et al., Crim. No. 84-293-K, Jury Charge of Honorable Robert E. Keeton (D. Mass. August 6, 1986); Sand, et al., Modern Federal Jury Instructions, ¶52.04, at 52-33 (1992).

30

Request No. 23:

RICO - Elements of the Offense

To convict the defendant of a substantive violation of the RICO statute, as alleged in Count 1 of the Indictment, you must find that the evidence has established beyond a reasonable doubt the following five essential elements:

**One**:    An enterprise, as described in the Indictment, existed on or about the time alleged in the Indictment;

**Two**:    The enterprise engaged in, or its activities affected, interstate commerce;

**Three**:    The defendant was employed by or was associated with the enterprise;

**Four**:    The defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

**Five**:    The defendant knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the Indictment; that is, through the commission of at least two charged racketeering acts, or through aiding, abetting, commanding, or causing the commission of two such racketeering acts.

I will now discuss each of those five essential elements in more detail.

Seventh Circuit Pattern Jury Instructions (1999 ed.); Eleventh Circuit Pattern Jury Instructions §71.1 (2003 ed.); Sedima, S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496-97 (1985); United States v. Posado-Rios, 158 F.3d 832, 855 (5th Cir. 1998); United States v. Hoyle, 122 F.3d 48, 50 (D.C. Cir. 1997); United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995); United States v. Console, 13 F.3d 641, 652-53 (3d Cir. 1993); United States v. Alvarez, 860 F.2d 801, 818 (7th Cir. 1988); United States v. Ruiz, 905 F.2d 499, 503 (1st Cir. 1990).

Request No. 24:

## The First RICO Element – The Enterprise

First, the evidence must establish that the defendant was employed by or associated with an enterprise. The term "enterprise" includes any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact even though not a legal entity. An enterprise may be a formal or an informal organization of individuals so long as they have associated together for a common purpose. The enterprise need not be a legal or legitimate entity, or engaged in legal or legitimate activity. That is, an enterprise may consist of a group of individuals whose purpose is exclusively criminal.

In the present case, it is alleged by the government that the defendant, and others, associated in fact to form an enterprise, and that the enterprise was Local 88, where defendant SCOTT BOIDI was the elected Business Manager for a period of time from June 1991 through May 2002.

To find that this association-in-fact existed, you must find that the alleged enterprise had an ongoing organization, formal or informal, and that its various associates functioned as a continuing unit for a common purpose. This means that while individuals may come and go, the enterprise must continue in an essentially unchanged form during substantially the entire period alleged in the Indictment.

32

Note that the enterprise element is different from the pattern of racketeering activity element which I will define shortly.  While the proof to establish these elements may overlap, proof of one does not necessarily establish the other.  Rather, the enterprise must be an entity separate and apart from the pattern of racketeering activity and continue to exist in the intervals between the alleged racketeering activities.  However, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity.  Morever, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise.  If such an enterprise existed, it makes no difference whether its purpose was legitimate or criminal.

Adapted from Jury Instructions for Civil and Criminal RICO Cases with Commentary, 1987 B.Y.U.L. Rev. 1, 6; see e.g., United States v. Blackwood, 768 F.2d 131, 137 (7th Cir. 1985); United States v. Ambrose, 740 F.2d 505, 512 (7th Cir. 1984); United States v. Lee Stoller Enterprises, 652 F.2d 1313, 1318 (7th Cir. 1981); United States v. Clark, 646 F.2d 1259, 1263 (8th Cir. 1981); State of Maryland v. Buzz Berg Wrecking Co., Inc., 496 F.Supp. 245, 247-48 (D. Md. 1980); United States v. Turkette, 452 U.S. 576, 583 (1981); United States v. Patrick, 248 F.3d 11, 18-19 (1st Cir. 2001).

Request No. 25:

The Second RICO Element - Interstate Commerce

As I stated previously, the government must prove beyond a reasonable doubt that the RICO enterprise engaged in, or its activities affected, interstate commerce. Interstate commerce means trade or conducting business or travel between one state and another state. Therefore, interstate commerce includes the movement of money, goods, services, or persons from one state to another state. This may include, among other matters, the purchase or sale of goods or supplies from or to outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things.

The government may satisfy this element by proving either: (1) the enterprise engaged in interstate commerce; or (2) its racketeering activities affected interstate commerce. Here, the government is alleging both prongs of the interstate commerce element: that is, that the enterprise, through its Honest Services Mail Fraud, was engaged in interstate commerce; and that the racketeering activities of the enterprise, particularly the alleged embezzlement of union assets, affected interstate commerce.

It is not necessary for the government to prove that the defendant knew that the enterprise would affect interstate commerce, that the defendant intended to engage in or affect interstate commerce, or that the defendant engaged in, or his

34

activities affected, interstate commerce.  To establish the requisite effect on interstate commerce, the government is not required to prove a significant or substantial effect on interstate commerce.  Rather, a minimal effect on interstate commerce is sufficient.

An enterprise is generally "engaged in commerce" when it is itself directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce.  If you find that the evidence is sufficient to prove that the enterprise was "engaged in" interstate commerce, the required nexus to interstate commerce is established, and therefore the government is not further required to prove the alternative, that the activities of the enterprise affected interstate commerce.

Honest services mail fraud is a kind of economic enterprise that you may consider in determining whether the government has proven that the charged enterprise was engaged in or its activities affected commerce.  The depletion of assets of an interstate business by means of honest services mail fraud or embezzlement have also been determined to affect interstate commerce in that the business then has less assets to use to purchase (if money was taken) items in interstate commerce, or to distribute (if product was taken) product in interstate commerce.

The government is not required to prove all the circumstances outlined above.  To satisfy this element, the

35

government need only prove beyond a reasonable doubt that either
the enterprise was "engaged in" interstate commerce, or that the
racketeering activities of the enterprise considered in their
entirety had some minimal effect on interstate commerce.


Seventh Circuit Pattern Jury Instructions, p.324 (1999 ed.); 2B
O'Mally, Grenig, Lee, Federal Jury Practice and Instructions, §
56.05 (5th ed. 2000); United States v. Robertson, 514 U.S. 669,
671-72 (1995); United States v. Marino, 277 F.3d 11, 34-35 (1st
Cir. 2002); United States v. Riddle, 249 F.3d 529, 537 (6th Cir.
2001); De Falco v. Bernas, 244 F.3d 286, 309 (2[d] Cir. 2001);
United States v. Frega, 179 F.3d 793, 800-01 (9th Cir. 1999);
United States v. Miller, 116 F.3d 641, 673-74 (2[d] Cir. 1997);
United States v. White, 116 F.3d 903, 925 & n.8 (D.C. Cir. 1997);
United States v. Beasley, 72 F.3d 1518, 1526 (11th Cir. 1996);
United States v. Farmer, 924 F.2d 647, 651 (7th Cir. 1991);
United States v. Norton, 867 F.2d 1359 (11th Cir. 1989)
(collecting cases); United States v. Doherty, 867 F.2d 47, 68
(1st Cir. 1989); United States v. Muskovsky, 863 F.2d 1319, 1325
(7th Cir. 1988); United States v. Qaoud, 777 F.2d 1105, 1116-17
(6th Cir. 1985); United States v. Conn, 769 F.2d 420, 423-24 (7th
Cir. 1985); United States v. Bagnariol, 665 F.2d 877, 892-93 (9th
Cir. 1981); United States v. Long, 651 F.2d 239, 241-42 (4th Cir.
1981); United States v. Stratton, 649 F.2d 1066, 1075 (5th Cir.
1981); United States v. Rone, 598 F.2d 564, 573 (9th Cir. 1979);
United States v. Zorrilla, 93 F.3d 7, 8 (1st Cir. 1996); United
States v. Burgos, 254 F.3d 8, 11 (1st Cir. 2001); United States
v. Fabian, 312 F.3d 550, 555 (2[d] Cir. 2002); Bertoldo v. United
States, 145 F. Supp. 2d 111, 118 (D. Mass. 2001); United States
v. Capozzi, 347 F.3d 327, 337 (1st Cir. 2003); 21 U.S.C. §§801
(3-6).

Request No. 26:

<u>The Third RICO Element - Employed By or Associated With</u>

The third element the government must prove beyond a reasonable doubt is that the particular defendant was "employed by" or "associated with" the enterprise charged in the Indictment.  The government need not prove both.  Either one is sufficient to establish this element

The term "employed by" should be given its common, plain meaning.  Thus, a person is "employed by" an enterprise when, for example, he is on the payroll of the enterprise (whether a legal entity or not) and performs services for the enterprise, holds a position in the enterprise, or has an ownership interest in the enterprise.

"Associated with" also should be given its plain meaning. [As stated in Webster's Third New International Dictionary (1971 ed.)]  "Associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally ... to join or connect with one another."  Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise, whether he is compensated for his participation or not.  Although a person's role in the enterprise may be very minor, a person will still be associated with the enterprise if he knowingly joined with a group of individuals

37

associated in fact who constitute the enterprise.

It is not required that the defendant have been "employed by" or "associated with" the enterprise for the entire time the enterprise charged in the Indictment existed.  The government also is not required to prove that the defendant had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise.  Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the Indictment, the defendant was "employed by" or "associated with" the enterprise within the meaning of those terms as I have just explained them, and that he knew of the general nature of the enterprise and that the enterprise extended beyond his own role in the enterprise.

United States v. Marino, 277 F.3d 11, 33 (1st Cir. 2002); United States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000); United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000);  United States v. Gabriele, 63 F.3d 61, 68 (1st Cir. 1995);  United States v. Console, 13 F.3d 641, 653-54 (3d Cir. 1993); United States v. Mokol, 957 F.2d 1410, 1417 (7th Cir. 1992);  United States v. Eufrasio, 935 F.2d 553, 577 n.29 (3d Cir. 1991); United States v. Rastelli; 870 F.2d 827, 828 (2d Cir. 1989);  United States v. Yonan, 800 F.2d 164, 167 (7th Cir. 1986); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984); United States v. Bright, 630 F.2d 804, 830 (5th Cir. 1980); United States v. Herman, 589 F.2d 1191, 1194, 1198 (3d Cir. 1978);  United States v. Forsythe, 560 F.2d 1127, 1136, n.14-15 (3d Cir. 1977); United States v. McMonagle, 437 F. Supp. 721, 723 (E.D. Pa. 1977).
                              Request No. 27:

<u>The Fourth RICO Element — Conduct or Participate</u>
<u>in the Affairs of the Enterprise</u>

The fourth element the government must prove beyond a reasonable doubt is that the defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise.  Such proof may include evidence that the defendant intentionally performed acts, functions, or duties which were necessary to or helpful in the operation of the enterprise. Thus, the government must prove that the defendant participated in the operation or management of the enterprise itself or that he had some part in directing the enterprise's affairs.  However, the government need not prove that the particular defendant exercised significant control over or within the enterprise, or that he had a formal position in the enterprise, or that he had primary responsibility for the enterprise's affairs.  Rather, "[a]n enterprise is `operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management" or carry out upper management's orders.  Therefore, this element may be satisfied with respect to "all who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers."

