UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-10025-GAO |
| | ) | |
| SCOTT BOIDI | ) | |

**GOVERNMENT'S MOTION AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR RELEASE PENDING SENTENCING HEARING**

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Assistant U.S. Attorneys Suzanne M. Sullivan and Laura J. Kaplan, submits this memorandum in support of its motion in opposition to defendant's emergency motion for release pending sentencing hearing. The government submits that no basis exists to warrant the release of the defendant pending the sentencing hearing and therefore defendant's motion should be denied.

I.    Procedural Background

On October 13, 2006, after a twelve day trial, the jury returned verdicts of guilty on several counts against the defendant, including a R.I.C.O. count, a Conspiracy to Possess with Intent to Distribute over 500 grams of cocaine count, Use of Communications Facility count and three Embezzlement counts. The Conspiracy charge carries a mandatory minimum sentence of five years incarceration. On that same date, pursuant to Title 18, United States Code, Section 3142(a)(2), the government requested the defendant be remanded to the custody of the United States

Marshal's and detained pending the sentencing hearing.  The Court remanded the defendant to the custody of the United States Marshals.  The defendant was then transported by the U.S. Marshals from the Federal Courthouse to the Plymouth County Correctional Facility in Plymouth, MA and remains there at this time.  The sentencing hearing is scheduled for January 17, 2007.

On October 27, 2006, the defendant filed an Emergency Motion for Release Pending Sentencing Hearing.  In that motion, the defendant asserted two bases to support his motion for release: (1) that the defendant has been diagnosed with a hernia which requires immediate surgery that would be better conducted outside the Bureau of Prisons before he begins serving any sentence; and (2) that he is eligible for the safety valve set forth in 18 U.S.C. § 3553 (f).  For the reasons stated herein, the government opposes the defendant's motion and requests that it be denied.

II.   The Mandatory Detention Act Forbids Boidi's Release Pending Sentencing, At Least Absent "Extraordinary Reasons" Not Present Here.

The applicable detention statute, 18 U.S.C. § 3143, requires that drug defendants such as Boidi be detained pending sentencing; that statute contains only two exceptions, neither of which applies here.  A different statute -- one that permits release pending sentencing or appeal upon a clear showing of "exceptional reasons" -- also does not apply here.  Accordingly, Boidi, like virtually all convicted drug dealers, must remain detained pending sentencing.

Release or detention of a defendant pending sentencing is governed by the Mandatory Detention for Offenders Convicted of Serious Crimes Act, 18 U.S.C. § 3143(a) ("Mandatory Detention Act"). That Act provides in relevant part:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 [i.e. a person found guilty of a violent crime or a serious drug offense] and is awaiting imposition or execution of sentence be detained unless --
>
> (A)(I) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

The language of this statute is mandatory ("The judicial officer shall order"), and neither of its two exceptions applies here: as set forth above, there is little possibility -- let alone a "substantial likelihood" -- that the motion for acquittal or new trial that has recently been filed by the defendant will be granted, and the government is recommending imprisonment in this case. Boidi must therefore be detained pending sentencing pursuant to 18 U.S.C. § 3142.

Boidi argues incorrectly that a sentence added to 18 U.S.C. § 3145(c) as part of the Mandatory Detention Act gives this Court

authority to release him.   Section 3145(c) provides in relevant

part,

> A person subject to detention pursuant
> to section 3143(a)(2) or (b)(2) [i.e. a
> person subject to mandatory detention pending
> sentencing or appeal], and who meets the
> conditions of release set forth in sections
> 3143(a)(1) or (b)(1) [i.e. who can prove by
> clear and convincing evidence that he will be
> neither a danger nor risk of flight if
> released, and who, in the case of a sentenced
> defendant, can also show that his appeal
> raises a substantial question of law or fact
> likely to result in reversal, a new trial, or
> a reduced sentence] . . . may be ordered
> released, under appropriate conditions, by
> the judicial officer, if it is clearly shown
> that there are exceptional reasons why such
> person's detention would not be appropriate.

Boidi may not be released pursuant to this statute because

it does not apply to his situation.   The statute is captioned

"Appeal from a release or detention order," and virtually all of

the published decisions interpreting it concern defendants

subject to mandatory detention whose cases are pending appeal.

