UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )
                                )
        v.                      )   CRIMINAL NO. 05-10025-GAO
                                )
SCOTT BOIDI                     )


### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### FOR JUDGMENT OF ACQUITTAL AND/OR FOR NEW TRIAL

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Assistant U.S. Attorneys Laura J. Kaplan and Suzanne M. Sullivan, submits this memorandum in support of its motion in opposition to defendant's motion for judgment of acquittal and/or for a new trial. The government submits that there was sufficient evidence to prove the defendant's guilt beyond a reasonable doubt and defendant's Rule 29 and Rule 33(a) motions should be denied.

**A.   THE GOVERNMENT PROVED THE EMBEZZLEMENT COUNTS**

The defendant argues, as he did at trial, that the government has failed to prove the defendant guilty of the crime of embezzlement because certain portions of the $16,148.93 check he received from Local 88 ("the Check") were related to moneys he allegedly paid in connection with union business. This argument is belied by the evidence and for a variety of legal reasons fails.

In support of this argument the defendant relies solely on the testimony of Dominick Mazzeo ("Mazzeo") which he mischaracterizes. Mazzeo *did not* testify that $14,842.08 of the Check was legitimately related to the business of Local 88. Mazzeo testified that *some* of the charges on the American Express statements *could have* been related to Local 88 business but he also testified that the reason he issued the Check to the defendant was because the defendant had lied to him when he stated that he had paid the entire American Express bill.

The government's evidence belies the defendant's argument that he had paid for union expenses and was therefore entitled to reimbursement. First, there is no evidence that the defendant paid for any union expenses. He may have used the American Express card to charge items for the union, but <u>he</u> never paid for these items. Second, the government introduced expense reports submitted by the defendant for that two month period which evidence *many* non-union expenses. Third, the parties stipulated that, in fact, American Express never received any such payment from the defendant for that particular two month period.

In any event, it has always been the position of the government, and thus there was no variance, that since the defendant did not pay the American Express bill for that two month time period, he was at no time entitled to reimbursement from the union. Moreover, the government submits that even two

and one half months later, in December 2001, when the defendant deposited over $10,000 into the union checking account, he was not entitled to reimbursement from the union.  He was not entitled to reimbursement because by October 2001 the defendant had already misappropriated the money (by taking the $16,148.93).  Once he misappropriated that money, he was not entitled to reimbursement nor is the fact that he put $10,657.60 back into the union's account two months later a defense to the crime of embezzlement.  United States v. Walker, 234 F.3d 780 (1st Cir. 2000); United States v. Young, 955 F.2d 99 (1st Cir. 1992).

The defendant either misunderstood the government's evidence or the law of embezzlement under Title 18, United States Code, Section 501(c).  As used in Section 501(c), the term "embezzle" means to willfully take, or convert to one's own use or the use of another, the moneys, funds, property or other assets of a labor organization, which came into the alleged wrongdoer's possession lawfully by reason of his office, employment or position of trust.  The term includes the *fraudulent appropriation* of the labor organization's property by a person to whom such property has been entrusted subject to the fiduciary duty to hold such property solely for the benefit of the labor organization and its members and to manage it in accordance with the labor organization's constitution, by-laws, and applicable resolutions.

The term "steal" means any *dishonest transaction* whereby one person obtains property which rightfully belonged to another, and deprives the owner of the rights and benefits of ownership. To "steal" means to take away from some one in lawful possession of property without right and with intent to keep wrongfully and to deprive the owner of the rights and benefits of ownership.

The term "converts" as used in Section 501(c) means to apply the moneys or property of a labor organization for the use, benefit, or profit of a person not lawfully entitled thereto. Conversion may include the misuse in an unauthorized manner or to an unauthorized extent property which has been placed in one's custody *for a limited use*.

In this case, the evidence clearly established that the defendant (1) who had a fiduciary duty to hold the money solely for the benefit of the union, *fraudulently appropriated* the money; (2) engaged in a *dishonest transaction* to obtain the money belonging to the union with the intent to keep the money wrongfully and to deprive the union of its ownership; and (3) misused the money which had been placed in his custody for a *limited purpose* in an unauthorized manner and to an unauthorized extent. Thus, the evidence proved that the defendant clearly embezzled, stole, and converted the union money to his own use.

The defendant also argues that he is not guilty of the crime of embezzlement because he had a good faith belief that his appropriation of the money was authorized. And the government

agrees that in making a determination of whether the defendant had the requisite fraudulent intent the jury had to consider whether or not the moneys which were disbursed to the defendant were authorized and whether or not the defendant had a good faith belief that such expenditures were authorized or would be authorized, and whether or not the defendant had a good faith belief that such expenditures benefitted Local 88.

