```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
           v.                 )    05 CR 10025-GAO
                              )
SCOTT BOIDI,                  )
                              )
           Defendant.         )
```

### SENTENCING MEMORANDUM

The United States respectfully submits this memorandum in connection with the sentencing of Defendant Scott Boidi ("Boidi"), which is scheduled to occur on February 28, 2007. For the reasons stated herein, the government requests that the Court sentence Defendant within the advisory guideline range of 97-121 months, 4 years supervised release, restitution or forfeiture in the amount of $13,000 (as agreed between the parties; otherwise $25,000), and a fine within the guideline range.

**Objection to Enhancements based on Acquitted Conduct**

Defendant objects to being held accountable for possession of a dangerous weapon and the accompanying two-level increase pursuant to U.S.S.G. Section 2D1.1(b)(1) and probation's finding that the Defendant is not safety valve eligible. In Defendant's view, the government did not prove by a preponderance of the evidence that the defendant possessed a firearm in connection with the offense conduct. The government does not agree.

The firearm enhancement for drug defendants appears at U.S.S.G. 2D1.1(b)(I). It directs a sentencing court to increase a

drug defendant's offense level by 2 levels if a dangerous weapon was possessed.

The First Circuit has had the opportunity to examine this offense adjustment in a number of recent cases. In United States v. Corcimiglia, 967 F. 2d 724, 727-28 (1st Cir. 1992), the Court recognized that, once the government satisfies its initial burden of showing that a gun was present, the burden then shifts to the defendant to establish that it had no connection to the offense.[1] In David v. United States, 134 F. 3d 470, 475-76 (1st Cir. 1998), the court recognized that the relevant conduct provisions of the Sentencing Guidelines apply to section 2D1.1(b)(1) adjustments and that the possession of the gun need not have occurred during the actual offense of conviction. Other cases make it clear that, if a firearm is present either at the offense of conviction or during other related conduct, the enhancement should apply "unless it is clearly improbable that the weapon was connected with the offense." United States v. Berrios, 132 F.3d 834, 839 (1st Cir. 1998); United States v. Marrero-Ortiz, 160 F.3d 768, 778 (1st Cir. 1998) ("the interpretation of the guideline provision is colored by the Sentencing Commission's instruction that "[t]he adjustment should

---

[1] But see United States v. Juan, 59 F. Supp 2d, 210 (D. Mass 1999) describing burden of proof as follows: "(1) the government establishes the presence of the firearm; (2) the burden of going forward--not the burden of proof --shifts to the defendant to come forward with an explanation for the gun's presence (i.e. that it is not connected to the offense); and, (3) the burden of proof remains on the government to show the connection between the weapon and the underlying offense").

be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense").

It is well-settled that a Court may properly consider acquitted conduct in determining sentence, so long as it finds such conduct proved by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 149 (1997); United States v. DeLeon-Ruiz, 47 F.3d 452, 454 (1st Cir. 1995)("We have previously held that because of the difference in burden of proof, an acquittal on a charge of using a firearm in connection with a drug transaction does not foreclose a sentencing enhancement for possession of a gun during a drug transaction." *citing* United States v. Pineda, 981 F.2d 568, 574 (1st Cir. 1992)). Watts is squarely on point. Watts, like Defendant here, was convicted of possession with intent to distribute a controlled substance, but acquitted of possessing a firearm in furtherance of that drug offense, in violation of 18 U.S.C. § 924(c). The Supreme Court reversed the Ninth Circuit's holding that Watts could not receive a two-level enhancement for possessing a dangerous weapon, the firearm which was the subject of the count on which he was acquitted. Relying on both 18 U.S.C. § 3661 (codifying rule that no limitation shall be placed on the information a court may consider in imposing sentence), and case law for the "longstanding principle that sentencing courts have broad discretion to consider various kinds of information," Watts, 517 U.S. at 151, the Court held: "[A] jury's verdict of acquittal

does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Id. at 157.

Here, almost every witness called by the government testified that the Defendant carried at least one firearm and kept one in his office. Witnesses Ralph Soto ("Soto"), Hector Vega ("Vega") and Lynne DeMita ("DeMita") all testified that the Defendant possessed and carried a firearm with him to drug transactions and specifically showed it to Soto and Vega as a means to intimidate them. Indeed, the Defendant himself stipulated to having possessed at least four firearms over a ten year period. Clearly, the firearm was present at the offense of conviction (i.e. the drug transactions) and it is not improbable that the firearm was connected with the offense.