Adapted From 2B O'Malley. Grenig, Lee, <u>Federal Jury Practice and Instructions</u>, §56.08 (5th ed. 2000); <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179-86 (1993); <u>United States v. Parise</u>, 159 F.3d 790,

796 (3$^d$ Cir. 1998); <u>United States v. Hurley</u>, 63 F.3d 1, 11 (1st Cir. 1995); <u>United States v. Wong</u>, 40 F.3d 1347, 1373 (2$^d$ Cir. 1994); <u>United States v. Viola</u>, 35 F.3d 37, 41 (2$^d$ Cir. 1994); <u>United States v. Oreto</u>, 37 F.3d 739, 750 (1st Cir. 1994); <u>United States v. Weiner</u>, 3 F.3d 17, 23-24 (1st Cir. 1993); <u>University of Maryland v. Peat, Marwick, Main</u>, 996 F.2d 1534, 1539 (3$^d$ Cir. 1993).

Request No. 28:

<u>The Fifth RICO Element — Pattern of Racketeering Activity</u>

The fifth element the government must prove beyond a reasonable doubt to establish a substantive RICO violation is the defendant conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The term racketeering activity is defined in the RICO statute and includes a long list of crimes that can constitute racketeering acts, including the offenses alleged as racketeering acts in the Indictment in this case.

As I have already stated, the Indictment alleges that the defendant committed 8 racketeering acts, including witness tampering, honest services mail fraud, embezzlement of union assets, use of a communication facility, namely a cellular telephone, to conspire to possess with intent to distribute a schedule II controlled substance, and conspiracy to possess with intent to distribute a schedule II controlled substance.  To establish a "pattern of racketeering activity," as alleged in the Indictment, the government must prove three elements beyond a reasonable doubt with respect to the defendant:

**<u>One</u>:** The defendant intentionally committed, aided, abetted, commanded, or caused the commission of two or more of the racketeering acts alleged against the defendant in the Indictment.  These two or more racketeering acts must have been

41

committed within ten years of each other.  In addition, one of the offenses must have occurred within five years prior to February 3, 2005, the date of this Indictment.  Your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed, aided, abetted, commanded, or caused. Shortly, I will instruct you regarding the elements of each of the charged racketeering acts.

**Two:** The government must also prove that the racketeering acts you find to have been committed are "related;" that is, have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not merely be isolated events. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise.  For example, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the racketeering act benefitted the enterprise, or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

**Third**: The government must also prove that the racketeering acts you find either extended over a substantial period of time or posed a threat of continued criminal activity.  The government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.  For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against a particular defendant.  Rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.


Seventh Circuit Pattern Jury Instructions (1999 ed.); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242-43 (1989); United States v. Posada-Rios, 158 F.3d 832, 856-57 (5th Cir. 1998); United States v. Polanco, 145 F.3d 536, 541 (2d Cir. 1998); United States v. White, 116 F.3d 903, 925, n.7 (D.C. Cir. 1997); United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994); United States v. Grubb, 11 F.3d 426, 439 (4th Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 566-67 (3d Cir. 1991); United

43

States v. Gonzalez, 921 F.2d 1530, 1540 (11th Cir. 1991); United States v. Tillem, 906 F.2d 814, 822 (2[d] Cir. 1990); United States v. Angiulo, 897 F.2d 1169, 1180 (1st Cir. 1990); United States v. Salerno, 868 F.2d 524, 533 (2[d] Cir. 1989); United States v. Indelicato, 865 F.2d 1370, 1382-84 (2[d] Cir. 1989)(en banc); United States v. Pieper, 854 F.2d 1020, 1026-27 (7th Cir. 1988);

United States v. Horak, 833 F.2d 1235, 1239-40 (7th Cir. 1987); United States v. Robilotto, 828 F.2d 940, 947-48 (2[d] Cir. 1987); United States v. Qaoud, 777 F.2d 1105, 1115 (6th Cir. 1985); United States v. Carter, 721 F.2d 1514, 1526-27 (11th Cir. 1984); United States v. Provenzano, 688 F.2d 194, 200 (3[d] Cir. 1982); United States v. Phillips, 664 F.2d 971, 1011-12 (5th Cir. 1981); United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313, 1319 (7th Cir. 1981); United States v. Weisman, 624 F.2d 1118, 1121-23 (2[d] Cir. 1980); United States v. Elliott, 571 F.2d 880, 899 (5th Cir. 1978). See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242-43 (1989); United States v. Richardson, 167 F.3d 621, 625-26 (D.C. Cir. 1999); Tabas v. Tabas, 47 F.3d 1280, 1294-95 (3[d] Cir. 1995)(en banc); United States v. Busacca, 936 F.2d 232, 238 (6th Cir. 1991); United States v. Alkins, 925 F.2d 541, 551-53 (2[d] Cir. 1991); United States v. Coiro, 922 F.2d 1008, 1017 (2[d] Cir. 1991); United States v. Gonzalez, 921 F.2d 1530, 1544-45 & n.23 (11th Cir. 1991); United States v. Link, 921 F.2d 1523, 1527 (11th Cir. 1991); United States v. Hobson, 893 F.2d 1267 (11th Cir. 1990); United States v. Kaplan, 886 F.2d 536, 543 (2[d] Cir. 1989); United States v. Idelicato, 865 F.2d 1370, 1383-84 (2[d] Cir. 1989)(en banc).

Request No. 29:

<u>Findings on Racketeering Acts</u>

It is not necessary for the government to establish that the defendant committed all of the acts of racketeering activity with which he is charged.  Rather, the government may satisfy its burden by proving beyond a reasonable doubt that the defendant committed, or aided and abetted the commission of, at least two charged racketeering acts.  You must unanimously agree as to which of the two or more acts of racketeering, if any, the defendant committed, aided, abetted, commanded, or caused, and you must find those acts to constitute a pattern as I have defined that element to you.

Six of the eight racketeering acts with which the defendant is charged in Count 1 are also charged separately as substantive counts.  They are: three counts of embezzlement of union assets, one count of conspiracy to possess with intent to distribute a schedule II controlled substance, one count of use of communication facility, namely a cellular telephone, to conspire to possess with intent to distribute a schedule II controlled substance, and one count of witness tampering.  Besides these instructions, you will also have the Indictment and verdict slips during your deliberations to assist you in your deliberations concerning the defendant.  Shortly, I will instruct you on the essential elements of the various crimes charged as racketeering acts, much as I have already instructed you on the essential

elements of a substantive RICO charge.

Request No. 30:

## Overview of Racketeering Acts and Pattern Element

Before you can fully consider the RICO charge in the Indictment, it is necessary for me to instruct you on the essential elements of the various racketeering acts charged in Count one of the RICO count. As you will recall, one of the essential elements of a substantive RICO charge is that the defendant under consideration must have engaged in a "pattern of racketeering activity." As I stated earlier, a pattern of racketeering activity is comprised of two or more racketeering acts within ten years of each other that satisfy the concepts of relatedness and continuity that I also addressed. For you to be able to determine if the defendant committed, aided, abetted, commanded, or caused, or agreed to the commission of two or more such racketeering acts, it is now necessary that I instruct you on the essential elements of each of the charged racketeering acts.

In this case, many of the following instructions have a dual purpose. That is, many of the racketeering acts are also charged later in the Indictment as substantive crimes. In those cases, which I will specifically highlight for you, the instructions on the essential elements of those crimes will govern your determination of whether the government has met its burden to establish beyond a reasonable doubt the commission of both the charged racketeering act and its related substantive offense.

47

The burden on the government is the same, whether you are
considering a racketeering act or a count of the Indictment.  The
government must prove each essential element beyond a reasonable
doubt.

Request No. 31:

Racketeering Acts One and Two - Mail Fraud

Racketeering Acts One and Two charge the defendant Scott Boidi with Mail Fraud under Title 18, United States Code, Sections 1341, 1346 and 2.  Title 18, United States Code, Section 1341 provides in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be guilty of an offense against the United States.

In order to find the defendant guilty of mail fraud, you must be convinced that the government has proven each of the following three things beyond a reasonable doubt:

**One**:  a scheme or artifice to defraud;

**Two**: the defendant's knowing and willful participation in this scheme or artifice to defraud with the intent to defraud; and

**Three**: the use of the United States mail, on or about the date charged, in furtherance of this scheme or artifice to defraud.

49

A scheme includes any plan, pattern or course of action. The term "defraud" means to deprive another of something of value by means of deception or cheating. A scheme to defraud is ordinarily accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or purpose to cause some loss to some person. It includes a scheme to deprive another of the intangible right of honest services.

A defendant acted "knowingly" if he/she was conscious and aware of his/her actions, realized what he/she was doing or what was happening around him/her, and did not act because of ignorance, mistake or accident. An act or failure to act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law. Thus, if the defendant acted in good faith, he/she cannot be guilty of the crime. The burden to prove intent, as with all other elements of the crime, rests with the government.

To act with "intent to defraud" means to act willfully and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another or bringing about some financial gain to oneself. Thus, if the defendant acted in good faith, he/she cannot be guilty of the crime. The burden to prove intent, as with all other elements of the crime, rests with the government.

50

Intent or knowledge may not ordinarily be proven directly
because there is no way of directly scrutinizing the workings of
the human mind.  In determining what the defendant knew or
intended at a particular time, you may consider any statements
made or acts done or omitted by the defendant and all other facts
and circumstances received in evidence that may aid in your
determination of the defendant's knowledge or intent.  You may
infer, but you certainly are not required to infer, that a person
intends the natural and probable consequences of acts knowingly
done or knowingly omitted.  It is entirely up to you, however, to
decide what facts are proven by the evidence received during this
trial.