Ordinarily, pursuant to 18 U.S.C. § 3142, such a defendant must

remain imprisoned pending appeal, even if his appeal raises a

substantial question of law or fact likely to result in reversal,

a new trial, or a reduced sentence.   See United States v.

DiSomma, 951 F.2d 494, 496 (2d Cir. 1991).   Section 3145(c)

ameliorates the harshness of Section 3142 by permitting release

pending appeal if the defendant can show, in addition to a

likelihood of reversal, a new trial, or a reduced sentence, other

"exceptional reasons" justifying release.   See id.   Thus, for

example, in DiSomma, the Second Circuit found that an appeal
raising a substantial challenge to the very fact that caused the
defendant to be subject to mandatory detention in the first place
qualified as an "exceptional reason" warranting release pending
appeal.

Release pending sentencing is another matter.  A defendant
subject to mandatory detention who can show a substantial
likelihood of post-verdict acquittal, new trial, or that a
guidelines sentence would not result in imprisonment, has no need
of Section 3145(c), because the Mandatory Detention Act itself
contains exceptions for such defendants.  See 18 U.S.C. §
3143(a)(1) & (2).  Accordingly, there are virtually no published
decisions in which courts have found "exceptional reasons"
justifying the release pending sentencing of defendants subject
to mandatory detention.

Boidi says that the First Circuit "has not explicitly held
that § 3145 (c) empowers the District Court to continue the
release of a convicted defendant otherwise subject to Section
3143 mandatory incarceration, if exceptional reasons are
demonstrated"  Def't Mem. at 3 (paragraph 9) (citing United
States v. Mitchell, 23 F.3d 1 (1st Cir. 1994) (per curiam)), but
the Mitchell court merely mentioned in passing that the court
below had done so without considering or deciding the legality of
the lower court's action.  Boidi cites other decisions in which
courts found have "exceptional reasons" warranting the release

pending sentencing of a defendant subject to mandatory detention. Those cases, however, are district court decisions from other circuits, and one -- United States v. Charger, 918 F. Supp. 301 (D. S.D. 1996) -- was expressly repudiated by the Court of Appeals for the circuit in which the district court sits, see United States v. Brown, supra, 368 F.3d at 993 ("disagree[ing] with" Charger).

Additionally, Section 3145(c) does not define or otherwise articulate what constitutes "exceptional reasons" to allow release.  Courts have defined exceptional circumstances as a "unique combination of circumstances giving rise to situations that are out of the ordinary".  United States v. Burnett, 76 F.Supp.2d 846 (1999), citing DiSomma, supra at 497.

One thing on which all courts seem to agree is that "exceptional reasons" for release under Section 3145(c) must be truly exceptional.  In DiSomma, supra, the Second Circuit observed that neither the Mandatory Detention Act nor its "sparse" legislative history shed much light on the meaning of the phrase "exceptional reasons."  951 F.2d at 497. Nevertheless, the court examined examples of "exceptional reasons" contained in "[t]he only useful historical document" -- a letter from the Department of Justice to the senator who sponsored the Act -- and concluded that the examples "present a unique combination of circumstances giving rise to situations that are out of the ordinary."  Id.  The Seventh and Eighth

Circuits, and at least one judge from the Ninth Circuit, have endorsed this interpretation of "exceptional reasons."  See United States v. Herrera-Soto, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam); United States v. Brown, 368 F.2d 992, 993 (8th Cir. 2004) (per curiam); United States v. Koon, 6 F.3d 561, 563 (Rymer, J., concurring) (defining "exceptional" as "clearly out of the ordinary, uncommon, rare") (internal quotation marks omitted).

In Brown, supra, the Eighth Circuit held that neither a defendant's participation in a treatment program, nor his fear that the nature of his conviction (receiving child pornography) might subject him to abuse if he were detained in a local jail, were "exceptional reasons" justifying release.  Courts also have held that "compliance with pretrial supervision and gainful employment up until the date of sentencing are not, in and of themselves, 'exceptional reasons why such person's detention would not be appropriate.'"  United States v. Mostrom, 11 F.3d 93, 95 (8th Cir. 1993).  See also United States v. Burnett, 76 F. Supp. 846, 849 (E.D. Tenn. 1999) (holding that "family hardship" is not an "exceptional reason" justifying release for defendant who pled guilty to aiding and abetting and possessing with intent to distribute ephedrine) (citing many cases that hold the same thing).