However, a "good faith belief," as the term is commonly used, means a belief or state of mind denoting *honesty of purpose* and *freedom from intention to defraud*. Here, the defendant used trickery and deceit to obtain the Check from Mazzeo. The evidence was not refuted that the defendant *had not* paid the American Express bill and therefore he could not have had a good faith belief that he was entitled to that money or that such an expenditure was authorized. Moreover, the defendant lied to Mazzeo because he knew he was not authorized or entitled to the money. The lie itself demonstrates the defendant's fraudulent intent and the absence of a good faith belief that he was authorized to appropriate the money.

The defendant argues that "if the funds were spent for a union purpose, the defendant is not guilty of embezzlement." Again, he has misunderstood the law of embezzlement and his argument makes no sense. First, he completely ignores the fact that as an officer of the union the defendant had an obligation to hold its assets in trust for the union and its members. This

he clearly did not do. Instead, he cashed the entire Check and pocketed the money.

Second, even were the government to concede, which it does not, that every penny of that $16,148.93 was for union expenses, it would still contend that the defendant embezzled and converted to his own use those moneys since he was not entitled to reimbursement until such time as he had paid American Express. Under what possible authority or theory of law could the defendant be entitled or authorized to be reimbursed for money he had not himself expended?

The government concedes that as soon as the items have been purchased using the American Express card, there exists an obligation to pay American Express. However, the obligation is the defendant's since it was allegedly his card. So, the defendant should have been issuing a check each month from his personal checking account to pay the American Express bill and then looking to the union for reimbursement of union expenses. But he didn't do this. And therefore he was not entitled to reimbursement. For what would the defendant be entitled to reimbursement? He had not himself expended any money. To allow him to be reimbursed where he had never paid the American Express bill would result in a gross windfall for the defendant.

On the other hand, if the card belonged to the union, then it was the union's obligation to pay the bill and seek

reimbursement from Boidi for his personal expenses. The evidence at trial demonstrated that more often than not this is exactly what transpired. The union paid the American Express bill because for years it had only been used by the defendant for union expenses and the defendant would reimburse the union for his personal expenses. What happened with this particular two month American Express bill was *not* typical. And it wasn't typical because the defendant ran up the card with both union and non-union charges. He then seized an opportunity to fill his pockets with quick cash so that he could support his cocaine habit by defrauding Mazzeo into giving him that Check which he then cashed. This was money that the defendant knew he was not entitled to - money that belonged to the union and its members.

The defendant seems to want it both ways - now and at trial, yet complains that the government created a variance. However, it was the defendant who at the beginning of the trial argued that the July 2001 personal check the defendant wrote to American Express for $10,657.60 was for union expenses and therefore he was entitled to the $16,149.93 he later took from the union as reimbursement. Only when the government produced evidence to contradict that claim (the $3,342.60 reimbursement check he received from the union) did he reverse course and argue that all of the expenses on the August and September 2001 bill were union expenses which therefore entitled him to the $16,148.93 as

reimbursement.

Even were the government to concede that the defendant was authorized to take the $16,148.93, and it does not, he was authorized only for a limited purpose - to pay the American Express bill and nothing more.  As is now clear, he did not do this but rather he took money belonging to the union and its members, which had been placed in his custody for a limited purpose, and misused it to an unauthorized extent - to buy cocaine and other personal items.  That very simply is embezzlement.

The defendant's argument that a variance occurred is without merit.  The facts charged have never differed from the facts proved.  The government has never changed it's position with respect to Count Three and the evidence has remained the same.  The evidence demonstrated beyond a reasonable doubt that the defendant embezzled or converted some $16,148.93 to his own use.  The jury apparently agreed.

### B. The GOVERNMENT PROVED THE RELATEDNESS OF THE RACKETEERING ACTS

The government will rely on its pre-trial brief and oral argument at the Rule 29 hearing relating to the relatedness issue and submits that the proof at trial established that the racketeering acts were related to each other and the enterprise - Local 88.  Moreover, even if the drug conspiracy racketeering act had no relation to the enterprise or the other racketeering acts,

the jury convicted the defendant of the substantive count of conspiracy to possess with intent to distribute cocaine. Since there were at least two additional predicate acts that were found to have been proven, the RICO conviction should stand.