Defendant also believes that he should receive a two-level safety valve reduction. The government does not believe that the Defendant is eligible for such a reduction because he possessed a firearm in connection with the offense and does not meet criterion 2 of U.S.S.G. Section 5C1.2. Moreover, the government does not believe that his proffer was completely truthful since he disputed much of the testimony of many of the government's witnesses at trial. In fact, as you can see from the Defendant's objections to the PSR, he still maintains that he did not possess with intent to distribute in excess of 500 grams of cocaine. Under

4

these circumstances alone, it is inconceivable that he could receive a two-level safety valve reduction since he has failed to admit his guilt of the crimes for which he was convicted.

For all these reasons, Defendant's objection to the use of acquitted conduct in determining sentence here should be dismissed.

**Obstruction of Justice**

Defendant objects to adjustments to his GSR based on obstruction of justice. Defendant claims that the government has not proven this conduct by a preponderance of th evidence. The government disagrees.

As noted above, it has long been settled that a preponderance of the evidence is all that is required by the Due Process Clause to establish a sentencing factor. See McMillan, 477 U.S. at 91. Moreover, as our Court of Appeals made clear in Antonakopoulos, Booker did not alter or undermine judicial findings by a preponderance of the evidence.

> [T]here is nothing inherently unreliable about judicial fact finding that raised a sentence beyond that authorized by the jury verdict or guilty plea. Under Booker, a judge may do such fact finding in determining the Guidelines range. Nothing in Booker requires submission of such facts to a jury so long as the Guidelines are not mandatory.

Antonakopoulos, 399 F.3d at 80; see also United States v. Green, 426 F.3d 64, 66 (1st Cir. Oct. 18, 2005)("We review the district court's findings of fact at sentencing, solely to determine whether it committed clear error in ascertaining that the government has

5

established the disputed fact by a preponderance of the evidence." *citing* United States v. Luciano, 414 F.3d 174, 180 (1st Cir. [July 8,] 2005)).

Defendant's sentence should reflect his efforts to obstruct justice and avoid responsibility for his participation in the offense. The evidence supports a finding that Defendant should receive a two-level obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1.

Here, the evidence showed that Lynne DeMita lied in the grand jury on the first occasion that she testified. DeMita testified that she lied at the urging of the Defendant, the grand jury transcript of her first appearance demonstrates that she lied, and the prison log (which was stipulated to) corroborated DeMita's testimony that she had visited the Defendant immediately after being served with the grand jury subpoena but prior to testifying falsely in the grand jury. The Court had the opportunity to observe the demeanor of DeMita and will have to assess whether her testimony proved by a preponderance of the evidence that the Defendant improperly persuaded her to lie to the grand jury and thereby obstructed the administration of justice.

The same is true with the obstruction of justice charge with respect to Tom Brennan ("Brennan"). The Court will have to assess the credibility of the witness and whether his testimony proved by a preponderance of the evidence that the Defendant persuaded

6

Brennan to drop the NLRB charges and thereby obstructed the administration of justice.

The government submits that there was sufficient evidence presented to demonstrate that the Defendant willfully obstructed the administration of justice.  Brennan testified that the Defendant called him on numerous occasions and in an irate voice told him that he better drop the NLRB charges.  The NLRB records corroborate that Brennan filed the charges with the NLRB and subsequently dropped the charges.  Brennan explained that although the charges were against the employer it was the Defendant who continued to call him to improperly persuade him to drop the charges.  Brennan explained that the Defendant did not want to draw attention to himself from union officials because the fight happened on the Defendant's watch.

## CONCLUSION

The United States requests that the Court sentence Defendant within the advisory guideline range to 121 months, 4 years supervised release, restitution or forfeiture in the amount of $13,000 (as agreed between the parties; otherwise $25,000), and a fine.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                              By:  /s/ Laura J. Kaplan
                                        Laura J. Kaplan
                                        Suzanne M. Sullivan
                                        Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

Boston, Massachusetts
February 15, 2007

    I, Laura J. Kaplan, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing electronically on Peter Horstmann, Esq. counsel of record.

                                          /s/ Laura J. Kaplan
                                          Laura J. Kaplan
                                          Assistant U.S. Attorney