It is not necessary that the government prove all of the
details alleged in the indictment concerning the precise nature
and purpose of the scheme or that the material transmitted by
mail was itself false or fraudulent or that the alleged scheme
actually succeeded in defrauding anyone or that the use of the
mail was intended as the specific or exclusive means of
accomplishing the alleged fraud.

What must be proven beyond a reasonable doubt is that the
defendant knowingly devised or intended to devise a scheme to
defraud that was substantially the same as the one alleged in the
indictment, and that the use of the mail on or about the date
alleged was closely related to the scheme because the defendant
caused it to be mailed in an attempt to execute or carry out the

51

scheme.  To "cause" the mail to be used is to do an act with

knowledge that the use of the mail will follow in the ordinary

course of business or where such use can reasonably be foreseen.


18 U.S.C. §1341; First Circuit Criminal Jury Instruction 4.12
United States v. Sawyer, 85 F.3d 713, 732 (1st Cir. 1996)

Request No. 32:

### Fiduciary Duties Owed

Now I will give you instructions on the particular scheme to defraud charged in the Indictment.  Remember a scheme to defraud includes a scheme to deprive another of the intangible right of honest service.

Here, Racketeering Act One charges Defendant SCOTT BOIDI with devising a scheme or artifice to defraud with the following objective:

1)  to deprive Local 88 and its members of their intangible right to the defendant's honest services, including the honest services defendant owed to Local 88 and its members pursuant to Section 501(a) of the Labor Management Reporting and Disclosure Act and the Uniform Local Union Constitution of LIUNA.

Racketeering Act Two charges Defendant SCOTT BOIDI with devising a scheme or artifice to defraud with the following objective:

1)  to deprive Local 88 and its members of their intangible right to the defendant's honest services, including the honest services defendant owed to Local 88 and its members pursuant to Section 501(a) of the Labor Management Reporting and Disclosure Act, the LIUNA Ethical Practices Code and the LIUNA Job Referral Rules.

In order to establish that a defendant is guilty of a fraud scheme involving honest services, the Government must also prove

53

the following requirements beyond a reasonable doubt.  A scheme
to defraud a victim of the right of honest services requires: 1)
that the defendant knowingly breached his recognized fiduciary
duty; and 2) that the defendant was aware of the reasonably
foreseeable risk of economic harm or loss to the victim.

Now I will give you instructions on the first requirement of
a scheme to defraud involving honest services--a knowing breach
of recognized fiduciary duty.

In his capacity as a labor union representative, Defendant
SCOTT BOIDI had several duties of fidelity to the members of
Local 88.  Racketeering Act One and Two of the Indictment specify
that Defendant SCOTT BOIDI's duty of honest services to Local 88
arose from three separate sources.  The first source of honest
service alleged arises from a federal law called the Labor-
Management Reporting and Disclosure Act of 1959 or LMRDA which
describes the duties of labor organization officials.

Section 501(a) of the LMRDA specifies that the officers,
agents, shop stewards and other representatives of a labor
organization occupy positions of trust in relation to that labor
organization and its members as a group. Section 501(a) of the
LMRDA further specifies that each such representative of a labor
organization has a duty to hold the money and property of the
organization solely for the benefit of the organization and its
members; to refrain from dealing with such organization as an
adverse party or in behalf of an adverse party in any matter

54

connected with his duties; to refrain from holding or acquiring
any pecuniary or personal interest which conflicts with the
interests of such organization; and to account to the
organization for any profit received by him in whatever capacity
in connection with transactions conducted by him or under his
director on behalf of the organization.

The indictment also alleges that Defendant Scott Boidi owed
a duty of honest service to Local 88 and its members arising from
the provisions of the Uniform Local Union Constitution of LIUNA.
A labor organization is required by law to adopt a constitution
and bylaws which provide the basic rules and regulations which
govern its officers and other representatives in the transaction
of its business.

The Uniform Local Constitution of the Laborers'
International Union of North America, which was amended on
September 9-12, 1991, sets forth the rules of every Local Union
of LIUNA and officers thereof.  Said Constitution provides, among
other things, the following:

(A) that the Local Union must conduct its affairs in a
manner which would most tend to enhance, conserve and protect the
welfare and interest of the International Union, its affiliates
and members;

(B) that the Business Manager shall use all proper and
lawful means of organizing the work coming within the territorial
and craft jurisdiction of the Local Union; and

55

(C) that for all monies collected by the Business Manager in the field, he shall give an official receipt furnished by the International Union, which he shall then turn over to the Secretary-Treasurer of the Local Union, as soon as is practicable, and obtain a receipt therefor.

The third and last source of Defendant Scott Boidi's duty of honest services (which only applies to Racketeering Act Two) to Local 88 and its members arises under the LIUNA Ethical Practices Code. The LIUNA Ethical Practices Code, which was promulgated on February 15, 1995, sets forth ethical practices applicable to every Local Union of LIUNA and officers thereof. The Ethical Practices Code specifies that:

"The Union shall ensure that its operations shall be conducted in a democratic and fair matter. Corruption, discrimination, or anti-democratic procedures shall not be permitted under and circumstances...

Union funds are held in trust for the benefit of the membership...

Nor shall any officer, representative or employee...of any Local Union accept personal profit or special advantage from any action of any officer or representative of the Union.

Any person who represents LIUNA and its members, whether elected or appointed, has a sacred trust to serve the best interests of the members and their families. Therefore, every officer and representative must avoid any outside conflicts of interest. The special fiduciary nature of the Union office requires the highest loyalty to the duties of the office.

[n]o officer or representative of the Union shall have a personal financial interest which conflicts with his/her Union duties."

Request No. 33:

Honest Services Fraud Defined

In assessing whether Defendant SCOTT BOIDI knowingly devised or knowingly participated in a scheme to defraud the members of Local 88 of his honest services, it is not sufficient that you find beyond a reasonable doubt that he simply violated the duties I just described. What the Government must prove is that the Defendant SCOTT BOIDI breached a fiduciary duty with the intent to deprive Local 88 or its members of his honest services; that he acted with an intent to deceive; and with knowledge or contemplation that the breach created reasonably foreseeable economic harm to Local 88 and its members.

An intentional violation of a duty to disclose provides the requisite deceit.  Evidence of affirmative material misrepresentations may also establish an intent to deceive.

The government contends that the proof establishes beyond a reasonable doubt that defendant SCOTT BOIDI breached his fiduciary duty to Local 88 and its members with the intent to deprive Local 88 or its members of his honest services when he agreed to accept and accepted a lap top computer and landscaping material from Tom Brennan with the intent to be influenced in his decisions regarding the admission of Robert Brennan and Jim MacLellan to membership in Local 88 and their placement on a job; when he thereafter acted to secure their membership and jobs; and when he concealed and did not disclose his receipt of these

things of value in connection with securing these positions.

With respect to proof of reasonably foreseeable economic
harm, the government contends that the evidence it presented
establishes beyond a reasonable doubt that Defendant SCOTT BOIDI
was aware that his knowing breach of fiduciary duties to Local 88
and its membership created reasonably foreseeable economic harm
to Local 88 members who were out of work at the time that
Defendant Scott Boidi made decisions regarding the admission of
Jim McClellan and Robert Brennan to membership in Local 88 and
their placement in jobs.

I also instruct you that it is not necessary for the
government to establish that anyone relied on, or suffered damage
as a consequence of, the alleged scheme or artifice to defraud.
That is because only a scheme to defraud, and no actual fraud,
must be proved to sustain a conviction.  But the government does
have the burden of proving that it was reasonably foreseeable
that the members of Local 88 might suffer some economic harm as a
result of the charged fraud scheme.

The government is not required to establish that the
defendant actually realized any gain from the scheme or that the
intended victim actually suffered any loss.  If you find that
there existed a scheme to defraud, then it is not necessary that
you find that anyone was actually defrauded, or that the
defendant reaped profits from the fraud.  Instead, you should
concentrate on whether or not there was a scheme to deprive the

members of Local 88 of honest services. However, it is not
necessary for the government to prove that the scheme succeeded,
but only that such a criminal scheme was devised and employed.

United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996)
United States v. Czubinski, 106 F.3d 1069 (1st Cir. 1997)
United States v. Sawyer, 239 F.3d 31, 41 (1st Cir. 2001)citing
United States v. Sawyer, 85 F.3d at 729.("the government must
prove two kinds of intent: that she intended to deprive the
public of her honest services and that she intended to deceive
the public")("in proving that a public official intended to
deceive the public, [that] official's intentional violation of
the duty to disclose provides the requisite 'deceit.'")(a
bribery-like corrupt intent to influence official action
necessarily is an intent to deprive the public of an official's
honest services.")

Sawyer, 239 F.3d 31 (1st Cir.) at 48 ("indeed the duty to
disclose a conflict of interest, the violation of which indicates
an intent to deceive in these circumstances")("evidence that he
intended the legislators to affirmatively misrepresent themselves
would also suffice").

U.S. v. Martin, 228 F.3d 1, 17 -18 (1st Cir. 2000)(evidence
supported honest service fraud conviction where defendant's
failure to disclose to her employer that she had communicated
confidential information to another company posed "an independent
business risk" to employer and "created reasonably foreseen
economic harm")(Noting that "courts have been hesitant to impose
federal mail and wire fraud liability upon every employee
transgression, and have required 'a failure to disclose something
which in the knowledge and contemplation of the employee poses an
independent business risk to the employer or creates a reasonable
foreseeable economic harm'")

Request No. 34:

Use of the Mails

For a mailing to be "in furtherance" of the scheme to defraud, the Government must prove beyond a reasonable doubt that the use of the mails furthered, or advanced, or carried out, in some way, the scheme or plan to defraud. The mailing, however, does not have to be an essential part of the scheme, provided it is closely related to the scheme.

It is not necessary for the government to prove that the item mailed was false or fraudulent or contained any false or fraudulent statement, representation, or promise, or contained any request for money or other thing of value. The Government must prove beyond a reasonable doubt, however, that the use of the mails furthered, or advanced, or carried out, in some way, the honest services scheme to defraud.

For purposes of this element, it is not necessary that the defendant actually mailed the material or even intended that the mails be used. It is sufficient under this element that defendant either acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen that the mails would be used.