Defendant also cites to United States v. Bloomer, 791 F.Supp 100 (D. Vt. 1992) in his motion.  In that case, the Court held

that the "defendant's close relationship with his [family],
stabilizing influence on wife and support of family, aid to
unrelated family, medical condition, and position as mechanical
engineer were <u>not</u> "exceptional circumstances" ... to warrant
release of defendant convicted of [narcotic offense] pending
sentencing."

Boidi offers only two grounds for his own release pending
sentencing, neither of which amount to "exceptional reasons" for
disregarding the mandatory detention requirement.  First, he
argues that "[he] was recently treated at Plymouth County House
of Corrections and diagnosed with a hernia which is [in] need of
immediate surgery."  Def't. Mot. at 2 (paragraph 4).  Further,
the defendant indicates that "Plymouth will not perform this
surgery prior to Mr. Boidi's Sentencing Hearing."  Def't. Mot. at
2 (paragraph 5).  At present, the defendant has not provided the
government with any documentation to support this assertion.
Even if the defendant's contention were accurate, the defendant
has not demonstrated that this qualifies as an "exceptional
reason" for release within the meaning of 3145(c).

Additionally, as a result of this assertion by the defendant
relative to his immediate medical condition, the government
contacted the Plymouth County Correctional Facility and spoke
with the Acting Director of Medical Services Nancy McCarthy.  Ms.
McCarthy confirmed that the defendant was examined at that
facility by a Physicians' Assistant on or about October 17, 2006,

and was found to have a small hernia.  However, medical personnel

at that facility determined that the hernia was too small to

require surgery at the present time, and in fact, the defendant

has no medical condition that requires either surgery or the

scheduling of surgery at the present time.  Furthermore, even if

the defendant did require surgery for his hernia, the house of

correction has indicated it's ability to transport the inmate to

the appropriate medical facility while implementing security

measures for the transportation and for any hospital stay the

inmate may require.   Therefore, there is nothing rare, unusual

or out of the ordinary to justify the defendant's release pending

sentencing.

     Second, the defendant argues that the defendant is eligible

for a safety valve reduction in his mandatory minimum sentence .

. . [and therefore] could result in a relatively short prison

sentence."    Def't. Mot. at 5(paragraph 13).  This too, does not

qualify as an "exceptional circumstance".  If it did, then all

defendants who may qualify for safety valve application, would

argue that they would be eligible for release pending sentencing.

That would contravene the intention of the Mandatory Detention

Act.

     In light of these circumstances, and the seriousness of

Boidi's offense, the defendant is unlikely to receive a sentence

lower than the low end of the minimum applicable guidelines

range.  Additionally, without a safety valve application Boidi

faces a mandatory minimum sentence of 60 months on the narcotics conviction alone.  Even if Boidi receives a safety valve application, and the government will argue that he is not eligible for a safety valve departure, it is unlikely that he will receive a sentence of no incarceration.

Lastly, defendant asserts that he was compliant with all pretrial services in this case and that his personal history and ties to the community are compelling evidence of his lack of dangerousness and the remoteness of any flight attempt.  Def't. Mot. at 5 (paragraph 14).  Even assuming those facts, however, the defendant is in a different posture at the present time.  He has now been convicted of several serious felony offenses and is facing certain incarceration.  He therefore poses a higher risk of flight than he did prior to trial.   Additionally, in Burnett, supra, at 849, the Court reasoned that ". . . if it determined that such personal hardships qualified to prevent or delay detention, then inevitably defendants committing the same offenses would be treated disparately for reasons unrelated to their crimes or personal character . . .".

No extenuating circumstances exist to warrant an exception to the mandatory detention principle.  It would therefore not be appropriate to release the defendant pending sentencing even if the law permitted it.

III. <u>Conclusion</u>

WHEREFORE, for the above reasons, the defendant's motion for emergency release should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                       By:   <u>/s/ Laura J. Kaplan</u>
                              SUZANNE M. SULLIVAN
                              LAURA J. KAPLAN
                              Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by electronic filing upon counsel for the defendant, Peter C. Horstmann, Esq.

                              <u>s/ Laura J. Kaplan</u>
                              Laura J. Kaplan
                              Assistant U.S. Attorney

Dated: November 1, 2006