>   **C.  THE GOVERNMENT IS ENTITLED TO A FORFEITURE MONEY JUDGMENT EQUAL TO THE PROCEEDS THE DEFENDANT OBTAINED FROM HIS CRIMES, EVEN IF HE NO LONGER HAS THOSE PROCEEDS.**

The evidence at trial established that the defendant embezzled $25,451.45 in union assets, and that he used those funds to buy drugs for himself and others. Because the proceeds of the defendant's crimes are unavailable for forfeiture, the government filed a Motion for Order of Forfeiture, seeking a money judgment against the defendant in the amount of $25,451.45.

The defendant's assertion that because he spent the proceeds of his crimes on drugs, the government cannot seek forfeiture ignores well-established case law approving the use of forfeiture money judgments under precisely the circumstances presented in this case. The First Circuit has specifically held that a forfeiture money judgment is among the various forfeiture orders available to the government:

> A criminal forfeiture order may take several forms. First, the government is entitled to an *in personam* judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense. Second, to the extent the government can trace any of the proceeds to specific assets, it may seek the forfeiture of those assets directly pursuant to [the applicable forfeiture statute]. Third, if as a result of some act or mission of the defendant, the government

>       cannot trace the proceeds of the crime to specific
>       assets, it may seek the forfeiture of "any property,
>       cash or merchandise, in satisfaction of the amount of
>       criminal forfeiture to which it is entitled."

United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999) (quoting United States v. Voigt, 89 F.3d 1050, 1088 (3d Cir. 1996), and citing 21 U.S.C. § 853(p)).

As recently as January of this year, the First Circuit reaffirmed its decision in Candelaria-Silva that courts may issue forfeiture money judgments regardless of whether there are any assets available for forfeiture, rejecting the argument the defendant makes in his Motion. United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006). In Hall, the defendant challenged a money judgment forfeiture order, relying on a Third Circuit case in which the district court denied the government's motion for a money judgment because the defendant had no assets available for forfeiture. Id. (citing United States v. Croce, 334 F.Supp.2d 781 (E.D.Pa. 2004) (overruled by United States v. Vampire Nation, 451 F.3d 189 (3d Cir. 2006)).[1] The Court held that Croce was at odds with the law of the Circuit, citing Candelaria-Silva and further stating:

---

[1] The only case cited by the defendant in support of his argument that the government cannot seek forfeiture because he had dissipated the proceeds of his crime was United States v. Ofchinick, 883 F.2d 1172 (3rd Cir. 1989). Because the defendants did not object to the special verdict forms submitted to the jury, the Court in Ofchinik specifically declined to decide whether money judgments were the appropriate form of forfeiture order. 883 F.3d at 1179 n. 3. The Third Circuit finally reached the issue this year in Vampire Nation, 451 F.3d 189, in which it held that forfeiture money judgments were entirely proper.

> There are two primary reasons for permitting money judgments as part of criminal forfeiture orders. First, criminal forfeiture is a sanction against the individual defendant rather than a judgment against the property itself. Because the sanction follows the defendant as a part of the penalty, the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction. Second, permitting a money judgment, as part of a forfeiture order, prevents a drug dealer from ridding himself of his ill-gotten gains to avoid the forfeiture sanction.

Id. (internal quotes and citations omitted).

Accordingly, the Court should endorse the proposed Order of Forfeiture submitted by the government on October 17, 2006, entering an in personam money judgment against the Defendant in the amount of $25,451.45.

### D. THE GOVERNMENT DOES NOT SEEK TO FORFEIT THE PROCEEDS OF THE DEFENDANT'S CRIMES MORE THAN ONCE.

In its Motion for Order of Forfeiture, the government clearly seeks a money judgment for $25,451.45, representing the proceeds of the defendant's embezzlement, under two different legal theories. The government has not, as the defendant suggests, asserted that it is entitled to collect $25,451.45 more than once. Accordingly, the Court need not reach the defendant's assertion that forfeiture of the same money more than once would constitute a violation of the defendant's Double Jeopardy rights.

**Conclusion**

For the foregoing reasons, the defendant's motions should be denied.

                                      Respectfully submitted,
                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                           By:    /s/Laura J. Kaplan
                                      LAURA J. KAPLAN
                                      SUZANNE M. SULLIVAN
                                      Assistant U.S. Attorneys

November 1, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by electronic filing upon counsel for the defendant, Peter C. Horstmann, Esq.

                                        /s/ Laura J. Kaplan

                                      Laura J. Kaplan
                                      Assistant U.S. Attorney

Dated: November 1, 2006