Request No. 35:

## Proof of Mailings and Transmissions

The mailing of wire communication(s) may be proven by circumstantial evidence.  <u>United States v. Griffith</u>, 17 F.3d 865, 874 (6th Cir.), cert. denied, 115 S.Ct. 149 (1994).  "To constitute a violation of [§1341] . . ., it is not necessary to show that the defendant's actually mailed . . .anything [himself]; it is sufficient if [he] caused it to be done.

<u>Pereira v. United States</u>, 347 U.S. 1, 8 (1954) (citing 18 U.S.C. (Supp V) §2(b)).

Request No. 36:

<u>Racketeering Acts Three, Four, and Five and Counts 2, 3 & 4 :
Embezzlement of Union Assets</u>

Racketeering Acts Three, Four and Five and Counts 2, 3 and 4 charge the defendant Scott Boidi with having committed an offense in violation of Title 29, United State Code, Section 501(c). Section 501(c) of the United States Code is entitled "Fiduciary Responsibilities of Officers of Labor Organizations: Embezzlement of Assets."

Section 501(c) of Title 29 of the United States Code provides:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly,

shall be guilty of an offense against the laws of the United States.

Request No. 37:

<u>Duties of Union Officers</u>

Section 501(c) is part of Section 501 of the Labor-Management Reporting and Disclosure Act (LMRDA) which describes the duties of labor organization officials.  I will now read you the portion of Section 501(a):

"The Officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group."  Therefore, each such person has to hold the money and property of such a labor organization "solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder..."

Consequently, under the terms of Section 501(a), an officer of a labor organization has a fiduciary duty to that labor organization.  This duty, or position of trust, includes the responsibility of holding the moneys, funds, property and other assets of each organization solely for the benefit of that labor organization and its members.

<u>United States v. Rubin</u>, 591 F.2d 278, 283 (5th Cir. 1978), <u>cert. denied</u>, 444 U.S. 864 (1979); <u>United States v. Decker</u>, 304 F.2d 702, 705 (6th Cir. 1962), <u>aff'd</u>, 378 F.2d 245 (1967).

Request No. 38:
<u>Union Constitution and Bylaws</u>

A labor organization is required by law to adopt a constitution and bylaws.  A labor organization operates under its constitution and bylaws which provide the basic rules and regulations which govern its officers and other representatives in the transaction of its business.  Union officers and representatives have a duty to the union and its members to manage, invest, and expend the union's money and property in accordance with the union's constitution and bylaws and any resolutions of the governing bodies which are adopted in accordance with such constitution and bylaws.  A general resolution of a labor organization is not sufficient to rescind a specific constitutional provision requiring that body to obtain general membership approval of particular expenditures.

29 U.S.C. 431(a); 29 U.S.C. § 501(a); <u>United States v. Goad</u>, 490 F.2d 1158, 1161 (8th Cir. 1974), <u>cert. denied</u>, 417 U.S. 945

Request No. 39:

## Ownership - Union Money and Property

The members of a labor organization are the real owners of the money and property of such organizations and are entitled to a full accounting of all transactions involving such money and property.  Because union funds belong to the members, they should be expended only in furtherance of their common interest.  A union treasury should not be managed as though it were the private property of the union officers, however well-intentioned such officers might be, but as a fund governed by fiduciary standards.


H. Rep. No. 741, 86th Cong., 1st Sess. (1959) pp. 7-8, reprinted in, 1959 U.S. Code, Cong. and Adm. News. p. 2430, quoted in, United States v. Goad, 490 F.2d 1158, 1162-63 (8th Cir. 1973); see also, S.Rep. 187, 86th Cong., 1st Sess. (1959) pp. 8-9, reprinted in, 1959 U.S. Code, Cong. and Adm. News. p. 2324, quoted in, United States v. Budzanoski, 462 F.2d 443, 450 (3rd Cir. 1972).

Request No. 40:

## Purpose of Statute at Section 501(c)

Section 501(c) was designed essentially to protect the union members from the corruption, however novel, of union officials and employees.  The duty imposed on officers and employees of a labor union in regard to its money and property is broad enough to cover almost every kind of improper taking of funds or other property of the union, regardless of the manner of taking employed.  Union officers and employees must adhere to the highest standards of ethical conduct and responsibility with respect to their labor organization's property.


United States v. Sullivan, 498 F.2d 146, 147-150 (1st Cir.) cert denied, 419 U.S. 993 (1974), United States v. Busacca, 863 F.2d 433 (6th Cir. 1988), cert. denied, 490 U.S. 1005 (1989); United States v. Harmon, 339 F.2d 354, 357 (6th Cir. 1964), cert. denied, 380 U.S. 944 (1965); United States v. Colella, 360 F.2d 792, 799-800 (1st Cir.), cert. denied, 385 U.S. 829 (1966).

Request No. 41:

<u>Elements of Embezzlement of Union Assets</u>

For you to find the defendant guilty of embezzlement of union assets, you must be convinced that the government has proven each of the following four things beyond a reasonable doubt:

**<u>One</u>**: that Local 88 was a labor organization engaged in an industry affecting commerce;

**<u>Second</u>**: that the defendant was either an officer of Local 88 or was employed by Local 88 during the period when the offense occurred;

**<u>Third</u>**: that the defendant embezzled, stole, abstracted or converted to his own use or to the use of another, the monies, funds, property or other assets of Local 88; and

**<u>Fourth</u>**: that the defendant acted unlawfully, willfully and with fraudulent intent to deprive the labor organization of the use of its money, funds, properties, or other assets.

Request No. 42:

First Element: Status of Local 88 Tunnel Workers as a Labor
Organization Engaged in a Industry Affecting Commerce

As to the first element of the crime alleged in Racketeering
Acts 3, 4, 5 and Counts 2, 3 and 4, a "labor organization" is an
organization of any kind, engaged in an industry affecting
commerce in which employees participate and which exists for the
purpose, in whole or part, of dealing with employers concerning
grievances, labor disputes, wages, rates of pay, hours, or other
terms or conditions of employment.

A labor organization is engaged in an industry affecting
commerce if it is a labor organization recognized or acting as
the representative of employees of an employer or employers
engaged in an industry affecting commerce.  As used in these
instructions, the term "industry affecting commerce" means any
activity, business, or industry in commerce or in which a labor
dispute would hinder or obstruct commerce or the free flow of
commerce.  The term "commerce" means trade, traffic, commerce,
transportation, transmission, or communication among the several
States or between any State and any place outside thereof.

Evidence has been presented that Local 88 represented
employees of employers who were engaged in the tunnelworkers
industry and whose business operations included the purchase of
products or services created outside the state of Massachusetts
and the sale of products or services which were used by persons

68

outside the state of Massachusetts.  Evidence has also been

presented that Local 88 represented or sought to represent

employees as members in their dealings with such employers

concerning hours, wages, and working conditions.  If you find

such evidence to be true beyond a reasonable doubt, then Local 88

is deemed to be a labor organization engaged in an industry

affecting commerce.


United States v. Stubin, 446 F.2d 457, 461-462 (3rd Cir. 1971);
Lawson v. United States, 300 F.2d 252, 253 (10th Cir. 1962).

Request No. 43:

### Second Element: Status as an Officer or Person Employed by a Labor Organization

With respect to the second element, the term "officer" means any constitutional officer, or any person who is authorized to perform the functions of president or vice president or secretary or treasurer or other executive functions of a labor organization, or any member of the labor organization's executive board or similar governing body.  The term "officer" includes any person who in fact has executive or policy-making authority or responsibility, even though he may not occupy a position identified as an officer under the constitution and bylaws of the union.  Authorization to perform such functions need not be contained in any provision of the union constitution or bylaws or other document, but may be inferred from actual practices or conduct.

An "executive function" is one which involves the exercise of independent judgment.  As a general rule, a person is regarded as being authorized to perform the functions of president if he is the chief or principal executive officer of the labor organization.  A member of any group, committee, or board which is vested with broad governing or policy making authority is regarded as a member of an "executive board or similar governing body."  The name or title that the labor organization assigns to the position is not controlling.

A person is "employed" by a labor organization for purposes of Section 501(c) if he is employed, directly or indirectly, by the labor organization in connection with its money or property and would include a person, who by virtue of his office with or employment by the union, had access to labor organization funds while performing services for the union.  It is not necessary that the person receive any wages or payment for the services or functions he performs or that he perform such services under the direct supervision of another person.

29 U.S.C. § 402(n); <u>NLRB v. Hearst Publications, Inc</u>., 322 U.S. 111, 124 (1944); <u>United States v. Capanegro</u>, 576 F.2d 973, 976-980 and note 6 (2d Cir.), <u>cert. denied</u>, 439 U.S. 928 (1978); <u>United States v. Sullivan</u>, 498 F.2d 146, 148-49 (1st Cir.), <u>cert. denied</u>, 419 U.S. 993 (1974); <u>United States v. Ferrara</u>, 451 F.2d 91, 94 at note 2 (2d Cir., 1971), <u>cert. denied</u>, 405 U.S. 1032 (1972); <u>United States v. Ford</u>, 462 F.2 199, 201 (7th Cir. 1972) (legislative history of § 501(c) indicates that the statute applies to "any person having any direct or indirect functions in connection with the money or property of a labor organization", <u>quoting</u>, 104 Cong.Rec. 1937, 85th Cong., 2nd Sess. (1958).

Request No. 44:

Third Element: Embezzlement, Steal, Abstract, Convert - Defined

In regard to the third element used in Section 501(c), the term "embezzle" means to willfully take, or convert to one's own use or the use of another, the moneys, funds, property or other assets of a labor organization, which came into the alleged wrongdoer's possession lawfully by reason of his office, employment or position of trust.  The term includes the fraudulent appropriate of the labor organization's property by a person to whom such property has been entrusted subject to the fiduciary duty to hold such property solely for the benefit of the labor organization and its members and to manage it in accordance with the labor organization's constitution, by-laws, and applicable resolutions.

As used in this Section, the term "steal" means any dishonest transaction whereby one person obtains property which rightfully belonged to another, and deprives the owner of the rights and benefits of ownership.  To "steal" means to take away from some one in lawful possession of property without right and with intent to keep wrongfully and to deprive the owner of the rights and benefits of ownership.

"Abstracts" as used in Section 501(c) means to take or withdraw from the possession and control of a labor organization monies or funds belonging to it without lawful right or authority to do so.

72

The term "converts" as used in Section 501(c) means to apply the moneys or property of a labor organization for the use, benefit, or profit of a person not lawfully entitle thereto. Conversion may include the misuse in an unauthorized manner or to an unauthorized extent property which has been placed in one's custody for a limited use.  But, conversion does not require that the moneys or property was held by the alleged converter in some fiduciary or trustee capacity.

The phrase "to his own use or the use of another" means simply "not to the use of the entruster," that is, Local 88, the true owner of the money.  It does not require the government to prove that any of the amounts of money charged in the Indictment were actually spent for the personal use, benefit or advantage of the defendant.  Indeed, while the government has the burden of establishing beyond a reasonable doubt that the defendant took or converted the money of Local 88 to his use or the use of another as charged, it need not prove what a defendant actually did with the money after the taking.  A defendant's disposition of the property of another, without right, as if it were his own property, is a conversion "to his own use."

Therefore, you can see, the statutory language of Section 501(c), "embezzle, steals, or unlawfully and willfully abstracts or converts" covers virtually every sort of taking that injures the rights of a labor organization to the beneficial use of its funds.  However, in order to establish this element, the

73

government is not required to prove that all four means, which I have just defined for you, were actually employed by the defendant. Rather, the government's proof need only establish beyond a reasonable doubt that the defendant either embezzles, <u>or</u> stole, <u>or</u> unlawfully and willfully abstracted, <u>or</u> unlawfully and willfully converted the money or property of Local 88 to his own use or the use of another, as alleged.

<u>Morrissette v. United States</u>, 342 U.S. 246, 271-273 (1952); <u>United States v. Northway</u>, 120 U.S. 327, 334 (1887); <u>United States v. Busacca</u>, 863 F.2d 433 (6th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1005 (1989); <u>United States v. Stockton</u>, 788 F.2d 210, 217-218 (4th Cir.), <u>cert. denied</u>, 479 U.S. 840 (1986); <u>United States v. Santiago</u>, 528 F.2d 1130, 1133 (2d Cir. 1976), <u>cert. denied</u>, 425 U.S. 972 (1976); <u>Colella v. United States</u>, 360 F.2d 792, 799 (1st Cir.), <u>cert. denied</u>, 385 U.S. 829 (1966); <u>Doyle v. United States</u>, 318 F.2d 419, 423 (8th Cir. 1963); <u>United States v. Nell</u>, 526 F.2d 1223 (5th Cir. 1976); <u>United States v. Harmon</u>, 339 F.2d 354, 357 (6th Cir. 1964), <u>cert. denied</u>, 380 U.S. 944 (1965).

Request No. 45:

<u>Fourth Element: Knowingly, Willfully, and Unlawfully - Defined</u>

The government must also prove that the defendant acted knowingly, willfully, unlawfully, and with fraudulent intent to deprive Local 88 of the use of its moneys, funds, property or other assets.

The term "knowingly," as used in these instructions to describe the alleged state of mind of the defendant, means that he was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake or accident.

You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly. No person can intentionally avoid knowledge by closing his eyes to or ignoring facts which are important and material to his conduct. Thus, a defendant may not escape responsibility for his actions by consciously attempting to avoid knowledge.

The term "unlawfully" means without legal justification, without authority of law, or contrary to law.

For an act to be performed or omitted "willfully," it must be done with the specific intent to do something the law forbids or with bad purpose to disobey or disregard the law, that is, with the fraudulent intent.

Devitt and Blackmar, <u>Federal Jury Practice and Instructions</u>, 4th Ed. 1992, § 17.04.

75

Request No. 46:

Proof of Fraudulent Intent Inferred from Evidence of all
Surrounding Circumstances

In making a determination of whether the defendant had the
requisite fraudulent intent you may consider whether or not the
monies which were disbursed to the defendant were authorized and
whether or not the defendant had a good faith belief that such
expenditures were authorized or would be authorized, and whether
or not the defendant had a good faith belief that such
expenditures benefitted Local 88.  A "good faith belief," as the
term is commonly used, means a belief or state of mind denoting
honesty of purpose and freedom from intention to defraud.
Generally speaking, it means being faithful to one's duty or
obligation.

Both authorization and benefit to the union are factors,
among all the surrounding circumstances, from which you may infer
whether the defendant acted with fraudulent intent to deprive the
union of the use of its money and property.  That is, fraudulent
intent may be proven by circumstantial evidence.  Indeed, it is
seldom that such intent can be proved by any means other than
circumstantial evidence because, although witnesses may see and
hear, and thus be able to come into court and give direct
evidence of what a defendant has said or done there, of course,
there can be no eye-witness account of the state of mind with
which the acts were done or omitted.  On the other hand, what a

76

defendant does, or fails to do, may indicate intent, or lack of intent, to commit the offenses charged in the Indictment.  In determining the issue of fraudulent intent, you may consider any statements made, and acts done or not done by the defendant, as well as all the facts and circumstances in evidence which surround or attend the defendant's actions or statements, or which may aid you in determining the defendant's state of mind.

Transcript of Jury Instructions as given in <u>United States v. Ellison M. Stockton</u>, No. M-84-00074 (D.Md. May 4, 1984) pp. 22-23, <u>jury instructions approved</u>, <u>United States v. Stockton</u>, 788 F.2d 210 (4th Cir.), <u>cert. denied</u>, 479 U.S. 840 (1986); <u>United States v. Oliva</u>, 46 F.3d 320, 324 (3rd Cir. 1989); <u>United States v. Floyd</u>, 882 F.2d 235, 240 (7th Cir. 1989); <u>United State v. Welch</u>, 725 F.2d 1113, 1119 (8th Cir. 1984), <u>citing</u>, <u>Morrissette v. United States</u>, 342 U.S. 246, 275-276 (1951); <u>United States v. Thordarson</u>, 646 F.2d 1323, 1336 (9th Cir), <u>cert. denied</u>, 454 U.S. 1055 (1981); <u>United States v. Butler</u>, 954 F.2d 114, 118 (7th Cir. 1989), <u>citing</u>, <u>Floyd</u>, <u>supra</u>; <u>United States v. Bane</u>, 438 F.Supp. 1286, 1295 (E.D. Mich. 1977), <u>aff'd</u>, 583 F.2d 832 (6th Cir. 1978), <u>cert. denied</u>, 439 U.S. 1127 (1979).

Request No. 47:

<u>Proof of Fraudulent Intent - Absence of Good Faith Belief in
Authorization</u>

If you find that the expenditure of money and property alleged in
Racketeering Acts Three, Four and Five and Counts 2, 3 and 4 of
the Indictment were unauthorized and that the defendant knew the
expenditure was unauthorized, then you may consider this as
evidence of the defendant's fraudulent intent to deprive Local 88
of the money and property alleged in Racketeering Acts 3, 4 and 5
and Counts 2, 3 and 4 of the Indictment.

An unauthorized expenditure is one which is done without the
permission of the union and its members as a whole even if it is
approved by a superior union official or group of officials.
That is, permission of the union is lacking if the expenditure is
outside the scope of the fiduciary trust placed in the defendant
by the union as a whole and outside the scope of the powers of
any superior union official or group of officials on whose
permission the defendant has sought to rely.

Unauthorized expenditures would include not only those
initially lacking any authorization, but also those expenditures
for which authorization was obtained by deceit or fraud and
expenditures which were not being expended as authorized.

In determining whether or not the payments alleged in each
of the embezzlement counts contained in the indictment were
authorized or unauthorized, you may consider, among other

78

evidence, the following:

     A.   Provisions of the L.I.U.N.A. Constitution and Bylaws relating to the authorization and approval of Local 88 payments in particular or expenditures of the union's funds generally and any evidence indicating the defendant's awareness of those provisions;

     B.   Evidence that the defendant concealed or failed to disclose the amount, nature, purpose or supporting records concerning the Local 88 payments in the face of a known duty to disclose and not conceal such information;

     C.   Evidence indicating a defendant's domination and control exercised over Local 88.

     Although no labor organization officer or employee is presumed to know the provisions of his organization's constitution and bylaws, knowledge of the unauthorized nature of the Local 88 payments charged in the indictments may be inferred from the nature of the defendant's position, the length of time he held this or comparable position of authority within the labor organization, and the frequency and duration of his dealings with the rules and procedures of Local 88 as indicated by the testimony of witnesses and/or reflected in the minutes of meetings which the defendant attended and which are in evidence.


United States v. Butler, 954 F.2d 114, 119 (2nd Cir. 1992); United States v. Long, 952 F.2d 1520, 1526-27 (8th Cir. 1991), aff'd on remand sub. nom. United States v. Cantrell, 999 F.2d 1290 (8th Cir. 1993); United States v. Stockton, 788 F.2d 210,

217-218 (4th Cir.), <u>cert. denied</u>, 479 U.S. 840 (1986); <u>United States v. Stockton</u>, 788 F.2d 210 (4th Cir.), <u>cert. denied</u>, 479 U.S. 840 (1986); <u>United States v. Goad</u>, 490 F.2d 1158, 1160-61 (8th Cir.), <u>cert. denied</u>, 417 U.S. 945 (1974); <u>United States v. Lavergne</u>, 805 F.2d 519, 519 and 523 (5th Cir. 1986); <u>United States v. Durnin</u>, 632 F.2d 1297, 1300-1302 (5th Cir. 1980); <u>United States v. Nell</u>, F.2d 146, 151 (1st Cir.), <u>cert. denied</u>, 419 U.S. 993 (1974); <u>United States v. Silverman</u>, 430 F.2d 106, 123 (2nd Cir.), <u>modified on other grounds</u>, 439 F.2d 1198 (2nd Cir. 1970), <u>cert. denied</u>, 402 U.S. 953 (1971).

Request No. 48:

<u>Proof of Fraudulent Intent - Absence of Good Faith Belief in
Union Benefit</u>

In the course of determining whether or not the defendant
acted with fraudulent intent, you may also consider whether or
not the defendant lacked a good faith belief that the expenditure
of the amounts alleged in the embezzlement counts of the
indictment benefitted Local 88.  For this purpose, you may
consider whether or not the expenditures actually benefitted the
legitimate interests of Local 88 and the members of the union as
a whole.  However, the presence of some fortuitous beneficial
effect to the union of a particular expenditure would not absolve
the defendant of violating Section 501(c) with respect to that
expenditure if you conclude from all the surrounding
circumstances that he lacked a good faith belief that the
expenditure would benefit the legitimate interests of Local 88
and the membership as a whole.  A benefit to the union occurs
when some legitimate purpose of the union is advanced.  A benefit
to the union does <u>not</u> occur if the expenditure's benefit inured
solely or primarily to an individual or group of individuals.

With regard to expenditures that are or are not beneficial
to the union, some expenditures are clearly in furtherance of the
interests of the union while others are so clearly not in
furtherance of the union's purpose that such a claim is scarcely
credible. Others may depend on the facts of a particular case.

81

In determining whether there was or was not a "union benefit" in this case, you should examine the purposes and results of the various charged expenditures and use your best judgment to decide if there reasonably was or was not any gain for the members of Local 88. Furthermore, in reaching your decision in this regard, you should again consider the degree to which the defendant dominated or controlled Local 88.


United States v. Floyd, 882 F.2d 235 (7th Cir. 1989); United States v. Welch, 728 F.2d 1113, 1117-20 (8th Cir. 1984); United States v. Gibson, 675 F.2d 825, 828-29 (6th Cir. 1982); United States v. Silva, 517 F. Supp. 727, 739 (D.R.I. 1980), aff'd, 644 F.2d 68 (1st Cir. 1981); United States v. Bane, 583 F.2d 832, 834-837 and footnotes 8 and 10 (6th Cir. 1978), cert. denied, 439 U.S. 1127, (1979); United States v. Ottley, 509 F.2d 667 (2nd Cir. 1975); United States v. Dibrizzi, 393 F.2d 642 (2nd Cir. 1968); United States v. Colella, 360 F.2d 792, 804 (1st Cir.), cert. denied, 385 U.S. 829 (1966).

Request No. 49:

Authorization and Lack of Union Benefit as Evidentiary Factors in
Determining Fraudulent Intent

In determining whether the defendant acted with fraudulent
intent to deprive a local union of the use of its funds, you may
find that the defendant both knew of the unauthorized nature of
the particular expenditure and lacked a good faith belief in the
expenditure's benefit to the union and its members as a whole. In
such case, you may conclude that the defendant acted with
fraudulent intent to deprive the union of the use of its money
and property.

However, I instruct you that it is not necessary that you
find that the defendant was both aware of an expenditure's
unauthorized nature and that he lacked a good faith belief in the
expenditure's benefit to the union and its members as a whole.
That is, you may find that the defendant acted with fraudulent
intent if you conclude from all the surrounding circumstances
that the defendant either knew of a particular expenditure's
unauthorized nature or that he lacked a good faith belief in the
expenditure's benefit to the union and its members as a whole.
In other words, neither knowledge of nor good faith belief in
authorization, on the one hand, nor a good faith belief in union
benefit, on the other hand, is a complete defense to fraudulent
intent.  For example, if you find that an expenditure was
authorized and that the defendant was aware of this

83

authorization, then you may still find from all the surrounding

circumstances the defendant acted with fraudulent intent to

deprive the union of the use of its money and funds if he lacked

a good faith belief that the primary purpose of the expenditure

was to further the legitimate interests of the union and its

members as a whole.


United States v. Oliva, 46 F.3d 320, 324 (3rd Cir. 1995); United
States v. Butler, 954 F.2d 114, 118-119 (2nd Cir. 1992); United
States v. Floyd, 882 F.2d 235, 240-241 (7th Cir. 1989); United
States v. Welch, 728 F.2d 1113, 1117-20 (8th Cir. 1984); United
States v. Gibson, 675 F.2d 825, 828-29 (6th Cir. 1982); United
States v. Thordarson, 646 F.2d 1323 (9th Cir.), cert. denied, 454
U.S. 1055 (1981); United States v. Boyle, 482F.2d 755, 765 (D.C.
Cir.), cert. denied, 414 U.S. 1076 (1973).

Request No. 50:

## Valid Authorization and Ratification Versus Invalid Exculpatory Resolution

The union membership and governing bodies of the union can not authorize or ratify an expenditure where its nature, purpose, amount, supporting documentation and other pertinent details have been withheld from them.

Section 501(a) prohibits general exculpatory resolutions. An "exculpatory resolution" is one which tends to clear or excuse one of alleged fault, duty or breach of responsibility. "Ratification" is the affirmance of a prior act whereby the act is given effect as if originally authorized. Thus, if a purported authorization was obtained subsequent to the actual expenditure, you must determine whether there was full disclosure of all the facts to the body which issued the purported ratification, and whether it was the result of the domination and control exercised over the union and its governing body by the person or persons seeking the ratification.

If you find that there has not been a good faith disclosure of any or all of the pertinent facts concerning an expenditure in the face of a known duty to disclose or not to conceal or that an alleged ratification was obtained as a result of the defendant's domination and control of the ratifying body, then you may reject the purported ratification as an invalid exculpatory resolution and find that the expenditure was unauthorized.

85

29 U.S.C. § 501(a); <u>United States v. Butler</u>, 954 F.2d 114, 119
(2nd Cir. 1992); <u>United States v. Laverone</u>, 805 F.2d 517, 523 (5th
Cir. 1986); <u>United States v. Durnin</u>, 632 F.2d 1297, 1302 and note
9 (5th Cir. 1980); <u>United States v. Dixon</u>, 609 F.2d 827, 829 note
3 (5th Cir. 1980); <u>United States v. Ottley</u>, 509 F.2d 667, 671 (2nd
Cir. 1975).

Request No. 51:

## Return of Misappropriated Fund

I also instruct you that returning misappropriated funds does not mitigate the crime of embezzlement.  Embezzlement need not involve an intent to deprive permanently.  The relevant criminal action in embezzlement is fraudulent appropriation.  Moreover, an "intent to return" money or property is not a defense to a charge of embezzlement.  It is irrelevant to a charge of embezzlement that the embezzler intended to return the money he embezzled - or even that he did return it.  It is uniformly held that the intent to restore the equivalent property is no defense to embezzlement.


United States v. Walker, 234 F.3d 780 (1st Cir. 2000); United States v. Young, 955 F.2d 99 (1st Cir. 1992) citing United States v. Anoelos, 763 F.2d 859 at 861 (7th Cir. 1985); 2 LaFave & Israel, Substantive Criminal Law §8.6(f) (3), at 380; United States v. Rubin, 591 F.2d 278, 283 (5th Cir. 1978), cert. denied, 444 U.S. 864 (1979); United States v. Decker, 304 F.2d 702, 705 (6th Cir. 1962), aff'd, 378 F.2d 245 (1967).

Request No. 52:

<u>Approximate Amount – Explained</u>

Racketeering Acts Three, Four, and Five and Counts 2, 3, and 4 of the Indictment allege that an approximate amount of money was involved in each of the crimes charged.

It is not necessary for the government to prove the exact or approximate amount of money was precise amount of money alleged in the Indictment.

1 Devitt and Blackmar, <u>Federal Jury Practice and Instructions</u> (4th Edition 1992), § 13.06

Request No. 53:

Racketeering Act Six and Count 5:
Conspiracy to Posses with Intent to Distribute Cocaine - Elements
[21 U.S.C. §846]

Racketeering Act Six and Count 5 charge the defendant Scott
Boidi with conspiracy to possess with intent to distribute more
than five hundred grams of a schedule II controlled substance,
specifically cocaine.  It is against federal law to conspire with
someone to commit this crime.

For you to find the defendant guilty of conspiracy, you must
be convinced that the government has proven both of the following
things beyond a reasonable doubt:

**One**: that the agreement specified in the indictment, and not
some other agreement or agreements, existed between the defendant
and at least one other person to distribute cocaine; and

**Two**: that the defendant willfully joined in that agreement.

A conspiracy is an agreement, spoken or unspoken.  The
conspiracy does not have to be a formal agreement or plan in
which everyone involved sat down together and worked out all the
details.  But the government must prove beyond a reasonable doubt
that those who were involved shared a general understanding about
the crime.  Mere similarity of conduct among various people, or
the fact that they may have associated with each other or
discussed common aims and interests does not necessarily
establish proof of the existence of a conspiracy, but you may

89

consider such factors.

To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed - that is to say, with bad purpose, either to disobey or disregard the law - not to act by ignorance, accident or mistake. The government must prove two types of intent beyond a reasonable doubt before any of the defendants can be said to have willfully joined the conspiracy: an intent to agree and an intent, whether reasonable or not, that the underlying crime be committed. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors. Intent may be inferred from the surrounding circumstances.

Proof that the defendant willfully joined in the agreement must be based upon evidence of his own words or actions. For the defendant, you need not find that he agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator or that he participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that the defendant knew the essential features and general aims of the venture. Even if the defendant was not part of the agreement at the very start, he can be found guilty of conspiracy if the government proves that he willfully joined the agreement later. On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not

thereby become a conspirator.

The government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the crime to distribute cocaine.

United States v. Rivera-Santiago, 872 F.2d 1073, 1078-80 (1st Cir.), cert. denied, 492 U.S. 910 (1989), as modified by United States v. Piper, 35 F.3d 611, 614-15 (1st Cir. 1994), cert. denied, 513 U.S. 1158 (1995). Overt act is not required in a drug conspiracy under 21 U.S.C. § 846. See United States v. Shabani, 513 U.S. 10 (1994). Pattern Jury Instructions: First Circuit, Criminal Cases Committee on Pattern Criminal Jury Instructions - First Circuit 1998 Edition.

Request No. 54:

<u>Conspiracy to Possess with Intent to Distribute – Drug Quantity</u>

Defendant Scott Boidi is accused in Racketeering Act Six and Count 5 of the indictment with conspiracy to possess with intent to distribute more than five hundred grams of cocaine.

For you to find the defendant guilty of this charge, you must find beyond a reasonable doubt that:

**One**: the defendant participated in a conspiracy, as I have just described it to you, and

**Two**: that the conspiracy involved more than five hundred grams of cocaine.

You need not determine the precise amount of drugs involved in the conspiracy.  To find the defendant guilty of these charges, you need only determine, beyond a reasonable doubt, that the conspiracy involved more than five hundred grams of cocaine.

<u>Derman v. United States</u>, 298 F.3d 34, 42 (1st Cir.), cert. Denied, 71 USLW 3245 (2002); <u>Edwards v. United States</u>, 523 U.S. 511, 514 (1998); <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

Request No. 55:

<u>Cocaine Conspiracy Charge - Elements</u>

The government alleges that over 500 grams of illegal drugs, namely cocaine, were possessed with the intent to distribute by defendant Scott Boidi.  This narcotics charge falls under the federal statute, 21 U.S.C. §846, which makes it unlawful for any person to attempt or conspire to commit any offense defined in this subchapter.  The crime of possessing with intent to distribute certain controlled substances, including cocaine, falls within this subchapter, specifically 21 U.S.C. §841 (b)91)(B)(ii)(II).  The following instructions are applicable to the cocaine charge I just described.

For you to find the defendant guilty of possession with intent to distribute cocaine, you must find that the government has proven each of the following elements beyond a reasonable doubt:

**First**:  That on or about the various dates charged in the Indictment, the defendant possessed cocaine, either solely or jointly, and either actually or constructively, or aided, abetted, caused, or commanded such conduct;

**Second**:  That he did so with a specific intent to distribute the cocaine over which he had actual or constructive, and sole or joint, possession; and

**Third**:  That he did so knowingly and intentionally.

I instruct you as a matter of law that cocaine is a Schedule

93

II controlled substance, as that phrase is used in the

Indictment.

First Circuit Pattern Jury Instructions (Criminal Cases),
Committee on Pattern Criminal Jury Instruction First Circuit
(West 1998) §4.22 (1998); <u>United States v. Kairouz</u>, 751 F.2d 467
(1st Cir. 1985); <u>United States v. Latham</u>, 874 F.2d 852, 863 (1st
Cir. 1989); <u>see also United States v. Akinola</u>, 985 F.2d 1105,
1109 (1st Cir. 1993); <u>United States v. Morales-Cartagena</u>, 987
F.2d 849, 852 (1st Cir. 1993); 21 U.S.C. §812(a)(4).

Request No. 56:

<u>Possession</u>

The first element the government must prove for the drug charge is that the defendant Scott Boidi knowingly possessed a quantity of cocaine.  The term "possess" means to exercise authority, dominion, or control over something.  It is not necessarily the same as legal ownership.  The law recognizes different kinds of possession, including actual possession and constructive possession.  A person who has direct physical control of something on or around his person is in actual possession of it.  That is, a person who physically holds an object or has it on his person is in actual possession of the object.

A person who is not in actual possession, but who knowingly has both the power and the intention to exercise control over something, is in constructive possession of it.  That is, a person who places or stores an object in a location over which he has the ability to control, and who also intends to exercise control over that object, is in constructive possession of that object.  The government need not prove that the defendant had exclusive control over the area where the object was placed or stored.  The law recognizes no distinction between actual and constructive possession; either form of possession is sufficient to satisfy the second element of this crime.

95

Possession includes both sole and joint possession.  The defendant need not have exclusive possession of an item for you to determine that he is in possession of it.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Again, the law recognizes no distinction between sole and joint possession; either form of possession is sufficient to satisfy the second element of this crime.

The element of possession is proved if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others, of the charged cocaine.  It is not necessary for the government to prove ownership of the cocaine for you to find the defendant possessed it.

First Circuit Pattern Jury Instructions (Criminal Cases), Committee on Pattern Criminal Jury Instructions First Circuit (West 1998) §4.06; United States v. Zavala Maldonado, 23 F.3d 4, 7-8 (1st Cir. 1994); United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992); United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997); United States v. Meade, 110 F.3d 190, 202-03 (1st Cir. 1997); United States v. Rogers, 41 F.3d 25, 29 (1st Cir. 1994); United States v. Ladd, 877 F.2d 1083, 1087-88 (1st Cir. 1989); 1A Kevin F. O'Malley et al., Federal Jury Practice and Instructions, §16.05 (5th ed. 2000); 2 Leonard B. Sand et al., Modern Federal Jury Instructions, No. 35-49 (1999).

Request No. 57:

<u>Knowledge</u>

The government must also establish that the defendant was in knowing possession of cocaine.  An object is possessed knowingly if it is possessed voluntarily and intentionally, not because of mistake or accident.

This does not mean that the government must show that the defendant knew he was violating the law or intended to violate the law by possessing cocaine.  To satisfy this requirement, the government only needs to prove that the defendant knew he was in possession of the charged cocaine.

First Circuit Pattern Jury Instructions (Criminal Cases), Committee on Pattern Criminal Jury Instructions First Circuit (West 1998) §4.06; <u>United States v. Booth</u>, 111 F.3d 1, 2 (1st Cir. 1997); <u>United States v. Tracy</u>, 36 F.3d 187, 194-95 (1st Cir. 1994); <u>United States v. Field</u>, 39 F.3d 15, 17 (1st Cir. 1994); 1A Kevin F. O'Malley <u>et al.</u>, <u>Federal Jury Practice and Instructions</u>, §17.04 (5th ed. 2000).

Request No. 58:

<u>Intent to Distribute</u>

Intent to distribute is typically, but not always, established through circumstantial evidence.  In determining whether the defendant intended to distribute cocaine, you may consider all the surrounding circumstances.

It is not necessary for you to be convinced that the defendant actually delivered a prohibited drug to someone else or that he made any money out of any such delivery.  It is enough for the government to prove, beyond a reasonable doubt, that he possessed (as I have defined that term) a substance that he knew was a prohibited drug, and that he intended to transfer it (or some of it) to someone else, with or without any financial interest in the transaction.

A person's intent may be inferred from the surrounding circumstances.  Intent to distribute may, for example, be inferred from a quantity of drugs larger than needed for personal use or from the manner in which it is packaged.  In other words, if you find these circumstances present then you may infer that the defendant intended to distribute any substance you find he knowingly possessed.  The law does not require you to draw such an inference, but you may draw it.

98

First Circuit Pattern Jury Instruction (Criminal) Inst. 4.22 (1998); <u>United States v. Echeverri</u>, 982 F.2d 675, 678-79 (1st Cir. 1993)(considering layout of defendant's apartment, amount of cocaine found, and the presence of a scale and a ledger as corroborative of intent to distribute); <u>United States v. Latham</u>, 874 F.2d 852, 863 (1st Cir. 1989); <u>see</u> <u>also</u> <u>United States v. Akinola</u>, 985 F.2d 1105, 1109 (1st Cir. 1993); <u>United States v. Morales-Cartagena</u>, 987 F.2d 849, 852 (1st Cir. 1993).

Request No. 59:

Acts and Declarations of Co-conspirators

I have admitted into evidence certain acts and statements of various individuals because these acts and statements are alleged to have been committed during the course and in furtherance of the conspiracy.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy are deemed under the law to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions. This is so even if the acts or statements in question were done or made in the absence of the defendant and without his knowledge.

However, before you consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme.

100

If the acts were done or the statements made by someone whom you
do not find to have been a member of the conspiracy or if they
were not done or said in furtherance of the conspiracy, they may
not be considered by you as evidence against the defendant.

United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir.
1977).

L.B. Sand, Modern Federal Jury Instructions: Criminal, §19-9
(1990); United States v. Angiulo, 847 F. 2d 956, 969 (1st Cir.
1988) ("As long as it is shown that a party, having joined a
conspiracy, is aware of the conspiracy's features and general
aims, statements pertaining to the details of plans to further
the conspiracy can be admitted against the party even if the
party does not have specific knowledge of the acts spoken of.").
Devitt and Blackmar, Federal Jury Practice and Instructions,
§§14.13 (3d ed. 1977).

Request No. 60:

Racketeering Act Seven and Count 6: Use of Communication Facility

Racketeering Act Seven and Count 6 charge the defendant Scott Boidi with knowingly or intentionally using a communication facility, namely a cellular telephone, to facilitate the commission of a narcotics felony.  Title 21, United States Code, Section 843 (b), makes it a crime for anyone knowingly to use a communication facility to commit a controlled substance offense. For you to find the defendant guilty of using a communication facility to facilitate the commission of a narcotics felony, you must be convinced that the government has proven each of the following two things beyond a reasonable doubt:

**One**: that on or about the date charged the defendant knowingly used a "communication facility" as charged;

**Two**: that the defendant used the "communication facility" with the intent to commit the offense of conspiracy to possess with intent to distribute a controlled substance, as that offense has been defined in these instructions.

The term "communication facility" includes mail, telephone, wire, radio, and all other means of communication.

United States v. Mankins, 135 F.3d 946, 949 (5th Cir. 1998).

102

Request No. 61:

<u>Racketeering Act Eight and Count 9: Witness Tampering</u>

Racketeering Act Eight and Count Nine charges the defendant Scott Boidi with witness tampering under Title 18, United States Code, Section 1512 (b)(1).

For you to find the defendant guilty of witness tampering you must find beyond a reasonable doubt that:

**One**: That the defendant used or attempted to use corrupt persuasion or misleading conduct; and

**Two**: That the defendant acted knowingly and with intent to influence the testimony of a witness, namely, Lynne Demita, with respect to an official proceeding.

Section 1515(a)(1)(A) of Title 18, United States Code defines "official proceeding" to include a proceeding before the Grand Jury.  Under 1512(f)(1), "an official proceeding need not be pending or about to be instituted at the time of the offense."

To "act with intent to influence the testimony of a witness" means to act for the purpose of getting the witness to change, color, or shade his or her testimony in some way, but it is not necessary for the government to prove that the witness's testimony was in fact, changed in any way.

To "corruptly persuade" means that the defendant's act was done voluntarily and intentionally to bring about false or misleading testimony with the hope or expectation of some benefit to oneself or another person.  It is not necessary to show that

103

the defendant was successful in achieving the forbidden

objective, only that the defendant corruptly tried to achieve it

in a manner which he knew was likely to influence, obstruct or

impede the administration of justice as to the natural and

probable effect on the defendant's actions. (18 U.S.C. §1503)


United States v. Gonzalez, 922 F.2d 1044, 1055 (2nd Cir), cert.
denied, 502 U.S. 1014 (1991); see also United States v. Kelley,
36 F.3d 1118, 1128 (D.C. Cir. 1994); United States v. Shively,
927 F.2d 804, 810-13 (5th Cir.), cert. denied, 111 S. Ct. 2806
(1991); United States v. Gabriel, 125 F. 3d 89, 102 (2nd Cir.
1997) accord United States v. Rodolitz, 786 F.2d 77, 81-82 (2nd
Cir. 1986); United States v. De La Rosa, 171 F.3d 215, 221-22
(5th Cir. 1999);

Request No. 62:

Carrying A Firearm - 18 U.S.C. §924(c)

I have now instructed you completely on the RICO count and all of the racketeering acts, as well as on all substantive counts that mirror, or are the same as racketeering acts. I am now going to instruct you on the remaining substantive charges that are not also charged as racketeering acts.

Count Seven charges the defendant Scott Boidi with carrying a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely conspiracy to possess cocaine with intent to distribute. The offense of carrying a firearm is "knowingly using or carrying a 9 millimeter handgun during and in relation to a drug trafficking crime" and is a violation of Title 18, U.S.C. Section 924(c)(1)(A).

The offense of carrying a firearm states in relevant part:

> To "carry" a firearm during and in relation to a crime means to move or transport the firearm on one's person or in a vehicle or container during and in relation to the crime. It need not be immediately accessible. To "use" a firearm during and in relation to a crime means to employ the firearm actively, such as to brandish, display, barter, strike with, fire or attempt to fire it, or even to refer to it in a way calculated to affect the underlying crime. The firearm must have played a role in the crime or must have been intended by the defendant to play a role in the crime. That need not have been its sole purpose, however.

105

First Circuit Criminal Pattern Jury Instructions ("Pattern Instructions") §4.07 (1997).

In order to meet its burden of proof for the crime of using or carrying a firearm during and in relation to a drug trafficking crime, the government must prove the following two essential elements beyond a reasonable doubt:

**First**:  That the defendant committed the commission of a drug trafficking crime as charged in Count Five and/or Racketeering Act Six of the Indictment; and

**Second**:  That during and in relation to the commission of that particular crime, the defendant knowingly used or carried a firearm.

I previously instructed you on the elements of the "drug trafficking crime" when I instructed you on Racketeering Act Six and Count 5.

To find the defendant guilty of committing this crime, you must find either that he knowingly used a firearm or that he knowingly carried a firearm.  You do not need to find both.

The word "knowingly" means that an act was done voluntarily and intentionally, not because of mistake or accident.

To "carry" a firearm means to move or transport the firearm on one's person or in a vehicle or container.  It need not be immediately accessible.  To "use" a firearm means to employ the firearm actively, such as to brandish, display, barter, strike with, fire or attempt to fire it, or even to refer to it in a way

calculated to affect the underlying crime.

You must also find that the firearm was used or carried during and in relation to the charged crime of drug trafficking. "During" means the time period of the crime of drug trafficking. "In relation to" requires that there be a connection, or a nexus, between the firearm and the crime of drug trafficking. It is not sufficient that a firearm was merely present or available during a crime of drug trafficking. The firearm must have played a role in the crime of drug trafficking or must have been intended by the defendant to play a role in the crime. That need not have been its sole purpose, however.

The term "firearm" means any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, any firearm muffler or firearm silencer, or any destructive device. The term "firearm" includes actual guns, including pistols, revolvers, and rifles.


2 Devitt, Blackmar & O'Malley, <u>Federal Jury Practice and (Instructions Cases)</u> §36.18; <u>First Circuit Pattern Jury Instructions (Criminal Cases)</u>, Committee on Pattern Criminal Jury Instructions First Circuit (West 1998), §4.07; 18 U.S.C. §924(c)(3); 2 Devitt, Blackmar & O'Malley, <u>Federal Jury Practice and Instructions</u>, §36.19; <u>United States v. Shea</u>, 150 F.3d 44 (1st Cir. 1998); <u>see</u> 2 Devitt, Blackmar & O'Malley, <u>Federal Jury Practice and Instructions</u>, §36.20; <u>United States v. Wilkinson</u>, 926 F.2d 22, 25-6 (1st Cir. 1991); <u>United States v. Hadfield</u>, 918 F.2d 987, 996-8 (1st Cir. 1990); <u>United States v. Eaton</u>, 890 F.2d 511, 512 (1st Cir. 1989); <u>United States v. Payero</u>, 888 F.2d 928, 929-30 (1st Cir. 1989); 18 U.S.C. §921(a)(3).

107

Request No. 63:

<u>Further definition of "Carrying" Firearm</u>

When "carry" is charged in the indictment, it should be noted, that "carrying" does not require that the defendant had the weapon on his person.

"Carries" within the meaning of § 924(c)(1), includes carrying a weapon in a vehicle.  It is not necessary to show that the defendant used the weapon in any affirmative manner to prove that the defendant carried the weapon.

You may find that a firearm was "carried" during the commission of the crime of conspiracy to possess with intent to distribute cocaine, if you find that the defendant had a firearm on his person or was transporting a firearm in a vehicle.

<u>United States v. Nelson</u>, 109 F.3d 1323 (8th Cir. 1997); <u>United States v. Freisinger</u>, 937 F.2d 383, 387 (1991); <u>Bailey v. United States</u>, 516 U.S. 137 (1995).

Request No. 64:

<u>License to Carry a Firearm</u>

The defendant in this case had a license to carry a firearm which was revoked on January 4, 2002.  Although this may be a factor in your consideration of the evidence in this case, if you conclude that the defendant was carrying the firearm in relation to the drug trafficking crime, then it is of no consequence to you that the defendant had a license to carry a firearm at that time.

Request No. 65:

Count 8: Witness Tampering

Count 8 charges the defendant Scott Boidi with witness tampering.  Title 18, United States Code, Section 1505, makes it a crime for anyone to corruptly, and by threats, influence, obstruct and impede and endeavor to influence, obstruct and impede the due and proper administration of the law under which a proceeding was pending before a department or agency of the United States.

For you to find the defendant guilty of witness tampering, you must be convinced that the government has proven each of the following beyond a reasonable doubt:

> **One**:    A proceeding was pending before a department or agency of the United States;
>
> **Two**:    The defendant was aware of the proceeding; and
>
> **Three**: The defendant intentionally endeavored corruptly to influence, obstruct or impede the proceeding.

"Proceeding" has been interpreted to include an administrative or criminal investigation conducted by a department or agency which has rule-making or adjudicative authority.  Thus, § 1505 has been held to apply to investigations or inquiries by the Environmental Protection Agency, the Customs Service, the Internal Revenue Service, the Federal Trade Commission, the Securities and Exchange Commission, and the National Labor Relations Board.  Section 1505 has also been held

110

to apply to proceedings before a non-adjudicative agency
conducting an investigation on behalf of an agency with
adjudicative authority.  Section 1505 has been held not to apply
to criminal investigations conducted by the Federal Bureau of
Investigation or a United States Attorney's Office, because those
entities lack rulemaking or adjudicative authority.

I instruct you that the National Labor Relations Board
("NLRB") is an adjudicative agency.

United States v. Fruchtman, 421 F.2d 1019, 1021 (6th Cir. 1970);
United States v. Browning, 572 F.2d 720, 724 (10th Cir. 1978);
United States v. Schwartz, 924 F.2d 410, 423 (2d Cir. 1991);
United States v. Technic Services, 314 F.3d 1031, 1044 (9th Cir.
2002) (EPA investigation which could lead to civil or criminal
proceedings is a "proceeding" under § 1505); Browning, 572 F.2d
at 724, Schwartz, 924 F.2d at 423;  United States v. Vixie, 532
F.2d 1277, 1278 (9th Cir. 1976), United States v. Persico, 520 F.
Supp. 96 (E.D.N.Y. 1981); Fruchtman, 421 F.2d at 1021; United
States v. Batten, 226 F. Supp. 492, 494 (D.D.C. 1964); Rice v.
United States, 356 F.2d 709, 712-13 (8th Cir. 1966); United
States v. Leo, 941 F.2d 181, 199 (3d Cir. 1991); United States v.
Higgins, 511 F. Supp. 453, 455 (D.C. Ky. 1981); United States v.
Wright, 704 F. Supp. 613, 615 (D. Md. 1989); 29 U.S.C. §141.

Request No. 66:

<u>"On or About" - Explained</u>

The indictment charges that the offenses alleged were committed "on or about" certain dates.

Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged in the indictment, it is not necessary for the government to prove that the offense was committed precisely on the dates charged.

Adapted from Devitt, Blackmar, Wolff, and O'Malley, <u>Federal Jury Practice and Instructions,</u> §13.05 (4th Ed. 1992).

112

Request No. 67:

### Foreperson's Role; Unanimity

I come now to the last part of the instructions, the rules for your deliberations.

When you retire you will discuss the case with the other jurors to reach agreement if you can do so.  You shall permit your foreperson to preside over your deliberations, and your foreperson will speak for you here in court.  Your verdict must be unanimous.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 68:

<u>Consideration of the Evidence</u>

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be -- that is entirely for you to decide.

Pattern Jury Instructions: First Circuit, Criminal Cases Committee on Pattern Criminal Jury Instructions - First Circuit 1998 Edition.

Request No. 69:

<u>Reaching Agreement</u>

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.

Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right.

This case has taken time and effort to prepare and try. There is no reason to think it could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the jurors in both the majority and the minority should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them. You should not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate.

It is important that you attempt to return a verdict, but of course, only if each of you can do so after having made your own conscientious determination. Do not surrender an honest

115

conviction as to the weight and effect of the evidence simply to

reach a verdict.


Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

Request No. 70:

<u>Return of Verdict Form</u>

I want to read to you now what is called the verdict form. This is simply the written notice of the decision you will reach in this case.

**Read verdict form.**

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the jury officer outside your door that you are ready to return to the courtroom.

After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.

Pattern Jury Instructions: First Circuit, Criminal Cases
Committee on Pattern Criminal Jury Instructions - First Circuit
1998 Edition.

117

Request No. 71:

<u>Communication With the Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time. You may continue with your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

Pattern Jury Instructions: First Circuit, Criminal Cases Committee on Pattern Criminal Jury Instructions - First Circuit 1998 Edition.

Request No. 72:

<u>Punishment</u>

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Request No. 73:

<u>Possible Additional Proceedings</u>

After you have returned your verdict, there may be additional proceedings.  If such proceedings are necessary, I will give you further instructions at that time.